## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN DALEWITZ, on behalf of himself and all others similarly situated,<br><br>                         Plaintiff,<br><br>        v.<br><br>THE PROCTER & GAMBLE COMPANY,<br>One Procter & Gamble Plaza,<br>Cincinnati, OH 45201<br>                         Defendant. | Case No. 22-7323<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Alan Dalewitz ("Plaintiff" or "Dalewitz") individually and on behalf of himself and other similarly situated individuals, by and through his counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendant The Procter & Gamble Company ("P&G" or "Defendant") regarding its false and deceptive marketing and sale of Oral-B Glide Dental Floss products (the "Product" or "Oral-B Glide").[1] Despite Defendant marketing the Product as "Pro-Health," laboratory testing indicates that the Product most likely contains per- and polyfluoroalkyl substances ("PFAS"), which are a group of synthetic chemicals believed to be harmful to humans and the environment. Because of the ability of PFAS to persist and accumulate over time, PFAS are harmful at even very low levels. Plaintiff Dalewitz alleges the following based upon information, belief, and the investigation of his counsel:

### INTRODUCTION

1.      P&G is the "the world's largest consumer goods company."[2]

---

[1] Discovery may demonstrate that additional Oral-B Glide products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional dental floss items identified through the course of discovery.

[2] *About Us*, P&G, https://www.pgcareers.com/about-us (last visited Aug. 26, 2022).

2.      P&G represents that it adheres to a "rigorous safety process to analyze every ingredient—before we ever consider putting it in one of our products."[3]

3.      P&G also positions itself as a company dedicated to "helping ensure a healthy planet for present and future generations."[4]

4.      Additionally, P&G has owned the Oral-B brand for about 16 years.[5]

5.      Oral-B is a brand of dental hygiene products marketed to emphasize the importance of oral health. Oral-B Glide is a line of specific dental floss products.

6.      P&G added the Oral-B brand to its "Pro-Health" line, which are "aimed at consumers willing to pay more for products that touted health benefits, as opposed to flavor or cosmetic appeal."[6]

7.      PFAS are a family of more than 9,000 highly fluorinated aliphatic compounds manufactured by humans and known to be damaging to both humans and the environment.[7]

8.      PFAS are known to be toxic to humans, even at very low levels.[8] Furthermore, PFAS are considered "forever chemicals," meaning they do not break down naturally in the environment.[9] Use of PFAS in the manufacturing of dental floss and other products leads to the

---

[3] *Product Safety*, P&G, https://us.pg.com/product-safety/ (last visited Aug. 26, 2022).

[4] *Mapping Our Impact*, P&G, https://us.pg.com/mapping-our-impact/ (last visited Aug. 26, 2022).

[5]  Ellen Byron, *Merger Challenge: Unite Toothbrush, Toothpaste*, The Wall Street Journal (Apr. 24, 2007), https://www.wsj.com/articles/SB117737878770779935.

[6] *Id*.

[7] *Nat'l Inst. of Env't Health Sciences, Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, Nat'l Insts. of Health U.S. Dept. of Health and Human Servs. ("NIH"), https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm (last visited Aug. 26, 2022); Elsie M. Sunderland, et al., *A review of the pathways of human exposure to poly- and perfluoroalkyl substances (PFASs) and present understanding of health effects*, 29 J. Expo Sci. Environ. Epidemiol, 131-47 (2019), DOI: 10.1038/s41370-018-0094-1.

[8]  Abrahm Lustgarten, et al., *Suppressed Study: The EPA Underestimated Dangers of Widespread Chemicals*, ProPublica (June 20, 2018), https://www.propublica.org/article/suppressed-study-the-epa-underestimated-dangers-of-widespread-chemicals; Linda S. Birnbaum, *The Perils of PFAS*, Gillings School of Public Health, UNC, (Feb. 12, 2021), https://sph.unc.edu/wp-content/uploads/sites/112/2019/08/The-Perils-of-PFAS-UNC-Final-2.12.21.pdf.

[9] As an illustration of how "forever" PFAS compounds are, in 1997, when a PFAS manufacturer sought "clean blood samples" to compare to PFAS-tainted samples, the only source of "clean blood" (free of PFAS contamination) was the "preserved blood of soldiers who died in the Korean War, before [PFAS] products spread worldwide." *Poisoned Legacy*, Environmental Working Group (May 1, 2015), https://www.ewg.org/research/poisoned-legacy.

accumulation of PFAS in soil, water, humans, and elsewhere in the environment, threatening other organisms.[10]

9.      Consumers have grown increasingly aware of and concerned about PFAS and the presence of such in their bodies, the environment, and the products they use.[11]

10.     As a result, there is a growing consumer advocacy movement to eliminate PFAS from various consumer products, including dental floss.[12]

11.     In fact, on October 18, 2021, underscoring the gravity of the PFAS threat, the Biden-Harris Administration announced "accelerated efforts to protect Americans from per- and polyfluoroalkyl substances (PFAS), which can cause severe health problems and persist in the environment once released, posing a serious threat across rural, suburban, and urban areas."[13]

12.     Plaintiff, through his counsel, has screened the Product and found indicators of PFAS.

13.     In addition to Plaintiff's testing, a peer-reviewed study identified two specific PFAS chemicals—PTFE and PFHxS—as being associated with Oral-B Glide products.[14]

14.     PTFE is a type of PFAS chemical known to be a major pollutant and coming under increased scrutiny over its safeness.[15]

---

[10] NIH, *supra* note 7; Francisca Pérez, et al., *Accumulation of Perfluoroalkyl Substances in Human Tissues*, 59 Environ. Int'l 354 (2013).

[11] LastWeekTonight, *PFAS: Last Week Tonight with John Oliver (HBO)*, YouTube (Oct. 4, 2021), https://www.youtube.com/watch?v=9W74aeuqsiU.

[12] Elicia Mayuri Cousins, et al., *Risky Business? Manufacturer and Retailer Action to Remove Per- and Polyfluorinated Chemicals from Consumer Products*, NEW SOLUTIONS: A J. of Environ. & Occupational Health Policy (2019) 29(2), 242–65, DOI: 10.1177/1048291119852674.

[13] *FACT SHEET: Biden-Harris Administration Launches Plan to Combat PFAS Pollution*, The White House, (Oct. 18, 2021); https://bit.ly/3DZvZba.

[14] K.E. Boronow, et al., *Serum concentrations of PFASs and exposure-related behaviors in African American and non-Hispanic white women*. J. Expo Sci Environ Epidemiol 29, 206-17 (2019). DOI: 10.1038/s41370-018-0109-y.

[15] *The Teflon chemical PTFE is often touted as a safe cousin of toxic PFAS. But is it really?*, ChemSec (Feb. 10, 2022), https://chemsec.org/the-teflon-chemical-ptfe-is-often-touted-as-a-safe-cousin-of-toxic-pfas-but-is-it-really/#close.

15.     For instance, PTFE used to manufactured with PFOA, a particularly dangerous PFAS chemical, but was then reformulated with Gen X, a chemical that is also associated with a "substantial risk of injury to health or the environment."[16]

16.     PFHxS is a bioaccumulative PFAS chemical that "can cause adverse health effects, including harmful effects to a developing fetus, the thyroid, and the liver."[17]

17.     Thus, P&G's advertising of Oral-B Products—which suggests that the Product is "Pro-Health"—is false and misleading.[18]

18.     P&G also deceives consumers by concealing the material fact that the Product most likely contain PFAS, which a reasonable consumer would not assume.

19.     By deceiving consumers about the nature of the Product, Defendant is able to sell a greater volume of the Product, to charge higher prices for the Product, and to take market share away from competing products, thereby increasing its own sales and profits.

20.     Because Defendant's marketing of the Product tends to mislead and is materially deceptive about the true nature and quality of the Product, Plaintiff Dalewitz brings this case on behalf of himself, and all others similarly situated and seeks equitable and monetary relief.

## FACT ALLEGATIONS

21.     Plaintiff Dalewitz brings this suit against P&G based on misrepresentations that the Product promotes better "health" than other brands, when in fact the Product most likely contains unhealthy and dangerous chemicals.

---

[16] Sharon Lerner, *New Teflon Toxin Causes Cancer In Lab Animals*, The Intercept (March 3, 2016), https://theintercept.com/2016/03/03/new-teflon-toxin-causes-cancer-in-lab-animals/.
[17] *Notification Level Recommendation for Perfluorohexane Sulfonic Acid (PFHxS) in Drinking Water*, OEHHA (Mar. 17, 2022), https://oehha.ca.gov/water/report/notification-level-recommendation-perfluorohexane-sulfonic-acid-pfhxs-drinking-water.
[18] P&G also describes the Product as being covered with a "[l]ight coating of **natural** wax for improved grip," which further obscures the fact that there are dangerous **synthetic** chemicals in the Product. *See infra* note 21 (emphasis added).

22.     Moreover, P&G did not disclose to consumers that the Product most likely contains substances known to have adverse health effects, despite a continuing duty to do so.

23.     P&G knows that American consumers increasingly seek out and will pay more for consumer products that are healthy and do not contain chemicals toxic to humans.

24.     To capitalize on this market of consumers who wish to purchase healthier products, P&G cultivates an image of the Oral-B brand as being healthier than other brands, when in fact it most likely contains PFAS chemicals that are detrimental to human health.

**I.      P&G Represents That the Product Is Beneficial to Health.**

25.     P&G specifically markets the Oral-B Glide Product as being "Pro-Health."[19]

26.     Plaintiff Dalewitz purchased Oral-B Glide's Advanced Multi-Protection Floss, which is a part of Defendant's "Pro-Health" product line. Below are generic images[20] that reflect the packaging of the Product purchased by Dalewitz, together with a Product description:



---

[19] Byron, *supra* note 5.
[20] Captured from *Oral B Glide Pro Health Advanced Multi Protection Floss Clean Mint (Netcount 6 Pack), 6Count*, Amazon, https://amzn.to/3MKQMD1 (last visited Aug. 26, 2022).



Oral B Glide Pro Health Advanced Multi Protection Floss Clean Mint (Netcount 6 Pack), 6Count

Visit the Oral-B Store

★★★★☆ ⌄   36 ratings

**Amazon's Choice** in Dental Floss by Oral-B

🏷 9 Price Changes

$19$^17$ ($3.20 / Count)

✓prime

Thank you for being a Prime Member. Get $125 off: Pay $0.00 $19.17 upon approval for the Amazon Business Prime Card. Terms apply.

May be available at a lower price from other sellers, potentially without free Prime shipping.

| | |
|---|---|
| **Brand** | Oral-B |
| **Item Dimensions LxWxH** | 2 x 6 x 12 inches |
| **Weight** | 105 Grams |
| **Flavor** | Mint |
| **Dental Floss Type** | Dental Floss |

27.   Defendant's representations are designed to lead, and do lead, consumers to believe that Oral-B Glide Products are made in a way that will benefit consumers' health.

## II.   P&G Has a Duty to Disclose the Presence of PFAS in the Product.

28.   Reasonable consumers encountering Defendant's Product would not expect the likely presence of harmful chemicals, such as PFAS (which, as noted in *supra* ¶ 8, are known to be persistent and linked with health issues, such as high cholesterol, thyroid disease, pregnancy-induced hypertension, ulcerative colitis, and kidney and testicular cancer).

29.   Defendant does not disclose that the Product contains any PFAS chemicals.[21]

30.   When asked about the results of a study[22] that found a correlation between PFAS levels and usage of the Products, a representative for Defendant responded, "The safety of the

---

[21] *See, e.g.*, *Glide Pro-Health Advanced Floss*, Oral-B, https://oralb.com/en-us/products/more-products/floss/glide-pro-health-advanced-floss/ (last visited Aug. 26, 2022).
[22] Boronow, *supra* note 14.

people who use our products is our top priority. Our dental floss undergoes thorough safety testing and we stand behind the safety of all our products."[23]

31.     Defendant does mention on its website that PTFE is a material used generally in dental floss[24] but not does mention which Oral-B Products contain PTFE, or if PTFE is used by Defendant at all. Defendant also does not mention the use of PFHxS. These facts are material to consumers.

32.     Reasonable consumers have no way to confirm the source of the PFAS in the Product, nor can they identify which of the thousands of PFAS chemical are in the Product.

### III.     P&G's Misrepresentations and Omissions Are Actionable.

33.     The above-referenced study found that "Flossing with Oral-B Glide was associated with higher levels of PFHxS"[25]

34.     The study also "present[ed] data on the presence of fluorine in Oral-B Glide and other dental flosses as an indicator of polytetrafluoroethylene (PTFE) in these products."[26]

35.     Further, the study found: "Flossing with Oral-B Glide was associated with 24.9% (95% CI: 0.2–55.7) higher levels of PFHxS."[27]

36.     Finally, Plaintiff screened the Product for PFAS and found the following:

| Product Name | Fluorine Amount | Organofluorine Amount |
|---|---|---|
| **Oral-B Glide Advanced Multi-Protection Floss, Clean Mint** | **302,400 ppm** | **302,400 ppm** |

---

[23] Ryan W. Miller, *Oral-B Glide floss tied to potentially toxic PFAS chemicals, study suggests*, USA Today (Jan. 10, 2019), https://www.usatoday.com/story/news/nation/2019/01/09/oral-b-glide-floss-toxic-pfas-chemicals-study/2530661002/.
[24] *Dental Floss Types—The Pros and Cons,* Oral-B, https://oralb.com/en-us/oral-health/why-oral-b/floss/dental-floss-types-the-pros-and-cons/ (last visited Aug. 26, 2022).
[25] Boronow, *supra* note 14.
[26] *Id.*
[27] *Id.*

37.     Unlike the study, which tested Oral-B Glide products for fluorine, Plaintiff's testing went further and screened for organic fluorine, also known as organofluorine.

38.     Organic fluorine results identify a quantity of organofluorine compounds (*e.g.*, PFAS) and exclude the possibility that fluorine may be present from other or natural sources.[28]

39.     "Since the world hasn't found a way to test which of 9,000 PFAS are in products, the best current test methods [for PFAS] look for fluorine."[29] "[W]hen measuring organofluorine in the environment one can assume that it originates from an anthropogenic source."[30]

40.     All PFAS are anthropogenic, or in other words, man-made.[31]

41.     Experts in PFAS chemicals view the presence of organic fluorine is a reliable proxy for the presence of PFAS in a product.[32]

42.     Consumers care about whether the products they use contain toxic or harmful chemicals.

---

[28] Lara Schultes**,** et al., *Total Fluorine Measurements in Food Packaging: How Do Current Methods Perform?*, 6(2) Environ. Sci. Technol. Letters 73 (2019).

[29] Jessian Choy, *New Independent Study Confirms PFAS in Thinx, Other Products*, Sierra Club, (Jun. 3, 2021), https://www.sierraclub.org/sierra/ask-ms-green/new-independent-study-confirms-pfas-thinx-other-products.

[30] Alina Koch, et al., *Towards a comprehensive analytical workflow for the chemical characterisation of organofluorine in consumer products and environmental samples*, 123 TrAC Trends in Analytical Chemistry 115423 (2020) ("[N]o single analytical method is versatile and robust enough to identify and quantify the vast number of PFASs, as well as other fluorine-containing agrochemicals or pharmaceuticals that might be present in a sample.").

[31] *What are PFAS?*, Agency for Toxic Substances and Disease Registry, https://www.atsdr.cdc.gov/pfas/health-effects/overview.html (last visited Aug. 26, 2022).

[32] *See, e.g.*, Heather D. Whitehead, et al., *Fluorinated Compounds in North American Cosmetics*, Environ. Sci. Tech. Ltrs. 2021, 8, 7, 538–544, https://doi.org/10.1021/acs.estlett.1c00240. (PFAS concentrations were detected by screening for total fluorine); *Testing for PFAS in food packaging*, Supply Chains Solutions Center, https://bit.ly/3fNPHwF (last visited Oct. 7, 2021) (recommending that companies screen for PFAS "using a total fluorine method . . . [that] measures all forms of PFAS"); Jen Dickman, et. al., *Packaged in Pollution: Are food chains using PFAS in packaging?*, https://saferchemicals.org/packaged-in-pollution/ (testing for PFAS using total fluorine amounts) (last visited Oct. 7, 2021); Kevin Loria, *Dangerous PFAS Chemicals Are in Your Food Packaging*, Consumer Reports, https://www.consumerreports.org/pfas-food-packaging/dangerous-pfas-chemicals-are-in-your-food-packaging-a3786252074/ ("CR tested products for their total organic fluorine content, which is considered the simplest way to assess a material's total PFAS content. That's because all PFAS contain organic fluorine, and there are few other sources of the compound, says Graham Peaslee, PhD, a professor of physics, chemistry, and biochemistry at the University of Notre Dame in Indiana, who has studied PFAS in food packaging.").

43.     In a survey of more than 1,000 consumers, nearly all participants (98%) indicated they were interested in knowing about the presence of harmful chemicals in everyday products.[33]

44.     Also, "48% of global consumers say they make proactive health and wellness choices on a regular basis."[34]

45.     Plaintiff also conducted his own survey, in which 95.1% of respondents said that the presence of PFAS in dental floss would be either important or very important to their purchasing decisions.

46.     No reasonable consumer would expect that a Product marketed for one's health would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans.  Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Product.

47.     As the Product exposes consumers to PFAS that pose a risk to consumers' health, the Product is not fit for consumption by humans.

48.     Since these facts relate to a critical safety-related deficiency in the Product, Defendant was under a continuous duty to disclose to Plaintiff and Class Members the true standard, quality, and grade of the Product and to disclose that the Product contained substances known to have adverse health effects. Nonetheless, Defendant concealed and affirmatively misrepresented the Product, as discussed herein.

49.     To this day, Defendant continues to conceal and suppress the true nature, identity, source, and method of production of the Product.

---

[33] Sabrina Hartmann, et al., *Interested Consumers' Awareness of Harmful Chemicals in Everyday Products*, 29 Environ. Sci. Eur. 1, 4 (2017), https://enveurope.springeropen.com/articles/10.1186/s12302-017-0127-8.
[34] *An inside look into the 2021 global consumer health and wellness revolution*, NielsenIQ, https://nielseniq.com/global/en/insights/report/2021/an-inside-look-into-the-2021-global-consumer-health-and-wellness-revolution/ (last visited Aug. 26, 2022).

50.     Defendant's concealment tolls the applicable statute of limitations.

51.     Consumers are at risk of real, immediate, and continuing harm if the Product continues to be sold as is, without curing the deceptive representations and omissions.

52.     Defendant has failed to provide adequate relief to purchasers as of the filing of this Complaint.

53.     Defendant's 'Pro-Health" representation has conveyed a series of express and implied claims and/or omissions that it knows are material to the reasonable consumer in making purchasing decisions, and that Defendant intended for consumers to rely upon when choosing to purchase the Product.

54.     Had Defendant not made the false, misleading, and deceptive representation, Plaintiff Dalewitz and the Class members would not have been willing to pay the same amount for the Product they purchased and/or would not have been willing to purchase the Product at all, or to purchase as many of the Products.

55.     Upon information and belief, Defendant has profited enormously from the falsely and deceptively marketed Product.

## JURISDICTION AND VENUE

56.     This Court has personal jurisdiction over the parties in this case.

57.     Defendant P&G is incorporated in Delaware and headquartered in Ohio.

58.     Defendant regularly conducts and transacts business in New York, purposefully avails itself of the laws of New York, markets the Product to consumers in New York, and sells the Product throughout New York.

59.     Plaintiff Dalewitz is a citizen of New York and consents to this Court's jurisdiction.

60.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class comprises at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiff Dalewitz alleges that the total claims of individual members of the proposed Class (as defined herein) exceed $5,000,000 in the aggregate, exclusive of interest and costs.

61.    Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of the Products, occurred within this District.

## **PARTIES**

62.    Plaintiff Alan Dalewitz is an individual consumer who is a currently a citizen of New City, New York.

63.    During the Class Period, Plaintiff Dalewitz purchased Oral-B Glide Products every six months in multi-pack quantities at Costco Wholesale, located at 50 Overlook Blvd, Nanuet, NY 10954.

64.    Plaintiff Dalewitz, when he purchased the Products, saw and believed that the Product was healthy, based on the fact that the Product was a part of Defendant's "Pro-Health" line. The health representations of the Product were material to Plaintiff Dalewitz and encouraged him to make his purchases. Plaintiff Dalewitz relied upon these representations, which as a consumer he had no reason to doubt.

65.     Plaintiff Dalewitz would not have purchased the Product or would not have purchased them on the same terms, if he had known that contrary to Defendant's representations, the Product was associated with high levels of PFAS chemicals.

66.     As a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered, and continues to suffer, economic injuries.

67.     On April 28, 2022, Plaintiff sent Defendant a letter about the allegations set forth in this Complaint. Defendant responded but the issue has not been resolved.

68.     Accordingly, Plaintiff Dalewitz, on behalf of himself and all other members of the Class, seeks relief, including punitive damages, due to Defendant's acts and practices.

## CLASS ALLEGATIONS

69.     Plaintiff Dalewitz brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated individuals nationwide (the "Class"), defined as follows:

> All consumers who purchased the Products within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

70.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Product (as defined herein) in New York during the Class Period (the "New York Subclass").

71.     Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

72.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    (a)     Whether Defendant is responsible for the advertising at issue;

    (b)     Whether the advertising of the Product was unfair, false, deceptive, fraudulent and/or unlawful;

    (c)     Whether Defendant breached a warranty created through the marketing of its Product; and

    (d)     Whether Defendant's conduct as set forth above injured Plaintiff Dalewitz and Class members.

73.     Plaintiff Dalewitz's claims are typical of the claims of the Class in that he was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Product, and suffered a loss as a result of those purchases.

74.     The precise number of the Class members and their identities are unknown to Plaintiff Dalewitz at this time but may be determined through discovery.

75.     Plaintiff Dalewitz is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions involving false advertising, and he intends to prosecute this action vigorously.

76.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the potential for inconsistent or contradictory judgments. The substantive claims of Plaintiff Dalewitz and the

Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Dalewitz's and the Class members' claims together is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

78.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

79.     The prerequisites to maintaining a class action for equitable relief are met. By representing that the Product sold by Defendant is "Pro-Health" and by omitting the likelihood of PFAS exposure, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

80.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

81.　Defendant's conduct is generally applicable to the Class as a whole, and Plaintiff Dalewitz seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

82.　Plaintiff Dalewitz knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
**Violations of the New York General Business Law § 349**
**(On Behalf of Plaintiff Dalewitz and the New York Subclass)**

83.　Plaintiff Dalewitz realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

84.　The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

85.　Defendant markets the Products as conferring health benefits, when testing has shown the likely presence of PFAS, which have a negative impact on human health.

86.　Defendant has violated, and continues to violate, § 349 of the New York General Business Law ("NYGBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of § 349, Plaintiff Dalewitz and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

87.　Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff Dalewitz and the New York Subclass members to purchase and to pay the requested price for the Product when they otherwise would not have, or would not have purchased as much.

88.　Defendant made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

89.     Plaintiff Dalewitz and the New York Subclass members have been injured by their purchase of the Product, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

90.     Defendant's advertising induced Plaintiff Dalewitz and the New York Subclass members to buy the Product, to buy more of them, and/or to pay the price requested.

91.     As a direct and proximate result of Defendant's violation of § 349, Plaintiff Dalewitz and other members of the New York Subclass paid for falsely advertised Product and, as such, have suffered damages in an amount to be determined at trial.

92.     By reason of the foregoing, Plaintiff Dalewitz and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 349(h).

## COUNT II
### Violations of the New York General Business Law § 350
### (On Behalf of Plaintiff and the New York Subclass)

93.     Plaintiff Dalewitz realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

94.     The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

95.     New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

96.     NYGBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

97.     Plaintiff Dalewitz and the members of the New York Subclass are consumers who purchased Defendant's Product in New York.

98.     As a seller of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

99.     Defendant's representations (made by statement, word, design, device, sound, or any combination thereof), and also the extent to which Defendant's advertising has failed to reveal material facts with respect to its Product, as described above, have constituted false advertising in violation of § 350.

100.     Defendant's false advertising was knowing and intentional, as at least one study linking the Product to high levels of PFAS exposure was published in 2019.[35]

101.     Defendant's actions led to direct, foreseeable, and proximate injury to Plaintiff Dalewitz and the members of the New York Subclass.

102.     As a consequence of Defendant's deceptive marketing scheme, Plaintiff Dalewitz and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Product had the truth been known, would not have paid the requested price for the Product and/or would have purchased less of the Product; moreover, as a result of Defendant's conduct, Plaintiff Dalewitz and the other members of the New York Subclass received products of less value than what they paid for.

103.     By reason of the foregoing, Plaintiff Dalewitz and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 350-e(3).

---

[35] Boronow, *supra* note 14.

## COUNT III
### Fraudulent Concealment
### (on Behalf of Plaintiff Dalewitz and All Class Members)

104.  Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

105.  Plaintiff brings this claim individually and on behalf of the Class.

106.  At the time Plaintiff and Class Members purchased the Product, Defendant did not disclose the fact that the Product had been associated with high levels of PFAS chemicals.

107.  Defendant affirmatively misrepresented the Product as an oral health product.

108.  Defendant also knew that its omissions and misrepresentations regarding the Product were material, and that a reasonable consumer would rely upon Defendant's representations (and corresponding omissions) in making purchasing decisions.

109.  Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Product.

110.  Plaintiff and Class Members were reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions.

111.  Plaintiff and Class Members had a right to reply upon Defendant's representations (and corresponding omissions), as only Defendant knows the truth about how the Product is manufactured.

112.  Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's omissions and misrepresentations, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dalewitz respectfully requests that the Court enter judgment in his favor and in favor of the Class as follows:

A.     An order certifying the proposed Class and Subclass; appointing Plaintiff Dalewitz as representative of the Class and Subclass; and appointing Plaintiff Dalewitz's undersigned counsel as class counsel for the Class and Subclass;

B.     An order declaring that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.     An order declaring that Defendant's conduct violates the statutes referenced herein;

D.     An order awarding monetary damages, including actual damages, statutory damages, and punitive damages, in the maximum amount provided by law under the statutes named herein;

E.     An order awarding compensation for breach of warranty;

F.     An order for prejudgment interest on all amounts awarded;

G.     An order awarding Plaintiff Dalewitz and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.     Any further relief that the Court may deem appropriate.

## **JURY TRIAL DEMANDED**

113.     Plaintiff Dalewitz hereby demands a trial by jury.

DATED: August 26, 2022                    **RICHMAN LAW & POLICY**

Kim E. Richman
1 Bridge Street, Suite 83
Irvington, NY 10533
T: (914) 693-2018
krichman@richmanlawpolicy.com


**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Alec M. Leslie
888 7th Avenue
New York, New York 10019

T: (646) 837-7150
jarisohn@bursor.com
aleslie@bursor.com