**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALAN DALEWITZ, <br><br>         *Plaintiff*, <br><br>    v. <br><br> THE PROCTER & GAMBLE COMPANY, <br><br>         *Defendant*. | Case No. 7:22-cv-07323 <br><br> The Honorable Nelson S. Román |

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S
<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................... 2

LAW AND ARGUMENT ............................................................................................ 4

   I.     GOVERNING LEGAL STANDARDS ............................................................. 4

   II.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE
        THEY ARE IMPLAUSIBLE, AS ALREADY HELD BY OTHER COURTS ............. 6

   III.   THE COURT SHOULD DISMISS PLAINTIFF'S GBL CLAIMS FOR THE
        INDEPENDENT REASON THAT THERE IS NOTHING MATERIALLY
        MISLEADING OR DECEPTIVE ABOUT GLIDE'S MARKETING ........................ 11

        A.     Plaintiff Fails to Plead an Affirmative Misrepresentation Regarding
               Glide's Pro-Health Messaging ........................................................... 11

        B.     Plaintiff Has Failed to Identify Any Material Omission Under the GBL .......... 14

        C.     General Statements Regarding Health and the Environment
               Are Non-Actionable Puffery ............................................................... 17

   IV.   PLAINITFF LACKS STANDING UNDER ARTICLE III AND THE GBL ............... 19

   V.    PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR FRAUD
        AND FAILS TO ALLEGE FRAUD WITH PARTICULARITY ................................. 19

CONCLUSION ........................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                              **Page(s)**

*Absolute Activist Value Master Fund. Ltd. v. Ficeto*,
　　677 F.3d 60 (2d Cir. 2012)..........................................................................................5

*Allen v. Wright*,
　　468 U.S. 737 (1984)....................................................................................................4

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
　　671 F.3d 140 (2d Cir. 2011)............................................................................5, 12, 14

*Andrews v. The Procter & Gamble Company*,
　　No. EDCV 19-00075, 2019 U.S. Dist. LEXIS 211567 (C.D. Cal. June 3,
　　2019) ............................................................................................................... *passim*

*Arroyo v. PHH Mortg. Corp.*,
　　No. 13-CV-2335, 2014 U.S. Dist. LEXIS 68534 (E.D.N.Y. May 19, 2014) .........................21

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)....................................................................................................5

*Banque Arabe et Internationale D'Investissement v. MD Nat'l Bank*,
　　57 F.3d 146 (2d Cir. 1995)........................................................................................20

*Bautista v. Cytosport, Inc.*,
　　223 F. Supp. 3d 182 (S.D.N.Y. 2016)........................................................................5

*Belcastro v. Burberry Ltd.*,
　　No. 16-CV-1080, 2017 U.S. Dist. LEXIS 198414 (S.D.N.Y. Dec. 1, 2017) .........................19

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)....................................................................................................5

*Bildstein v. Mastercard Int'l Inc.*,
　　329 F. Supp. 2d 410 (S.D.N.Y. 2004)......................................................................14

*Brodie v. Green Spot Foods, LLC*,
　　503 F. Supp. 3d 1 (S.D.N.Y. 2020) ..................................................................6, 13, 15

*Brown v. Kerry Inc.*,
　　No. 20-CV-9730, 2021 U.S. Dist. LEXIS 224980 (S.D.N.Y. Nov. 22, 2021).........................17

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
　　No. 17 Civ. 1580, 2021 U.S. Dist. LEXIS 158900 (S.D.N.Y. Aug. 23, 2021) .........................18

*Chufen Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020)..................................................................................11, 13

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...........................................................................................................5

*Colpitts v. Blue Diamond Growers*,
   527 F. Supp. 3d 562 (S.D.N.Y. 2021)..........................................................................20

*DirecTV Latin Am., LLC v. Park 610, LLC*,
   691 F. Supp. 2d 405 (S.D.N.Y. 2010)..........................................................................20

*Duran v. Henkel of America, Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020).................................................................17, 19–21

*Dwyer v. Allbirds, Inc.*,
   No. 21-CV-5238, 2022 U.S. Dist. LEXIS 71055 (S.D.N.Y. Apr. 18, 2022)....................13, 17

*Eckler v. Wal-Mart Stores, Inc.*,
   No. 12-CV-727, 2012 U.S. Dist. LEXIS 157132 (S.D. Cal. Nov. 1, 2012) .............................9

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)..........................................................................................11

*Fishon v. Peloton Interactive, Inc.*,
   No. 19-cv-11711, 2022 U.S. Dist. LEXIS 143930 (S.D.N.Y. Aug. 11. 2022).................16, 17

*GMO Free USA v. Cover Girl Cosmetics*,
   No. 2021 CA 004786 B, *slip op.* (D.C. Super. Ct. June 1, 2022) ................................... *passim*

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996)............................................................................................6

*Housey v. The Procter & Gamble Co.*,
   No. 21 Civ. 2286, 2022 U.S. Dist. LEXIS 53603 (S.D.N.Y. Mar. 24, 2022)....................13, 14

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)..........................................................................................20

*Lieberthal v. North Country Lanes, Inc.*,
   221 F. Supp. 685 (S.D.N.Y. 1963) ...............................................................................12

*Lugones v. Pete & Gerry's Organic, LLC*,
   440 F. Supp. 3d 226 (S.D.N.Y. 2020)..........................................................................17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).........................................................................................................4

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
  19 F.4th 58 (2d Cir. 2021) .................................................................................4

*Marom v. City of New York*,
  No. 15-cv-2017, 2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016) ..........................6, 15

*McMillan v. Togus Reg'l Office, Dep't of VA*,
  294 F. Supp. 2d 305 (E.D.N.Y. 2003) ...................................................................8

*McVetty v. Tomtom N. Am., Inc.*,
  No. 19 Civ. 4908, 2022 U.S. Dist. LEXIS 125862 (S.D.N.Y. July 15, 2022).......11, 14, 19, 21

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993)..............................................................................6

*Ong v. Chipotle Mexican Grill*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018).................................................................18

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ..................................................................................14, 17

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. 2019)...............................................................15, 16

*Pelman v. McDonald's Corp.*,
  237 F. Supp. 2d 512 (S.D.N.Y. 2003).................................................................14

*Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*,
  68 F.3d 1478 (2d Cir. 1995)............................................................................20

*Ross v. AXA Equitable Life Ins. Co.*,
  115 F. Supp. 3d 424 (S.D.N.Y. 2015).................................................................19

*Segovia v. Vitamin Shoppe, Inc.*,
  No. 14-CV-7061, 2016 U.S. Dist. LEXIS 15171 (S.D.N.Y. Feb. 5, 2016).............................6

*In re Sling Media Slingbox Adver. Litig.*,
  202 F. Supp. 3d 352 (S.D.N.Y. 2016).................................................................14

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)....................................................................................4, 19

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)............................................................................12

*Turnipseed v. Simply Orange Juice Co.*,
  No. 20 Civ. 8677, 2022 U.S. Dist. LEXIS 38823 (S.D.N.Y. Mar. 4, 2022) ...................13, 16

iv

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
    403 F. Supp. 3d 361 (S.D.N.Y. 2019) ..............................................................17, 18

*Weiss v. Sherloq Revenue Sols., Inc.*,
    No. 19-cv-7103, 2021 U.S. Dist. LEXIS 47923 (S.D.N.Y. Mar. 12, 2021) .................5, 12, 14

*Wright v. Publrs. Clearing House, Inc.*,
    439 F. Supp. 3d 102 (E.D.N.Y. 2020) ...................................................................19

*Wynn v. Topco Assocs., LLC*,
    No. 19-CV-11104, 2021 U.S. Dist. LEXIS 9714 (S.D.N.Y. Jan. 19, 2021) ...................19–20

*Zaccagnino v. Nissan N. Am., Inc.*,
    No. 14 Civ. 3690, 2015 U.S. Dist. LEXIS 78441 (S.D.N.Y. June 16, 2015)..........................17

*Zottola v. Eisai Inc.*,
    564 F. Supp. 3d 302 (S.D.N.Y. 2021) ....................................................................19

**Other Authorities**

Federal Rule of Civil Procedure 9(b) .............................................................4, 5, 20, 21

Katherine E. Boronow, et al., *Serum Concentrations of PFASs and Exposure-
    Related Behaviors in African American and Non-Hispanic White Women*, 29
    J. EXPOSURE SCI. ENV'T EPIDEMIOLOGY 206 (2019), *available at*
    https://www.nature.com/articles/s41370-018-0109-y ...................................... *passim*

NAT'L INST. OF ENV'T HEALTH SCIS., *Perfluoroalkyl and Polyfluoroalkyl
    Substances (PFAS)*, https://.niehs.nih.gov/health/topics/agents/pfc/index.cfm
    (last visited Nov. 7, 2022)...........................................................................................3

SUPPLY CHAIN SOLUTIONS CENTER, *Testing for PFAS in Food Packaging*,
    https://bit.ly/3fNPHwF (last visited Nov. 7, 2022)............................................3, 10

## INTRODUCTION

In this putative class action, Plaintiff alleges that The Procter & Gamble Company ("P&G") falsely advertises its Oral-B Glide dental floss products (collectively "Glide") as "Pro-Health," and fails to disclose the presence of purportedly harmful per- and polyfluoroalkyl substances ('PFAS') in those products. The Court should dismiss Plaintiff's complaint because it pleads no facts that plausibly demonstrate that Glide contains *any* PFAS, let alone any that harmed him or any other consumer. Instead, Plaintiff pleads only that tests reveal the presence of fluorine in Glide, which Plaintiff asks the Court to treat as a "proxy" for PFAS. The complaint makes no concrete allegation whatsoever about harm to anyone resulting from Glide use. Facing virtually identical allegations brought by a different plaintiff, another federal district court previously dismissed a complaint making the same claims about Glide.

Even more recently, yet another court dismissed a false advertising claim, filed by one of Plaintiff's counsel in this case, based on the presence in a consumer product of a PFAS compound known as polytetrafluoroethylene ("PTFE") — a common polymer used safely in many well-known consumer products, like GORE-TEX. Although PTFE, like the thousands of other PFAS, would screen positive for fluorine, the court dismissed the plaintiff's claims because there is no basis to conclude that PTFE is unsafe. The Plaintiff's allegations in this case about screening for fluorine and speculative harm should meet the same fate. Indeed, the materials referenced in Plaintiff's own complaint confirm that of the thousands of different PFAS compounds, a risk to human health is associated with only a few. Plaintiff has failed to plead any facts plausibly showing that Glide includes such compounds or presents such a risk.

These realities expose Plaintiff's claims related to Pro-Health advertising as insufficient to support any claim as a matter of law. Flossing indisputably promotes dental health, and that renders

the claim "Pro-Health" either literally true or classic puffery that fails to mislead any reasonable consumer because there are no omitted facts that specifically or empirically contradict this general statement. Plaintiff unsurprisingly does not plead any injury-in-fact, and thus lacks both Article III and statutory standing. For these and other reasons discussed below, Plaintiff falls well short of alleging a plausible claim for violation of the New York General Business Law ("GBL") or common law fraud, and the Court should therefore dismiss his complaint with prejudice.

## FACTUAL BACKGROUND

Plaintiff generally alleges that P&G's marketing of Glide is "false and deceptive." Compl. at 1 (prefatory statement). He complains that Glide's advertising includes the phrase "Pro-Health," which he *questions* because the floss *might* contain some harmful PFAS compound. *Id.* Plaintiff never specifically alleges that Glide actually does contain a harmful PFAS — or any PFAS for that matter — but instead avers on "information and belief" that Glide "*most likely* contains per- and polyfluoroalkyl substances" that are purportedly "believed" (by whom, Plaintiff does not specify) to cause adverse health effects. *Id.* at 1 (prefatory statement) (emphasis added) & ¶ 22; *see also id.* ¶¶ 18, 21, & 85 (alleging the "likely" presence of PFAS). Plaintiff suggests that his information and belief about what he deems "likely" is based on some screening tests for "fluorine" or "organic fluorine," which he contends may serve as a "*proxy* for the presence of PFAS in a product." *Id.* at 1 (prefatory statement), ¶¶ 37 & 41 (emphasis added); *accord id.* ¶ 13 n.14 (citing Katherine E. Boronow, et al., *Serum Concentrations of PFASs and Exposure-Related Behaviors in African American and Non-Hispanic White Women*, 29 J. Exposure Sci. Env't Epidemiology 206 (2019), *available at* https://www.nature.com/articles/s41370-018-0109-y [hereinafter "Boronow paper"]).

Among the materials Plaintiff cites in his complaint is a document revealing that the screening for fluorine upon which he premises his claims "does *not* identify individual PFAS" in

Glide or any other tested product. SUPPLY CHAIN SOLUTIONS CENTER, *Testing for PFAS in Food Packaging*, https://bit.ly/3fNPHwF (last visited Nov. 7, 2022) (emphasis added) (cited in Compl. ¶ 41 n.32). Indeed, this document characterizes such screening only as a first step to collect data that might "trigger" further "investigation" with "more thorough" testing that is "relatively costly" to identify PFAS of a specific type. *Id.* Plaintiff further admits that there are "more than 9,000" different types of PFAS. Compl. ¶ 7. Other sources in the complaint resist any general notion that negative health consequences are actually caused by — or even associated with — more than a few of these thousands of PFAS compounds. For example, one of Plaintiff's cited sources cautiously mentions only "*possible* links between human exposures to PFAS and adverse health outcomes" about which the source says "many questions remain unanswered," including the "sources of exposure, and if and how they may cause health problems." NAT'L INST. OF ENV'T HEALTH SCIS., *Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, https://.niehs.nih.gov/ health/topics/agents/pfc/index.cfm (last visited Nov. 7, 2022) (cited in Compl. ¶ 7 n.7) (emphasis added).

Plaintiff also alleges, somewhat confusingly, that P&G states on its website that "PTFE is a material used generally in dental floss but not does mention which [Glide products] contain PTFE, or if PTFE is used by Defendant at all." Compl. ¶ 31 (footnote omitted). Even if PTFE were clearly at issue in his complaint, Plaintiff alleges no clear health concerns about PTFE, and instead avers only that it is "coming under increased scrutiny over its safeness" and that there may be questions about the safety of products used in its manufacture. *Id.* ¶¶ 14 & 15. The complaint contains no factual allegations regarding the manufacture of Glide.

Based on nothing more than these threadbare allegations and the citation of various sources that actually undercut his claims (as exemplified by those noted above), Plaintiff alleges that P&G

was somehow obligated to warn him about PFAS, and that he may not have bought Glide, or might have bought less of or paid less for it. *E.g.*, *id.* ¶¶ 54, 65 & 89. On this basis, he asserts claims for violation of the GBL (Counts I & II) and common-law fraud (Count III).

## LAW AND ARGUMENT

The Court should dismiss Plaintiff's claims because they fail as a matter of law. The complaint contains no factual allegations that plausibly support GBL and fraud claims. Instead, the complaint advances speculative and factually unsupported conclusions that amount to conjecture that Glide *might* contain some PFAS compound, which itself *might* pose a human health concern, and that the failure to disclose these possibilities *might* be material to consumers. This tenuous and far-reaching stacking of inferences is at odds with the law's requirement that a plaintiff plead sufficient factual matter to set forth a plausible claim. And for his fraud count, Plaintiff's speculative pleading even more starkly fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Indeed, Plaintiff fails even to meet the minimum requirement of justiciability because he does not plead facts supporting his standing to sue.

### I.      GOVERNING LEGAL STANDARDS

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). This constitutional limit on federal judicial power requires, among other things, a justiciable controversy that includes a litigant with standing to invoke the Court's subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III requires a plaintiff to show "an 'injury in fact.'" *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan*, 504 U.S. at 560–61). In this context, the injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016) (quoting *Lujan* 504 U.S. at 560). "[N]o Article III standing exists if a plaintiff's theory of injury rests on an

attenuated chain of inferences necessary to find harm," or a "subjective" or "speculative fear." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 n.5 & 418 (2013) (internal quotation marks and citation omitted).

Additionally, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" or it remains subject to dismissal. *Absolute Activist Value Master Fund. Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers [mere] 'labels and conclusions . . . will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Even if a legal theory appears cognizable and the factual allegations are detailed, if such "'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' they still fail to state a claim." *Id.* at 679. The doors of discovery stay locked "for a plaintiff armed with nothing more than conclusions" that "are not entitled to the assumption of truth." *Bautista v. Cytosport, Inc.*, 223 F. Supp. 3d 182, 187 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). Moreover, a plaintiff may plead herself out of a claim by relying on documents or other materials that contradict her allegations. *Weiss v. Sherloq Revenue Sols., Inc.*, No. 19-cv-7103, 2021 U.S. Dist. LEXIS 47923, at *7 (S.D.N.Y. Mar. 12, 2021) (Román, J.) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146–47 (2d Cir. 2011) (per curiam) (internal quotation marks omitted)).

In addition to these general rules, a plaintiff must plead fraud "with particularity." Fed. R. Civ. P. 9(b). To satisfy this standard, a complaint must "(1) detail the statements (or omissions)

**Case 7:22-cv-07323-NSR   Document 9   Filed 12/22/22   Page 12 of 28**

that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996). Put differently, the plaintiff must specify the who, what, where, when, and why of the alleged fraud. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

A plaintiff cannot avoid or evade these pleading standards simply by invoking the mantra "information and belief," especially with regard to what is otherwise nothing but rank speculation. *See, e.g.*, *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) ("Courts in this Circuit look unfavorably upon conclusory pleadings made on information and belief . . . especially with regard to consumer fraud claims such as those under GBL § 349." (citations omitted)); *Marom v. City of New York*, No. 15-cv-2017, 2016 U.S. Dist. LEXIS 28466, *29–30 (S.D.N.Y. Mar. 7, 2016) (dismissing claim by deeming "speculative" plaintiffs' allegations about facts they deemed "likely"); *cf. Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061, 2016 U.S. Dist. LEXIS 15171, at *11–12 (S.D.N.Y. Feb. 5, 2016) (Román, J.) (rejecting a legal theory that "require[d] a leap from the existing scientific research . . . made through nothing but speculation" (internal quotation marks and citation omitted)).

## II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE THEY ARE IMPLAUSIBLE, AS ALREADY HELD BY OTHER COURTS

Plaintiff's complaint depends on the merely speculative possibility that positive screening for fluorine supports a conclusion as to the presence of PFAS, and of a PFAS compound that is actually harmful, such that the failure to disclose its presence could be material to consumer purchasing decisions. Another federal district court has already dismissed claims based on this exact speculation about Glide. *See Andrews v. The Procter & Gamble Company*, No. EDCV 19-00075, 2019 U.S. Dist. LEXIS 211567, at *7–9 (C.D. Cal. June 3, 2019) (copy attached as Exh.

A). In *Andrews*, the Court confronted and rejected the notion that even the Boronow paper's peer-reviewed, published testing that showed measurable levels of "fluorine" in Glide could provide a basis for a false or misleading advertising claim premised on a purported failure to disclose the presence of harmful PFAS compounds. *See id.* at *7–9.

Importantly, the *Andrews* court observed that screening for the presence of "fluorine" shows only that PFAS compounds "*might* be present." *Id.* at *8. The court thus explained that the Boronow paper's findings fell short of supporting any plausible claim against Glide because it "was never tested for" PFAS. *Id.* The Boronow paper further cautioned that even if PFAS compounds were present in Glide, "additional data" would be required to show that such PFAS could "migrate into the saliva or onto hands" and thereby "contribute to an individual's body burden of" PFAS and thereby impact Glide's health or safety. *Id.* (internal quotation marks and citation omitted). Although the *Andrews* court granted leave to amend, it did so with a telling admonition: "[T]he Court cautions [plaintiff] to abide by his obligations under [Rule] 11 when alleging the factual basis for the purported fraudulent omissions that occurred here." *Id.* at *9.

Plaintiff's complaint suffers from all of the same material defects. It alleges only testing of Glide for organic fluorine, rather than PFAS, and relies on material that openly concedes that positive results for such tests only trigger a need for additional and more thorough testing. Indeed, Plaintiff does not — and cannot — allege that the mere presence of fluorine atoms necessarily reveals the presence of PFAS, let alone one that threatens actual harm to a single consumer who is exposed to it in this way. Another court, in confronting the case *GMO Free USA v. Cover Girl Cosmetics*, No. 2021 CA 004786 B, *slip op.* at 4–5 (D.C. Super. Ct. June 1, 2022) (copy attached as Exh. B), dismissed a similar lawsuit (brought by one of Plaintiff's counsel here) presenting virtually identical infirmities regarding the presence of a fluorine-containing compound.

More precisely, the *GMO Free* plaintiff alleged that PTFE, one of thousands of different PFAS compounds, was "neither sustainable nor safe." Exh. B, *GMO Free USA* at 4 (internal quotation marks and citation omitted). The court rejected this unsupported, conclusory allegation because the plaintiff failed to "cite any study or analysis concluding that PTFE," specifically, "is unsafe to humans or [is] unsustainable." *Id.* at 4–5. Observing "that different PFAS have potential different health effects and that PTFE has not been found to be toxic or environmentally unsafe," the court dismissed the plaintiff's claim. *Id.* The court rejected the notion that "defendants were obligated to disclose . . . that their product contains PTFE" or to disprove speculative assertions in the absence of facts demonstrating that PTFE "is unsafe or unsustainable." *Id.* at 7. In this case, the Court need not even reach those conclusions because the Plaintiff waffles about whether PTFE is even present in Glide — no doubt because he failed to employ testing necessary to support such a conclusion — and he more accurately avers only the conclusion that PTFE is "coming under increased scrutiny over its safeness." Compl. ¶ 14.

In short, both *Andrews* and *GMO Free* demonstrate persuasively why Plaintiff's claims in this case should be dismissed. Plaintiff's complaint relies largely on the same Boronow paper at issue in *Andrews*. The same limitations of the paper's reported data, noted by its own authors, serve as limitations in this case as well. Plaintiff quotes the Boronow paper numerous times in asserting that Glide use is "associated" with two particular PFAS compounds in the blood of users, PTFE and PFHxS. Compl. ¶¶ 13 & n.14, 33 & n.25, 34 & n. 26, and 35 & n.27; *see also id.* ¶ 100 & n.35. Of course, the fact of such an observed association is axiomatically not proof of causation. *McMillan v. Togus Reg'l Office, Dep't of VA*, 294 F. Supp. 2d 305, 315 (E.D.N.Y. 2003) (noting that mere "'associations' are not equivalent to cause[s]"). Correlation is not causation. Indeed, the Boronow paper also reported an association between college attendance and elevated PFHxS in blood levels.

*See* Boronow paper at 213–14 (2019) ("More education was associated with higher PFHxS among non-Hispanic whites[.]") (cited in Compl. ¶ 13 n.14). Neither Plaintiff nor anyone else has ever suggested that providers of higher education should be sued for PFAS exposure based on mere correlation. Yet Plaintiff seeks to draw the equally faulty inference in this case regarding Glide.

Lacking any plausible factual basis for concluding that Glide actually contains harmful PFAS compounds, the Boronow paper cannot salvage claims against P&G from dismissal. *Andrews*, 2019 U.S. Dist. LEXIS 211567, at *7–9. Similarly, as the court recognized in *GMO Free*, even the presence of a specifically identified fluorine-containing PFAS compound like PTFE — something Plaintiff does not even allege is in Glide — fails to prevent dismissal without plausible allegations of actual harm, as opposed to speculative conclusions about PTFE "coming under increased scrutiny" (Compl. ¶ 14) that lack a causal connection to harm or an injury-in-fact (*see* Ex. B, *GMO Free* at 4–5).

Plaintiff adorns his complaint with a number of additional citations not cited by the plaintiffs in *Andrews* or *GMO Free*, but this appears to be little more than theater, as various such materials actually serve to undercut his claims, as noted above. None establish that Glide contains any PFAS compound, let alone one that poses an actual safety or health risk to consumers. Instead, they debunk these notions, by describing the fluorine screening test upon which Plaintiff relies as inconclusive, and the science supporting a firm conclusion about the harm from any PFAS compound as nascent at best and nonexistent at worst. This record endows the Court with ample basis to dismiss Plaintiff's complaint. *See Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727, 2012 U.S. Dist. LEXIS 157132, at *28 (S.D. Cal. Nov. 1, 2012) (dismissing false advertising claims because of a "mismatch between the representations at issue and the evidence that allegedly debunks them").

Plaintiff makes specific allegations about his own testing of Glide for the presence of "organic fluorine," which he touts as superior to the mere screening for any fluorine by the Boronow paper's authors (Compl. ¶ 37), but this is a distinction without a difference. Indeed, whatever the purported superiority of his organic fluorine screening, Plaintiff admits that such testing suffers from the same limitation that doomed its usefulness in *Andrews*, namely that it does not actually detect any PFAS compound, let alone one that would result in a foreseeable risk of harm to Plaintiff through the use of Glide. *See, e.g.*, Compl. ¶ 12 (admitting that Plaintiff's screening detected merely "indicators" of PFAS); *id.* ¶ 41 (characterizing organic fluorine as a mere "proxy for the presence of PFAS in a product"); *see also* SUPPLY CHAIN SOLUTIONS CENTER, *Testing for PFAS in Food Packaging* (noting that such screening is but a first step before "more thorough testing") (cited by Compl. ¶ 41 n.32).

Plaintiff preemptively and defensively quotes a paper that observes there is no single test that can identify every specific type of PFAS. Compl. ¶ 39 & n.30. Fair enough, but that fails to excuse Plaintiff's speculation, based on information and belief, that Glide "*most likely* contains" PFAS and that the unidentified, hypothetical compounds present the potential for adverse health effects. Compl. at 1 (prefatory statement) (emphasis added) & ¶ 22; *see also id.* ¶¶ 18, 21, & 85 (alleging the "likely" presence of PFAS). It is irrelevant whether any test can detect all of the thousands of PFAS compounds. What matters is Plaintiff fails to allege a single fact that plausibly demonstrates that Glide contains any — that is, even one — PFAS compound that subjected him to an actual risk of harm. This same failure doomed the complaints in *Andrews* and *GMO Free*, and it should doom Plaintiff's complaint as well.

### III.   THE COURT SHOULD DISMISS PLAINTIFF'S GBL CLAIMS FOR THE INDEPENDENT REASON THAT THERE IS NOTHING MATERIALLY MISLEADING OR DECEPTIVE ABOUT GLIDE'S MARKETING

Plaintiff's complaint also fails for want of an allegation of any misrepresentation sufficient to support a claim under the GBL. "The elements of a cause of action under both §§ 349 and 350 are that: '(1) the challenged transaction was "consumer-oriented"; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct.'" *McVetty v. Tomtom N. Am., Inc.*, No. 19 Civ. 4908, 2022 U.S. Dist. LEXIS 125862, at \*9 (S.D.N.Y. July 15, 2022) (Román, J.) (citations omitted). "Deceptive acts" are those "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam)). "[A] court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Id.* (citation omitted). Plaintiff fails to state a claim under the GBL because he never identifies any actionable misstatement or material omission regarding Glide. Indeed, the challenged statement that Glide is "Pro-Health" constitutes either a literal truth or paradigmatic, non-actionable puffery.

### A.   Plaintiff Fails to Plead an Affirmative Misrepresentation Regarding Glide's Pro-Health Messaging.

Plaintiff fails to allege an actionable misrepresentation in Glide's advertising. He attempts to plead an affirmative misrepresentation based on Glide's "Pro-Health" marketing. *See* Compl. at 1 (prefatory statement). But the images of Glide's packaging contained in the complaint do not even contain the "Pro-Health" statements about which Plaintiff complains:



Compl. ¶ 26. Although one image does appear to include "Pro-Health" language taken from what looks to be an Amazon product page (*id.* ¶ 26 n.20), Plaintiff alleges that he purchased Glide at Costco, not from Amazon. *Id.* ¶ 63.

The contradiction between Plaintiff's conclusory allegations with the actual images he cites in the complaint effectively pleads Plaintiff out of a claim. *See, e.g.*, *Weiss*, 2021 U.S. Dist. LEXIS 47923, at *7 ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." (quoting *Amidax Trading Grp.*, 671 F.3d at 146–47 (internal quotation marks omitted)); *see also, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[A] plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims."), *amended on other grounds*, 275 F. 3d 1187 (9th Cir. 2001).

Fundamentally, there is nothing misleading or deceptive about advertising Glide as "Pro-Health." Plaintiff does not dispute that flossing with products like Glide promotes good dental health, and everyone who has ever visited a dentist knows this fact. *Cf. Lieberthal v. North Country Lanes, Inc.*, 221 F. Supp. 685, 687 (S.D.N.Y. 1963) ("[T]he nature of the sport (or recreation) of bowling is a well known fact of which the Court can take judicial notice."). Because the challenged statement is both true and not misleading, it cannot support a claim under the GBL. This reality is unaltered by Plaintiff's speculative musings that Glide "most likely" contains some PFAS compound based on the

"information, belief" and inconclusive testing regarding fluorine. Compl. at 1 (prefatory statement).
And there is neither information nor reasonable basis for belief in the further speculation that Glide
contains some harmful PFAS that could pose a danger to users of Glide. "Courts in this Circuit look
unfavorably upon conclusory pleadings made on information and belief . . . especially with regard to
consumer fraud claims such as those under GBL § 349." *Brodie*, 503 F. Supp. 3d at 13 (citations
omitted); *see also, e.g.*, *Housey v. The Procter & Gamble Co.*, No. 21 Civ. 2286, 2022 U.S. Dist.
LEXIS 53603, at *9, 14 (S.D.N.Y. Mar. 24, 2022) (rejecting toothpaste claims of "enamel safe
whitening," promoting "healthier gums," or "'gently clean[],' due to" a charcoal ingredient, where
the plaintiff's cited materials did "not support plaintiff's claims"); *accord* Exh. B, *GMO Free* at 4–
5 (dismissing claims for failure to "cite any study or analysis concluding that PTFE," as specific type
of PFAS, "is unsafe to humans or unsustainable"); *cf. Turnipseed v. Simply Orange Juice Co.*, No.
20 Civ. 8677, 2022 U.S. Dist. LEXIS 38823, at *13–14 (S.D.N.Y. Mar. 4, 2022) (Román, J.).

Moreover, "context is crucial" in applying the GBL's reasonable consumer standard. *Chufen
Chen*, 954 F.3d at 501 (internal quotation marks and citation omitted). Thus, one need not anticipate
and preemptively disprove every issue unrelated to the advertising statements as actually made in
context. *See Dwyer v. Allbirds, Inc.*, No. 21-CV-5238, 2022 U.S. Dist. LEXIS 71055, at *17–18
(S.D.N.Y. Apr. 18, 2022). In the present circumstances, no reasonable consumer would consider
"Pro-Health" as a representation about the absence of thousands of fluorine-containing compounds.
Instead, the most reasonable consumer understanding of the phrase "Pro-Health" on Glide is that its
use promotes dental health,[1] which it does.

---

[1] The complaint refers to P&G's stated "dedicat[ion] to 'helping ensure a healthy planet for present
and future generations.'" *See* Compl. ¶ 3. But this statement is unconnected to any "Pro-Health"
claim and uncontroverted. In any event, the complaint includes no factual allegations that Glide
negatively impacts the environment and, as discussed below, such general aspirational statements
are not a basis for liability under the GBL.

Regardless, the use of Glide is not stripped of its "Pro-Health" reality based on Plaintiff's speculations about the presence of unidentified PFAS or their imagined threats to health or safety about which he pleads no plausible facts. As previously noted, these materials that Plaintiff voluntarily elected to rely upon in advancing his speculative pleading instead serve to refute Plaintiff's conclusory allegations. *Housey*, 2022 U.S. Dist. LEXIS 53603, at *16 ("Where a plaintiff has chosen to use scientific evidence to state her claims, and that evidence does not support her claims, plaintiff has not plausibly pled her claims."); *Weiss*, 2021 U.S. Dist. LEXIS 47923, at *7 ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." (quoting *Amidax Trading Grp.*, 671 F.3d at 146–47) (internal quotation marks omitted)); *McVetty*, 2022 U.S. Dist. LEXIS 125862, at *13. Because Plaintiff has failed to identify any misleading or deceptive statement regarding Glide, Plaintiff cannot state any claim premised on an affirmative misstatement.

### B.      Plaintiff Has Failed to Identify Any Material Omission Under the GBL.

To state an actionable omission claim under the GBL, "[I]t is not sufficient for the plaintiffs to point to the omission alone." *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003). Rather, the plaintiff has to "show why the omission was deceptive," *i.e.*, materially misleading. *Id.* Materially misleading omissions are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). A "material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *In re Sling Media Slingbox Adver. Litig.*, 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016) (quoting *Bildstein v. Mastercard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004)). For this reason, courts generally require a threat of harm that is actual — not one anchored in mere

conjecture — for the omission of that threat to be "material." *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019).

Plaintiff fails to allege an actual omission regarding the presence of any PFAS compound in Glide, let alone one that presented Plaintiff with a real risk of harm. Plaintiff alleges only that P&G did not disclose the conclusion that Glide "*most likely* contain[s] PFAS" and "the *likely* presence of harmful chemicals, such as PFAS," even though Plaintiff is unsure of such things. Compl. ¶¶ 18 & 28 (emphasis added); *see also id.* ¶¶ 31–32. Such rank speculation is utterly at odds with the plausibility required to survive a motion to dismiss. *See Marom*, 2016 U.S. Dist. LEXIS 28466, at *29 (rejecting allegations that a plaintiff deems "likely" as merely "speculative" assertions that fail under Rule 12); *see also Brodie*, 503 F. Supp. 3d at 13 (indicating reluctance to consider "conclusory pleadings made on information and belief"). Relatedly, Plaintiff does not even attempt to allege that flossing is an exposure source of the PFAS that Plaintiff insists *might* be in Glide. Plaintiff does not plead an omission, he pleads speculative conclusions about the possibility of an omission.

Even if Plaintiff had adequately pleaded an omission, he fails to allege it was material, or that there was an actual threat of harm. *Parks*, 377 F. Supp. 3d at 248. The *Parks* case is instructive. It involved dog food marketed as "natural." *Id.* The plaintiff alleged this was materially misleading because the dog food contained trace amounts of glyphosate, an "unnatural ingredient[]." *Id.* at 247. The court rejected plaintiff's claim because it did not plausibly allege anything materially misleading, explaining that "[t]he presence of negligible amounts of glyphosate in a dog food product that do not have harmful, 'toxic,' or 'carcinogenic' effects is not likely to affect consumers' decisions in purchasing the product." *Id.* at 248.

15

Here, as in *Parks*, Plaintiff has failed to allege facts that plausibly show any actual risk of harm that would impact a reasonable customer's purchasing decisions. The presence of fluorine — or organofluorine — without plausible factual allegations that show it indicates the presence of a harmful PFAS that could expose users of Glide to injury is simply insufficient to state a claim. The complaint attempts to sidestep this reality by citing generic surveys that indicate the uncontroversial notion that consumers are "interested in knowing about *the presence* of *harmful* chemicals in everyday products." Compl. ¶¶ 43–44 (emphasis added). But the object of these surveys does not match Plaintiff's speculative allegations that Glide *might* contain some unidentified PFAS that *might* be harmful.

Plaintiff also cites his own purported survey alleging that most "respondents said that the presence of PFAS in dental floss would be either important or very important to their purchasing decisions." *Id.* ¶ 45. As an initial matter, Plaintiff fails to disclose sufficient information about this "survey" to show whether it actually supports his speculative claims or represents the views of an objective and reasonable consumer. *See Turnipseed*, 2022 U.S. Dist. LEXIS 38823, at *13–14 (rejecting claims based on "a laboratory test" for failure "to provide any details whatsoever about what this laboratory test entailed" including "the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc." (citations omitted)).

Moreover, the subjective preferences of respondents to an unidentified survey cannot manufacture materiality. Liability under the statue does not depend on what "a particular consumer, would do." *Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711, 2022 U.S. Dist. LEXIS 143930, at *39 (S.D.N.Y. Aug. 11. 2022). The GBL "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information

specific to its situation." *Oswego*, 647 N.E.2d at 745. "There is no obligation under GBL § 349 or § 350 to provide whatever information a consumer might like to know." *Dwyer*, 2022 U.S. Dist. LEXIS 71055, at *11–12, 17 (citing *Oswego*, 647 N.E.2d at 745); Exh. B, *GMO Free* at 7 (rejecting the argument that the "defendants were obligated to disclose . . . that their product contains PTFE"). In short, Plaintiff's speculation is no substitute for plausible factual allegations, and this Court should accordingly dismiss his GBL claims.

### C. General Statements Regarding Health and the Environment Are Non-Actionable Puffery.

Alternatively, the "Pro-Health" and environmentally friendly messages referred to in the complaint constitute non-actionable puffery, which "cannot support a claim under GBL Sections 349 and 350." *Brown v. Kerry Inc.*, No. 20-CV-9730, 2021 U.S. Dist. LEXIS 224980, at *12 (S.D.N.Y. Nov. 22, 2021) (citing *Duran v. Henkel of America, Inc.*, 450 F. Supp. 3d 337, 346–47 (S.D.N.Y. 2020) ("Statements that are mere puffery cannot support a claim under GBL §§ 349 or 350, and thus 'courts can determine that a statement is puffery as a matter of law.'" (quoting *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020)))).

Courts have defined puffery "as exaggerated general statements that make no specific claims on which consumers could rely." *Fishon*, 2020 U.S. Dist. LEXIS 208861, at *16–17. General references to "health" benefits "fall comfortably" within the definition of puffery. *See Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 371 (S.D.N.Y. 2019) ("Statements promoting a 'healthier you' fall comfortably within the category of non-actionable puffery, and do not plausibly support a claim of false advertising." (citation omitted)); *accord* Ex. B, *GMO Free* at 6 (finding "good-for-you makeup and skincare" that prioritizes "the health of our consumers and the planet" to be puffery); *Zaccagnino v. Nissan N. Am., Inc.*, No. 14 Civ. 3690, 2015 U.S. Dist. LEXIS 78441, at *8 (S.D.N.Y. June 16, 2015) (holding that "promoting a car as generally safe and reliable" is

puffery). Further, "Generic aspirational statements" such as a "relentless focus and commitment to safety" are "quintessential examples of puffery." *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, No. 17 Civ. 1580, 2021 U.S. Dist. LEXIS 158900, at *26–27 (S.D.N.Y. Aug. 23, 2021) (internal quotation marks omitted) (quoting *Ong v. Chipotle Mexican Grill*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018)).

Glide's Pro-Health marketing is non-specific, non-actionable puffery. It makes no objective statement regarding Glide, its contents, or its manufacturing. It does not implicitly or explicitly state that Glide is made from any particular materials, or that it is free from any particular substances. Pro-Health merely speaks more broadly to the known benefits of regular flossing, as opposed to any specific representation about Glide. *See Weight Watchers Int'l, Inc.*, 403 F. Supp. 3d at 371.

Likewise, P&G's corporate goal for environmental sustainability, cited by Plaintiff in the complaint, is vague and non-specific puffery. The only statement the complaint identifies is P&G's "dedicat[ion] to 'helping ensure a healthy planet for present and future generations.'" Compl. ¶ 3. Setting aside whether Plaintiff ever even viewed this statement, it makes no representation about Glide, how it is made, or from what it is made. The statement merely reflects P&G's broad ambitions to protect the environment, and those constitute classic puffery. *See In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2021 U.S. Dist. LEXIS 158900, at *26–27 ("Generic aspirational statements" such as a "relentless focus and commitment to safety" are "quintessential examples of puffery." (internal quotation marks omitted)). No reasonable consumer would read this statement as referring to Glide or the company wide absence of compounds with fluorine molecules in all P&G products. All of the statements identified in the complaint qualify as puffery under applicable law, and Plaintiff's claims should be dismissed.

## IV.     PLAINTIFF LACKS STANDING UNDER ARTICLE III AND THE GBL

An actionable injury under the GBL exists only if a plaintiff receives less than he bargained for or was promised. *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 435–36 (S.D.N.Y. 2015); *McVetty*, 2022 U.S. Dist. LEXIS 125862, at *9; *Belcastro v. Burberry Ltd.*, No. 16-CV-1080, 2017 U.S. Dist. LEXIS 198414, at *7–8 (S.D.N.Y. Dec. 1, 2017); *Duran*, 450 F. Supp. 3d at 350. Even when a plaintiff relies on a GBL "price premium" theory, he must still allege "material qualities lacking from th[e] products that would permit the Court to infer the payment of a price premium." *Wright v. Publrs. Clearing House, Inc.*, 439 F. Supp. 3d 102, 116 (E.D.N.Y. 2020).

Plaintiff fails to allege any actionable Article III or GBL injury based on his speculations about Glide containing any PFAS, let alone one that might have exposed him to any risk of harm. Conjecture fails to satisfy Article III's standing requirements as a matter of law. *Spokeo, Inc.*, 578 U.S. at 338 (ordaining that an alleged injury cannot be "conjectural or hypothetical"). Likewise, Plaintiff's purported economic injuries under the GBL — *e.g.*, that he would not have bought a floss "associated with high levels of PFAS chemicals" (*e.g.*, Compl. ¶¶ 65 & 87) — rest on a series of his own speculative inferences. Plaintiff has no factual basis for a price premium theory under the GBL because there is no plausible allegation that he received less than what he bargained for: an effective floss product, the use of which contributes to good dental health.

## V.     PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR FRAUD AND FAILS TO ALLEGE FRAUD WITH PARTICULARITY

Plaintiff's claim for fraud fails for all of the reasons discussed above. To state a claim for fraud, Plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 316 (S.D.N.Y. 2021) (quoting *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 U.S. Dist.

LEXIS 9714, at *21–22 (S.D.N.Y. Jan. 19, 2021) (internal quotation marks omitted)). "To establish fraudulent concealment, a plaintiff must also prove that the defendant had a duty to disclose the material information." *Banque Arabe et Internationale D'Investissement v. MD Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995); *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995) (holding that a duty might arise if there is a fiduciary relationship, a "party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party," or "one party possess[es] superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge"); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 434 (S.D.N.Y. 2010). To establish fraudulent intent, Plaintiff must plead facts showing (1) that P&G "had both motive and opportunity to commit fraud," or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *Duran*, 450 F. Supp. 3d at 353 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)). Further, fraud allegations are subject to Rule 9(b), requiring Plaintiff to plead this claim's elements "with particularity." Fed. R. Civ. P. 9(b); *Lerner*, 459 F.3d at 290.

Plaintiff's fraud claim fails to meet these requirements for the same reason his GBL claims fail, *i.e.*, the lack of any facts plausibly demonstrating a material misrepresentation, omission of fact, or an actual, non-speculative injury. Moreover, the complaint does not allege that P&G acted with fraudulent intent, other than by offering mere conclusions that P&G "knew that its omissions and misrepresentations regarding [Glide] were material" (Compl. ¶ 108) and that only P&G "knows the truth about how" Glide is "manufactured" (*id.* ¶ 111). Plaintiff, tellingly, never specifies how the product or its advertising is "deceptive" or what is wrong with how it is "manufactured." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 586 (S.D.N.Y. 2021). Moreover, Plaintiff's generic allegations about P&G wanting to make money are insufficient to

move the needle. *Id.* ("[S]imply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent.") (quoting *Duran*, 450 F. Supp. 3d at 354).

In addition, Plaintiff fails to meet Rule 9's heightened pleading standards to establish the alleged fraud. For example, Plaintiff repeatedly complains about "Pro-Health" statements (*e.g.*, Compl. ¶ 26), but he does not allege the where, when, or how he saw such alleged representations, or whether he even relied on them. *See McVetty*, 2021 U.S. Dist. LEXIS 47922, at *14 (identifying the same fatal omissions in fraud allegations). In fact, his generic pictures of "Glide's Advanced Multi-Protection Floss," do not show any "Pro-Health" labeling. Compl. ¶ 26. The complaint contains no factual allegations that Plaintiff saw or relied on any of the statements he seeks to challenge, much less with the details required to state a claim in fraud. It is impossible to discern if Plaintiff saw the statements about which he now complains either before or after making his purchases. Without more particularized detail, as the law requires, "the Court is left to guess as to when certain . . . events occurred," and how they occurred, both of which warrant dismissal of Plaintiff's fraud claims. *Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335, 2014 U.S. Dist. LEXIS 68534, at *28 (E.D.N.Y. May 19, 2014). For all of these reasons, the complaint fails to state a claim for fraud or false advertising.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint in its entirety, and with prejudice.

Respectfully submitted,

*s/ Adam R. Fox*

Adam R. Fox (5082151)
SQUIRE PATTON BOGGS (US) LLP
1211 Avenue of the Americas, 26th Floor
New York, NY  10036
Telephone:   (212) 872-9800
Facsimile:   (212) 872-9815
Email:        adam.fox@squirepb.com

*Counsel for Defendant, The Procter & Gamble Company*