**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALAN DALEWITZ, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>                 Defendant. | Case No. 7:22-cv-07323<br><br>The Honorable Nelson S. Román |

**<u>PLAINTIFF'S MEMORANDUM OF LAW</u>**
**<u>IN OPPOSITION TO</u>**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENTS..................................................................................................................... 4

   I.   Plaintiff's Claims Are Plausible and Easily Distinguishable from P&G's Authority. ....... 4

      A.   Plaintiff's Complaint Relies on His Own, Independent Testing for Organic Fluorine, Not on Reference to a Public Study of Fluorine Only. .................................................................... 4

      B.   P&G's Next Authority Specifically Endorses Plaintiff's Method of Testing................. 5

   II.   The Complaint Properly Alleges that P&G Deceived Consumers with Its "Pro-Health" Representations and Lack of Disclosure About the Presence of PFAS................................... 7

      A.   Statements Regarding Health Are Representations of Fact. .......................................... 8

         1.   P&G Misrepresented the Quality of the Product. ...................................................... 8

         2.   Plaintiff's Complaint Sufficiently Alleges that P&G Omitted Material Information... ............................................................................................................................... 10

            a.   Consumers Want to Avoid Dangerous Chemicals in Their Oral Hygiene Products. ............................................................................................................................... 12

   III.   Plaintiff and Class Members Suffered Economic Injuries by Purchasing P&G's Product. ............................................................................................................................... 13

   IV.   P&G Had and Has a Duty to Disclose the Presence of PFAS in Its Product. ............. 14

CONCLUSION.................................................................................................................... 18

## **TABLE OF AUTHORITIES**

### **Cases**

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ................................................................................................................... 14

*Andrews v. P&G*, No. EDCV 19-00075, 2019 U.S. Dist. LEXIS 211567 (C.D. Cal. June 3, 2019) ................................................................................................................................... 4

*Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1 (S.D.N.Y. 2020) (Ramos, J.), ........... 12, 13

*Buonasera v. Honest Co.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016) (Marrero, J.) ........................... 8

*Cablevision Sys. Corp. v. Verizon N.Y. Inc.*, 119 F. Supp. 3d 39 (E.D.N.Y. Aug. 7, 2015).......... 9

*Catalano v. BMW of N. Am., Ltd. Liab. Co.*, No. 15-cv-4889 (KBF), 2016 U.S. Dist. LEXIS 78901 (S.D.N.Y. June 16, 2016)................................................................................... 16, 17

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ................................................... 1

*Contant v. Bank of Am. Corp.*, No. 17 Civ. 3139 (LGS), 2018 U.S. Dist. LEXIS 183586 (S.D.N.Y. Oct. 25, 2018) ............................................................................................. 6

*Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83 (S.D.N.Y. 2021) (Karas, J.). .................. 7, 8

*Dawood v. Gamer Advantage LLC*, No. 2:22-cv-00562, 2022 U.S. Dist. LEXIS 138774 (E.D. Cal. Aug. 4, 2022) .................................................................................................. 18

*Dupere v. Ethicon, Inc.*, No. 21cv2605 (DLC), 2022 U.S. Dist. LEXIS 31096 (S.D.N.Y. Feb. 22, 2022) ................................................................................................................... 15

*Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337 (S.D.N.Y. 2020) (Engelmayer, J.)................ 8

*Dwyer v. Allbirds, Inc.*, No. 21-CV-5238 (CS), 2022 U.S. Dist. LEXIS 71055 (S.D.N.Y. Apr. 18, 2022) ................................................................................................................... 10

*Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727, 2012 U.S. Dist. LEXIS 157132 (S.D. Cal. Oct. 31, 2012) ................................................................................................................ 7

*Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711 (LJL), 2022 U.S. Dist. LEXIS 143930 (S.D.N.Y. Aug. 11, 2022) ....................................................................................... 10, 11

*Gibson v. Bartlett Dairy, Inc.*, No. 20-CV-2848, 2022 U.S. Dist. LEXIS 45776 (E.D.N.Y. Mar. 14, 2022) ............................................................................................................. 13, 17

*GMO Free USA v. Coty Inc.*, Case No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022)... 5, 14

*Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38 (E.D.N.Y. 2017)........................................... 17

*Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102 (W.D.N.Y. 2018) ....................................... 12

*Hardwick v. 3M Co.*, 589 F. Supp. 3d 832 (S.D. Ohio 2022).................................................... 6

*Hinds County v. Wachovia Bank N.A.*, 620 F. Supp. 2d  499 (S.D.N.Y. 2009) (Marrero, J.)...... 14

*Housey v. P&G*, No. 21 Civ. 2286, 2022 U.S. Dist. LEXIS 53603 (S.D.N.Y. Mar. 24, 2022) (Buchwald, J.) ............................................................................................................ 9

*Hughes v. Ester C Co.*, 330 F. Supp. 3d 862 (E.D.N.Y. 2018)................................................... 12

*Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013)................................................... 6

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873, 2022 U.S. Dist. LEXIS 168634 (D.S.C. Sep. 16, 2022) ......................................................................... 6

*In re London Silver Fixing, Ltd.*, 213 F. Supp. 3d 530 (S.D.N.Y. 2016) (Caproni, J.) ............... 14

*Kanan v. Thinx Inc.*, No. CV 20-10341, 2021 U.S. Dist. LEXIS 191225 (C.D. Cal. June 23, 2021) ................................................................................................................................... 7

*Kommer v. Ford Motor Co.*, No. 1:17-CV-296, 2017 U.S. Dist. LEXIS 118335 (N.D.N.Y. July 28, 2017) .................................................................................................................... 11

*Mahoney v. Endo Health Sols., Inc.*, No. 15cv9841(DLC), 2016 U.S. Dist. LEXIS 94732 (S.D.N.Y. July 20, 2016) ............................................................................................. 15, 17

*Marom v. City of N.Y.*, No. 15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016) .............................................................................................................................. 11

*McVetty v. Tomtom N. Am., Inc.*, No. 19 Civ. 4908 (NSR), 2022 U.S. Dist. LEXIS 125862 (S.D.N.Y. July 15, 2022) ................................................................................................... 7

*Oswego Laborers' Local 214 Pension Fund v. Mar. Midland Bank, N.A.*, 85 N.Y.2d 20 (1995) 10

*Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019) (Stanton, J.) ..... 11

*Petrosino v. Stearn's Prods.*, No. 16-CV-7735 (NSR), 2018 U.S. Dist. LEXIS 55818 (S.D.N.Y. Mar. 30, 2018).................................................................................................................. 3

*Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533 (S.D.N.Y. 2013) (Briccetti, J.).............................. 5

*Rosenfeld v. Lenich*, 370 F. Supp. 3d 335 (E.D.N.Y. 2019) ........................................................ 2

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007). ......................................................................... 13

*Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015) (Román, J.) ............................................................................... 14

*Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061, 2016 U.S. Dist. LEXIS 15171 (S.D.N.Y. Feb. 5, 2016) (Román, J.) ......................................................................................................... 12

*Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sep. 14, 2015) .................................................................................................................. 9

*Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474, 2017 U.S. Dist. LEXIS 170415 (N.D.N.Y. Sept. 27, 2017) ................................................................................................................ 12

*Sitt v. Nature's Bounty, Inc*., No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. Sept. 26, 2016) ................................................................................................................. 5

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) ................................... 9

*Tomasino v. Estee Lauder Companies, Inc.*, 2015 WL 1470177 (E.D.N.Y. Mar. 31, 2015)......... 6

*Toxin Free USA v. J.M Smucker Co.*, 2019 D.C. Super. LEXIS 15 (Nov. 6, 2019) ................... 11

*Turnipseed v. Simply Orange Juice Co.*, No. 20 Civ. 8677, 2022 U.S. Dist. LEXIS 38823 (S.D.N.Y. Mar. 4, 2022) (Román, J.),.............................................................................. 12

*TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82 (2d Cir. 2005) ................................... 17

*Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d  610 (S.D.N.Y. 2013) (Oetken, J.) ............ 15

*Woods v. Maytag Co.*, 807 F. Supp. 2d 112 (E.D.N.Y. 2011)..................................................... 15

## Statutes

Cal. Health & Safety Code Div. 104, Pt. 3, Ch. 15....................................................................... 3

New York General Business Law § 349............................................................................... passim

New York General Business Law § 350............................................................................... passim

## Rules

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 1, 13

Federal Rule of Civil Procedure 9(b)...................................................................................... 14

## Constitutional Provisions

U.S. Const. art. III....................................................................................................................... 13

## <u>INTRODUCTION</u>

This is a case about dangerous "forever chemicals" exactly where they never should be—in dental floss, designed to be pulled through the mouth and against the gums—a product misleadingly marketed to consumers as specially promoting health. The allegations in Plaintiff Dalewitz's ("Dalewitz" or "Plaintiff") Complaint ("Compl.") are well-pleaded. Defendant The Procter & Gamble Company ("P&G" or "Defendant") markets its line of Oral-B Glide Dental Floss products (collectively, the "Product") as "Pro-Health." P&G does this despite laboratory testing indicating that "the Product most likely contains per- and polyfluoroalkyl substances ('PFAS'), which are a group of synthetic chemicals believed to be harmful to humans and the environment." (Compl. Preamble). Reasonable consumers would not expect a "Pro-Health" product to contain chemicals linked to harmful health effects. (*Id*. ¶ 46). This includes Plaintiff Dalewitz, who purchased the "Pro-Health" products believing them not to contain PFAS but, in fact, to be pro-health. Regardless, even apart from the "Pro-Health" representation, Defendant P&G had a duty to disclose the presence of these dangerous substances to consumers, given the weight of the safety issues surrounding PFAS exposure.

Plaintiff brings three causes of action: (1) violation of New York's General Business Law ("GBL") § 349 (Compl. Count I); (2) violation of GBL § 350 (Compl. Count II); and (3) fraudulent concealment (Compl. Count III). On a Rule 12(b)(6) motion to dismiss, the Court "constru[es] the complaint liberally, accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citations omitted).

P&G's Motion to Dismiss ("MTD") seeks to distort the facts of this case by misstating the basis of Plaintiff's allegations, inappropriately asserting that its own scientific conclusions about

PFAS are true (an issue of fact), and prematurely concluding that consumers were not misled (another issue of fact). Despite P&G's attempt to muddy the waters, Plaintiff Dalewitz's case is relatively straightforward. P&G makes health representations. (Compl. ¶ 6, 25-27.) The Product at issue contains PFAS. The use of these substances is not disclosed to consumers. (*Id*. ¶¶ 33-37.) PFAS are unsafe for human health. (*Id*. ¶¶ 11-16.) Plaintiff's Complaint cites multiple sources to establish not only that P&G was aware of PFAS in the Product, but that the presence of PFAS in the Product is material to consumers. (*Id*. ¶¶ 19-24, 28-32.) Plaintiff and proposed Class Members relied on P&G's representations and were deceived by P&G's omissions about PFAS, when deciding to purchase the Product. (*Id*. ¶¶ 64-65, 68.) As a result, Plaintiff and proposed Class Members purchased products that were worth less than what they paid. (*Id.*) Plaintiff has thus met the pleading standards for each of his causes of action. P&G's motion must therefore be denied.

## **BACKGROUND**

"Because [p]laintiff is the 'master of the complaint,' [plaintiff's] 'allegations, submissions, and underlying theories of liability and damages should be taken at face value.'" *Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 361 (E.D.N.Y. 2019). Despite this rule, P&G mischaracterizes the allegations in the Complaint—claiming that Plaintiff Dalewitz is merely musing about **whether** the Product contains PFAS. (MTD at 2-4.) P&G's argument denies the current state of knowledge on PFAS and, in so doing, misconstrues the basis of Plaintiff's allegations, as follows:

PFAS are a group of more than 9,000 man-made chemicals. (Compl. ¶ 7.) As P&G implicitly recognizes (MTD at 3 (acknowledging cost issues)), it is not feasible for the average consumer to test a product for each individual PFAS chemical. Indeed, as set forth in the Complaint, it is not currently possible to test for every PFAS chemical. (Compl. ¶¶ 32, 39.) For this reason, fluorine tests have become the standard to screen a product for PFAS contamination.

*Id*. Plaintiff has **exceeded** this standard, and has tested for **organic** fluorine, also known as organofluorine, a test that "exclude[s] the possibility that fluorine may be present from other or natural sources." (*Id*. ¶ 38). In other words, positive organic fluorine results indicate the presence of a man-made organofluorine chemical compound, *i.e.*, the presence of PFAS.[1] The Complaint also cites a **peer-reviewed study** that "identified two specific PFAS chemicals—PTFE and PFHxS—as being associated with Oral-B Glide products." (*Id*. ¶ 13). When taken together, Plaintiff's own testing (*id*. ¶ 36), the peer reviewed study (*id*. ¶ 13), and P&G's own indication that at least one PFAS chemical (PTFE) is commonly used in dental floss (*id*. ¶ 31; *see also* Defendant's Pre-Motion Letter, ECF No. 6 at 2) do more than create grounds to muse about the presence of PFAS in the Product. These facts evince a reasonable basis to assume that the Product **does** contain PFAS.

At this stage of the case (a motion on the pleadings, absent any discovery record), Plaintiff does not have to prove his case. Plaintiff's burden is to state a complaint that "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Petrosino v. Stearn's Prods.*, No. 16-CV-7735 (NSR), 2018 U.S. Dist. LEXIS 55818, at *6-7 (S.D.N.Y. Mar. 30, 2018) (internal quotes omitted). Given current scientific standards, Plaintiff has done more than state a plausible claim to relief. His Complaint alleges facts that, when proven, will establish conclusively that P&G misled consumers and omitted material information about the Product.

---

[1] The Court should note that the Total Organic Fluorine testing method used by Plaintiff here was adopted by at least one state as the standard for determining the presence of PFAS in certain products. *See* Cal. Health & Safety Code Div. 104, Pt. 3, Ch. 15 ("The presence of PFAS in a product or product component at or above 100 parts per million, as measured in total organic fluorine."). For reference, Plaintiff found 302,400 ppm of organic fluorine in the Product. (Compl. ¶ 36).

## <u>ARGUMENTS</u>

I.      **Plaintiff's Claims Are Plausible and Easily Distinguishable from P&G's Authority.**

P&G's first line of defense is a series of cases on related issues that were dismissed. Plaintiff's Complaint, however, is easily distinguishable from these authorities.

A.      **Plaintiff's Complaint Relies on His Own, Independent Testing for Organic Fluorine, Not on Reference to a Public Study of Fluorine Only.**

P&G's primary authority is another case in which it was the defendant, *Andrews v. P&G*, No. EDCV 19-00075, 2019 U.S. Dist. LEXIS 211567 (C.D. Cal. June 3, 2019). *Andrews* is an excellent case to illustrate how Plaintiff's Complaint avoids the pitfalls that could doom such an action. In *Andrews*, the plaintiff alleged that "Oral-B Glide dental floss contain[s] . . . elevated amounts of PFASs." *Id*. at \*7. The basis for this allegation was a publicly available study that screened various products for fluorine, *id*. at \*7-8, and the plaintiff's "allegations clearly overstate[d] the findings of the PFASs Study," *id*. at \*9.

No such circumstances are present here. Although Plaintiff cites the same study as in *Andrews* for additional authority (*see* Compl. ¶ 13), ***that study is not the basis for the Complaint.*** The study in *Andrews* was based on fluorine testing. *See* 2019 U.S. Dist. LEXIS 211567 at \*8. Plaintiff's allegations, by contrast, are based on ***organic*** fluorine testing, conducted at his direction by a third-party laboratory on this Product specifically. (Compl. ¶ 36.) This difference is crucial because, as explained herein, testing for organic fluorine suffices in itself to indicate the presence of PFAS and exclude other possibilities. (Compl. ¶¶ 37-41.) The study relied on in *Andrews*, and cited in the Complaint here, does not drive the allegations but merely complements Plaintiff's own independent testing. (Compl. ¶¶ 33-35.).

**B.      P&G's Next Authority Specifically Endorses Plaintiff's Method of Testing.**

P&G next compares this case to *GMO Free USA v. Coty Inc.*, Case No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022), a non-profit private-attorney-general action brought under Washington D.C. law based on alleged PFAS in makeup products. To begin, P&G fails to mention that *GMO Free USA* explicitly endorses the testing method used by Plaintiff. *See id.* at 4 ("TFUSA ***plausibly alleges*** that the product contains PFAS based on its [organic] fluorine testing.") (emphasis added).[2]  Instead, P&G focuses on a red herring, *i.e.*, whether PTFE, a type of PFAS chemical, is safe or not. (MTD at 1). There are multiple shortcomings to P&G's argument:

*First*, contrary to P&G's characterization, Plaintiff's Complaint does ***not*** actually allege that PTFE is the source of the organofluorine in the Product. Instead, the Complaint—to substantiate further Plaintiff's own independent organofluorine testing—points out that one study found a correlation between the Product and two specific PFAS chemicals, PTFE and PFHxS. Nowhere does the Complaint limit its allegations to PTFE or accept P&G's self-serving characterizations of that chemical.

*Second*, in its hyperfocus on the supposed safety of PTFE, P&G ignores PFHxS (also tied to the Product), which is undisputedly ***harmful***. (Compl. ¶ 16).

*Third*, P&G's attempt at a scientific debate is inappropriate at this stage of the litigation. *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (Briccetti, J.) ("Whether or not the studies support plaintiff's proposition that it is 'biologically impossible' to rebuild cartilage is an issue of fact the Court cannot resolve on a motion to dismiss."); *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *30 (E.D.N.Y. Sept. 26, 2016)

---

[2] P&G attempts to argue that documents cited in the complaint do not support the allegations. (MTD at 3). But the citations P&G complains about mainly explain the sufficiency of organofluorine testing as a proxy to alleging the presence of PFAS (*see, e.g.* compl. ¶ 41 n.32), and the evolving research regarding the dangers of PFAS (*see, e.g.* compl. ¶ 7 n.7). There's nothing in those sources that actually contradict these premises.

("Nevertheless, courts agree that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss.") (internal citation omitted); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 461-62 (E.D.N.Y. 2013) ("In short, issues concerning the weight that should be given to this study cannot be resolved on a motion to dismiss.").

As alleged in the Complaint, "only P&G knows the truth about how the Product is manufactured" (*id*. ¶ 111), and thus, discovery is necessary to identify **which** PFAS are the source of the organofluorine in the product. *See Contant v. Bank of Am. Corp.*, No. 17 Civ. 3139 (LGS), 2018 U.S. Dist. LEXIS 183586, at *20 (S.D.N.Y. Oct. 25, 2018) (noting that "[p]laintiffs are not required to provide expert analysis at the pleading stage"); *Tomasino v. Estee Lauder Companies, Inc.*, 2015 WL 1470177, at *5 (E.D.N.Y. Mar. 31, 2015) (holding plaintiff is "not obligated in her complaint to definitively prove all of her claims by reference to unassailable scientific fact. Rather, she is only required to state a claim that is plausible on its face.").

***Fourth***, P&G's argument deliberately overlooks that the science of PFAS is hindered by corporate secrecy surrounding the manufacturing of PFAS. *See, e.g.*, *Hardwick v. 3M Co.*, 589 F. Supp. 3d 832, 840, 869 (S.D. Ohio 2022) (certifying class in case where plaintiff alleged that PFAS manufacturer "engaged in a systematic effort to conceal and deny the dangers of PFAS. . . ."); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873, 2022 U.S. Dist. LEXIS 168634, *33, *48 (D.S.C. Sep. 16, 2022) (denying defendant PFAS manufacturer's summary judgment motion in matter concerning the nondisclosure of the "health and environmental effects of" certain types of PFAS). For example, PFAS with more than eight carbon atoms were formerly considered dangerous, while PFAS with fewer than eight carbon atoms were considered safe alternatives—until new studies showed that both types of PFAS "pose similar health risks." *Kanan v. Thinx Inc.*, No. CV 20-10341, 2021 U.S. Dist. LEXIS 191225, at *3-4

(C.D. Cal. June 23, 2021). P&G's scientific conclusions are not only inappropriate at this stage, but also inaccurate, *see supra*, as discovery will demonstrate.

In sum, P&G deliberately misconstrues the basis of the Complaint, along with PFAS science, when it argues that Plaintiff's allegations relating to PTFE (and the harms of PFAS generally) "serve to undercut his claims." (MTD at 9.).[3]

## II.  The Complaint Properly Alleges that P&G Deceived Consumers with Its "Pro-Health" Representations and Lack of Disclosure About the Presence of PFAS.

"The elements of a cause of action under both §§ 349 and 350 are that: '(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct.'" *McVetty v. Tomtom N. Am., Inc.*, No. 19 Civ. 4908 (NSR), 2022 U.S. Dist. LEXIS 125862, at *10 (S.D.N.Y. July 15, 2022) (citations omitted). Plaintiff's Complaint alleges that "P&G regularly conducts and transacts business in New York. . . markets the Product to consumers in New York, and sells the Product throughout New York." (Compl. ¶ 58.) Further, the Complaint alleges that consumers are still being misled by P&G's omissions and misrepresentations. (*Id*. ¶¶ 49, 51, 66, 86). Similar allegations have been found to satisfy this first prong. *See Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 94 (S.D.N.Y. 2021) (Karas, J.). The Complaint also explains why reasonable consumers would be deceived if a "Pro-Health" Product contains harmful PFAS chemicals, including a survey conducted for purposes of evidencing this allegation. (Compl.

---

[3] P&G also cites another out-of-circuit case, *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727, 2012 U.S. Dist. LEXIS 157132 (S.D. Cal. Oct. 31, 2012), in support of this argument. In *Eckler*, the representations at issue were about an amino sugar's effect on the body's joints, in contrast to the plaintiff's complaint, which cited studies about how the amino sugar cannot alleviate symptoms of osteoarthritis. *See id*. at 26-28. Those are two different issues. Plaintiff Dalewitz's sources, by contrast, support his allegations by establishing (1) the science of PFAS testing (Compl. ¶¶ 39-41); (2) the negative effects of PFAS on human health and the environment (*id*. ¶ 8); (3) the importance of knowing about unsafe chemicals to consumers (*id*.¶ 45); and (4) reasonable consumer expectations (*id*. ¶ 43). Moreover, in *Eckler*, "the studies on which Eckler relies didn't even test the actual formulation" of the product at issue. *Eckler*, 2012 WL 5382218, at *6. Here, unlike in *Eckler*, Plaintiff tested the actual Product at issue.

¶¶ 37-47.) Thus, the second prong is met.[4] *See Cooper*, 553 F. Supp. 3d at 96. Finally, the Complaint alleges that Plaintiff "and Class Members suffered economic injuries as a result of purchasing the Product." (Compl. ¶ 46.) Specifically, "[h]ad Defendant not made the false, misleading, and deceptive representation, Plaintiff and Class Members would not have been willing to pay the same amount for the Product they purchased and/or would not have been willing to purchase the Product at all, or to purchase as many of the Products." *Id.* at ¶ 54. Thus, Plaintiff's complaint has met the third prong, and his GBL §§ 349 & 350 claims should not be dismissed. *Cooper*, 553 F. Supp. 3d at 109-10.

### A. Statements Regarding Health Are Representations of Fact.

#### 1. P&G Misrepresented the Quality of the Product.

P&G markets the Product as "Pro-Health." (Compl. ¶ 25).[5] P&G argues that these advertising statements are all puffery. (MTD 17-18.) They are not. "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language" that "make[s] no specific claims on which consumers could rely." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 347 (S.D.N.Y. 2020) (Engelmayer, J.) (citations omitted). Importantly, puffery involves "[s]ubjective claims about products, which cannot be proven either true or false." *Id.* P&G's claims are not subjective. Plaintiff can objectively prove that the representations at issue are false, because testing indicates that the Product contains PFAS, which are unsafe and have a negative effect on human health. (*Id.* ¶ 8.) Further, the Second Circuit has defined puffery as "an exaggeration or overstatement" that is an "expression of the seller's opinion only" and lacks any specificity.

---

[4] Still, "Courts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss." *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (Marrero, J.) (citations omitted) (denying motion to dismiss GBL claims).

[5] P&G also makes website representations regarding its internal "safety process" (compl. ¶ 2) and environmental commitments (*id.* ¶ 3), both which are contradicted by the use of unsafe and unsustainable PFAS chemicals. (*Id.* at ¶ 8).

*Cablevision Sys. Corp. v. Verizon N.Y. Inc.*, 119 F. Supp. 3d 39, 53 (E.D.N.Y. Aug. 7, 2015) (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007)). Plaintiff, however, points to P&G's **specific** and **objective** definition of "Pro-Health." (Compl. ¶ 6 ("P&G added the Oral-B brand to its 'Pro-Health' line, which are 'aimed at consumers willing to pay more for products that touted health benefits, as opposed to flavor or cosmetic appeal.'").

P&G takes issue with the fact that "the images of Glide's packaging contained in the complaint do not even contain the 'Pro-Health' statements about which Plaintiff complains." (MTD at 11.) The Complaint explains that the Product is sold **under P&G's "Pro-Health" line** (Compl. ¶ 6), and Plaintiff Dalewitz alleges that he "saw and believed that the Product was healthy because the Product was a part of P&G's 'Pro-Health' line." (Compl. ¶ 64). Also, Plaintiff points to P&G's online representations (*id.* ¶ 26), which suffice for GBL §§ 349 & 350 claims. *See, e.g.*, *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 U.S. Dist. LEXIS 122186, at *25 (E.D.N.Y. Sep. 14, 2015) (concerning website claims). The Products' packaging, moreover, **currently** contains the "Pro-Health" claim. (Compl. ¶¶ 25-26.).

P&G then attempts to argue that its "Pro Health" statement refers to the fact that "flossing with products like Glide promotes good dental health" (MTD at 13) and compares the instant case to *Housey v. P&G*, No. 21 Civ. 2286, 2022 U.S. Dist. LEXIS 53603, at *9, 14 (S.D.N.Y. Mar. 24, 2022) (Buchwald, J.). But this comparison is misplaced. First, in *Housey*, the plaintiff's claim rested on "statements she never saw," *id.* at *9, which is not the case here (*see* Compl. ¶ 64.). Second, the allegation in *Housey* was that the "activated charcoal" in the dental product at issue was not "substantiated as safe and effective for use in dentifrice." 2022 U.S. Dist. LEXIS 53603, at *10. Despite this allegation, the plaintiff in *Housey* did not cite any articles that showed any safety or effectiveness issues regarding charcoal in toothpaste. *See id.* at *11-15. Plaintiff, by

9

contrast, cites articles demonstrating how PFAS has a negative impact on the health of both humans and the environment. (*See, e.g.*, Compl. ¶¶ 7, 8, 11, 28.).[6]

### 2.    Plaintiff's Complaint Sufficiently Alleges that P&G Omitted Material Information.

"[W]here a defendant fails to supply a consumer information that it alone possesses, and where that information would be material or important to a reasonable consumer and where the consumer could not have reasonably obtained the information other than through the defendant, Sections 349 and 350 provide a basis for relief." *Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711 (LJL), 2022 U.S. Dist. LEXIS 143930, at *49 (S.D.N.Y. Aug. 11, 2022) (citations omitted); *see also Oswego Laborers' Local 214 Pension Fund v. Mar. Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Here, Plaintiff alleges that P&G's conduct was "knowing and intentional," "as only Defendant knows the truth about how the Product is manufactured" (Compl. ¶¶ 100, 111), and that P&G does not disclose the use of PFAS (*id*. § II). Plaintiff's Complaint also cites studies finding that the presence of harmful chemicals in products is material to consumers. (*Id.* ¶¶ 42-47.) Finally, based on P&G's advertising and statements to the press, a reasonable consumer would not be able to "obtain[] the information" about how the Product is made. *Fishon,* at *49. (*See also* Compl. § I, ¶ 30).

Even though the Complaint meets the requirements for pleading a material omission under GBL §§ 349 & 350, P&G insists there are pleading defects. For instance, P&G states that "Plaintiff does not even attempt to allege that flossing is an exposure source of the PFAS." (MTD at 15.) This statement flies in the face of logic. Dental floss is applied on consumers' teeth and gums,

---

[6] Defendant also cites *Dwyer v. Allbirds, Inc.*, No. 21-CV-5238 (CS), 2022 U.S. Dist. LEXIS 71055 (S.D.N.Y. Apr. 18, 2022), but that case is inapposite. In *Dwyer*, the plaintiff conflated criticisms of a third-party methodology tool with defendant's advertising and, at one point, cited advertisements that did not contain any representations. *Id.* at *15, 18. Plaintiff Dalewitz does not make any allegations regarding a third-party and has identified Defendant's representations. (Compl. ¶¶ 2, 3, 6.).

which is a huge point of exposure. P&G then makes a comparison to *Marom v. City of N.Y.*, No. 15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016), to support its argument that Plaintiff's allegations are too "speculative." (MTD at 15.) But the allegations in *Marom* were based on unsupported facts about the conduct of police officers regarding a civil rights matter. 2016 U.S. Dist. LEXIS 28466 at *29-30. Unlike in *Marom*, Plaintiff explains the basis for his allegations (Compl. §§ I, II, III), regardless of P&G's feigned confusion about what the Complaint is alleging.

P&G also attempts to draw a comparison between this case and *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019) (Stanton, J.).[7] The ruling in *Parks* is inherently flawed because it relies on the premise that the chemical at issue in that case was an "ingredient" (*id*. at 247), when it was actually a contaminant. This misunderstanding by the court was significant. As a comparison, in a case that was against the same defendants and about the same issue as *Parks,* the complaint survived a motion to dismiss because the court did not make the mistake of conflating a contaminant with an added ingredient. *See Toxin Free USA v. J.M Smucker Co.*, 2019 D.C. Super. LEXIS 15, at *19-20 (Nov. 6, 2019). The key point in an omission-based theory is whether "a defendant exclusively possesses information ***that a reasonable consumer would want to know***." *Fishon*, 2022 U.S. Dist. LEXIS 143930, at *50 (emphasis added).[8] As explained below, Plaintiff's allegations readily meet this materiality standard.

---

[7] P&G makes this comparison in the context of material omissions. (MTD 14-17). The decision in *Parks*, though, was focused on specific representations, which is why that court did ***not*** discuss the standards for an omission-based theory. *See* 377 F. Supp. 3d at 245.

[8] Defendant also argues that there is no "actual threat of harm." (MTD at 15.) But under an omissions theory, "'[a] plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement,'" as long as "defendant [does not] provide[] an adequate remedy for the problem." *Kommer v. Ford Motor Co.*, No. 1:17-CV-296, 2017 U.S. Dist. LEXIS 118335, at *11-12 (N.D.N.Y. July 28, 2017). Here, Plaintiff Dalewitz has alleged not only that "[c]onsumers are at risk of real, immediate, and continuing harm if the Product continues to be sold as is, without curing the deceptive representations and omissions" (Compl. ¶ 51), but also that he and Class Members paid more than what they bargained for as a result of the Product containing PFAS (*id.* ¶ 89). P&G has not provided any remedy for this problem.

a.   **Consumers Want to Avoid Dangerous Chemicals in Their Oral Hygiene Products.**

Plaintiff's Complaint cites articles that show the harms caused by PFAS (*see, e.g.*, Compl. ¶ 28), along with surveys that show that consumers would want to know about the presence of dangerous and unsustainable chemicals in the products they purchase (*id.* ¶¶ 43-45). Courts within this Circuit have allowed materiality to be established by the use of survey evidence. *See, e.g.*, *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 872 (E.D.N.Y. 2018) ("To satisfy the reasonable consumer standard, a plaintiff must adduce extrinsic evidence—ordinarily in the form of a survey—to show how reasonable consumers interpret the challenged claims."); *Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474, 2017 U.S. Dist. LEXIS 170415, at *51-52 (N.D.N.Y. Sept. 27, 2017) (holding that materiality to reasonable consumer, as "an objective question," can be proven with generalized class-wide evidence, such as an expert survey proffered by plaintiff).[9]

P&G cites *Turnipseed v. Simply Orange Juice Co.*, No. 20 Civ. 8677, 2022 U.S. Dist. LEXIS 38823 (S.D.N.Y. Mar. 4, 2022) (Román, J.), and *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1 (S.D.N.Y. 2020) (Ramos, J.), in support of its threadbare argument that Plaintiff fails to identify a material omission under GBL §§ 349 & 350. (MTD 15-16.) Plaintiff's own testing and survey, however, avoid the pleading defects in those cases.[10] The pleading defect in *Turnipseed* regarding the laboratory testing is distinguishable from Plaintiff's testing. The *Turnipseed* plaintiff alleged "that laboratory testing of the Product 'in 2020 and/or 2021' revealed that 'the amount of vanillin was disproportionately greater than if it was only present due to

---

[9] *Cf. Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 106 (W.D.N.Y. 2018) (where materiality to reasonable consumer was challenged on summary judgment, allowing GBL § 349 claim to stand even without survey evidence because facts were in "dispute").

[10] P&G also cites *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061, 2016 U.S. Dist. LEXIS 15171, at *11–12 (S.D.N.Y. Feb. 5, 2016) (Román, J.) (MTD at 6), but in that case, the statements at issue were "***true*** and supported by the studies referenced in the Complaint." *Id.* at *20 (emphasis added). In this case, none of the sources cited in Plaintiff's Complaint could be said to support P&G's health claim.

extracts from the vanilla bean.'" *Id*. at *13. Plaintiff provides far more detail about what was tested, the exact laboratory results, and an explanation about the type of testing conducted. (Compl. ¶¶ 36-41.) The *Brodie* plaintiff made "allegations . . . upon information and belief" and failed to "support them by offering facts upon which that belief is founded." 503 F. Supp. 3d at 13. By contrast, Plaintiff's Complaint points to multiple studies and test results to support his belief that the "Pro-Health" Product contains undisclosed PFAS, which are chemicals that have a negative impact on human health. (Compl. §§ I, II, III.)

### III.    Plaintiff and Class Members Suffered Economic Injuries by Purchasing P&G's Product.

Next, P&G claims that Plaintiff has not established an injury under Article III or GBL §§ 349 & 350. P&G supports this argument by claiming that Plaintiff's complaint is filled with "speculative inferences" that purportedly do not show that the Product contains "any PFAS, let alone one that might have exposed [plaintiff] to any risk of harm." (MTD at 19.) As explained *supra*, Parts I & II, the evidence cited in Plaintiff's Complaint provides, at a minimum, a plausible inference that the Product contains PFAS and that consumers risk exposure.[11]

Courts in this Circuit have held that such allegations suffice: "Plaintiff alleges that he purchased the at-issue Products in New York and suffered a cognizable injury upon purchase. That means Plaintiff has Article III standing to bring a claim under, *inter alia*, N.Y. G.B.L. §§ 349, 350." *Gibson v. Bartlett Dairy, Inc.*, No. 20-CV-2848, 2022 U.S. Dist. LEXIS 45776, at *25 (E.D.N.Y. Mar. 14, 2022) (denying motion to dismiss in case regarding health, safety, and environmental issues because of substance found in food product). "Injury is adequately alleged

---

[11] Despite P&G's attempts to discredit Plaintiff's sources and restate the allegations, "a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156, at *88 (E.D.N.Y. July 21, 2010). Plaintiff has properly alleged that the Product at issue is part of P&G's "Pro-Health" line, which is explicitly "aimed at consumers willing to pay more for products that touted health benefits, as opposed to flavor or cosmetic appeal." (Compl. ¶ 6.) As set forth *supra* Section I.B, Plaintiff "plausibly alleges that the product contains PFAS based on its [organic] fluorine testing." *GMO Free USA*, No. 2021 CA 004786 B, slip op. at 4. As a result, the Complaint alleges (and Plaintiff Dalewitz intends to prove), P&G's "Pro-Health" representation is false. As to damages, Plaintiff has alleged that these representations figured into the reason why he and proposed Class Members purchased the Product. (Compl. ¶ 54.).

P&G suggests that the "Pro-Health" refers to "dental health," and thus this statement must be true because "flossing with products like Glide promotes good dental health." (MTD at 12.) Whether consumers expect a "Pro-Health" Product to contain chemicals linked to myriad health problems (Compl. ¶ 28), however, is a question of fact, inappropriate for P&G to resolve by fiat at this stage of the litigation. *See, e.g.*, *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *31 (S.D.N.Y. May 7, 2015) (Román, J.) ("Whether the labels would mislead a reasonable consumer is a question of fact for the jury.").

## IV.      P&G Had and Has a Duty to Disclose the Presence of PFAS in Its Product.

Fraudulent concealment must be pleaded with particularity, in line with the heightened standards of Fed. R. Civ. P. 9(b). *See, e.g.*, *Hinds County v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009) (Marrero, J.).[12] "Rule 9(b) requires that a party alleging fraud must 'state

---

[12] "At the same time, because resolution of a claim of fraudulent concealment is 'intimately bound up with the facts of the case,' it often cannot be decided at the motion to dismiss stage." *In re London Silver Fixing, Ltd.*, 213 F. Supp. 3d 530, 572 (S.D.N.Y. 2016) (Caproni, J.) (citation omitted).

with particularity the circumstances constituting fraud.' . . . Under these requirements, the complaint must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Dupere v. Ethicon, Inc.*, No. 21cv2605 (DLC), 2022 U.S. Dist. LEXIS 31096, at *13 (S.D.N.Y. Feb. 22, 2022) (citation omitted). Plaintiff has (1) alleged the specific statements and omissions at issue (Compl. ¶¶ 2, 3, 6); (2) identified P&G as the "speaker" (*id.* ¶¶ 4, 6); (3) shown where the statements are being made (*id.* ¶ 26) and the omission at issue (*see supra*, § II.A.2); and (4) explained why the statements are fraudulent (Compl. § III). Thus, Plaintiff has met the particularity standard.[13]

"Where the claim is 'premised on concealment so that the plaintiff cannot specify the time and place because no affirmative act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud.'" *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 621 (S.D.N.Y. 2013) (Oetken, J.) (quoting *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011)). Plaintiff's Complaint is clear that P&G omitted material information about the presence of PFAS in the Product. (Compl. ¶ 79.) The Complaint also identifies P&G as being the party responsible for failing to disclose the presence of PFAS in the Product. (Compl. ¶ 4 ("P&G has owned the Oral-B brand for about 16 years.")).

Plaintiff's Complaint is also clear about the context of the omissions. The Product at issue is a part of a line of products "aimed at consumers willing to pay more for products that touted

---

[13] The facts alleged in the pleadings are considered 'in their totality, not in isolation.'. . . The key purpose of these requirements is to 'inform each defendant of the nature of its alleged participation in the fraud.'" *Mahoney v. Endo Health Sols., Inc.*, No. 15cv9841(DLC), 2016 U.S. Dist. LEXIS 94732, at *29 (S.D.N.Y. July 20, 2016) (citations omitted).

health benefits." (Compl. ¶ 6.) The Complaint explains the basis for establishing the presence of PFAS in the Product (*id.* ¶¶ 36, 41) and alleges, with citations, that PFAS have been linked to multiple health problems (*id.* ¶¶ 8, 28). Further, the Complaint alleges that Plaintiff "saw and believed that the Product was healthy, based on the fact that the Product was a part of P&G's 'Pro-Health' line" and that he "relied upon these representations, which as a consumer he had no reason to doubt." (*Id.* ¶ 64). In the context of these representations, P&G's omission about the use of PFAS is material. As result of its omission, P&G garnered purchases it would not otherwise have garnered, or at least not garnered under the same terms, if it had been forthright about the presence of PFAS chemicals in the Product. (*Id.* ¶ 65.).

Additionally, "to establish a claim for fraudulent concealment under New York law, a plaintiff must allege that: '(1) the defendant made a misrepresentation or a material omission of fact which was false and which the defendant knew to be false; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) the plaintiff justifiably relied on the misrepresentation or material omission; . . . (4) injury[; and (5)] the defendant had a duty to disclose the material information.'" *Catalano v. BMW of N. Am., Ltd. Liab. Co.*, No. 15-cv-4889 (KBF), 2016 U.S. Dist. LEXIS 78901, at *9 (S.D.N.Y. June 16, 2016) (citations omitted). "A plaintiff must also 'allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id*. at *9-10 (citations omitted).

Plaintiff adequately alleges that P&G knew its representations and omissions were false because P&G was aware of the study that showed a correlation between the Product and two specific PFAS. (Compl. ¶ 13.) Despite publicly responding to the study's findings (*id.* ¶ 30) and

understanding that consumers were concerned about PFAS (*id.* ¶ 9), P&G knowingly continued selling the Product containing PFAS, as evidenced by Plaintiff's testing (*id.* ¶ 36). P&G intended for consumers to rely on its "Pro-Health" representations, as it has publicly stated its goals for those line of products. (Compl. ¶ 6.) Plaintiff relied on the representations (*id.* ¶ 64) and suffered an injury, *see supra*, Part III. Plaintiff's injury gives rise to damages (*id.* Prayer). *See Mahoney*, 2016 U.S. Dist. LEXIS 94732, at *28 ("Fraudulent concealment requires that the plaintiff plead. . . damages.") (quoting *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 90-91 (2d Cir. 2005)).

P&G also has a duty to disclose its use of PFAS. "New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 72 (E.D.N.Y. 2017) (citation omitted). "Although normally this duty to disclose arises in the context of 'direct business transactions,' courts also impose the duty on 'a manufacturer who has exclusive knowledge of a product defect or danger.'" *Id.* at 72 (citations omitted). PFAS exposure poses a legitimate safety issue to humans. (Compl. ¶¶ 8, 28). *See also Catalano*, 2016 U.S. Dist. LEXIS 78901, at *15 (holding that "safety issues" coupled with defendant's "superior exclusive knowledge and the inherent unfairness of the transaction" "are sufficient to give rise to a duty to disclose") (citations omitted). P&G had a motive to commit fraud: it wanted to profit from health-conscious consumers. (Compl. ¶ 6). Finally, as the sole owner of the Product at issue, P&G obviously "participates in the management of" its "business operations." *Gibson*, 2022 U.S. Dist. LEXIS 45776, at *24. Thus, P&G had the opportunity to continue using PFAS despite knowing that consumers are trying to avoid that class of chemicals. (Compl. ¶ 9.) *See Dawood v. Gamer Advantage LLC*, No. 2:22-

cv-00562, 2022 U.S. Dist. LEXIS 138774, at *9 (E.D. Cal. Aug. 4, 2022) (denying motion to dismiss fraud-based claims in case regarding presence of PFAS in a consumer product).

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests that the Court deny P&G's motion in its entirety. If the Court grants Defendant's motion in any respect, Plaintiff respectfully requests leave to amend to cure any such deficiencies.

DATED: December 7, 2022                    Respectfully submitted,

**RICHMAN LAW & POLICY**

_____
Kim E. Richman
1 Bridge Street, Suite 83
Irvington, NY 10533
T: (914) 693-2018
krichman@richmanlawpolicy.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Alec M. Leslie
888 7th Avenue
New York, New York 10019
T: (646) 837-7150
jarisohn@bursor.com
aleslie@bursor.com