UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN DALEWITZ,<br><br>        *Plaintiff*,<br><br>    v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>        *Defendant*. | Case No. 7:22-cv-07323<br><br>The Honorable Nelson S. Román<br><br>**DEFENDANT THE PROCTER &<br>GAMBLE COMPANY'S<br>REPLY MEMORANDUM IN<br>SUPPORT OF MOTION TO DISMISS** |

## INTRODUCTION

The pending motion to dismiss highlights numerous, dispositive deficiencies of Plaintiff's complaint, among them: (1) it contains *no* factual allegation that Glide actually contains *any* PFAS compound; (2) it fails to plead any facts or cite any materials plausibly supporting Plaintiff's repeated assertion that *all* PFAS are "*believed* to be harmful to humans and the environment," Opp. at 1 (emphasis added); (3) it cites literature that instead identifies only a few of the more than 9,000 PFAS compounds as potentially hazardous and even then, only through certain exposure pathways, such as drinking contaminated water; (4) its allegation that Glide "most likely" contains some unspecified PFAS compound — even if credited, although it should not be — may simply refer to one of the overwhelming majority of PFAS about which harm does not plausibly result from exposure, such as benign polymers like those used safely in GORE-TEX branded products and other consumer goods; and (5) even assuming, without foundation, that Glide contains a potentially harmful PFAS, the complaint fails to allege facts plausibly demonstrating that Glide could constitute an exposure source that could lead to harm.

Two other courts have already dismissed substantively identical lawsuits — one of which concerned Glide — presenting the same shortcomings regarding the purported presence of allegedly harmful PFAS compounds. Rather than offer this Court any reasoned basis for reaching

a different result, Plaintiff repeats his conclusion that Glide "most likely" contains some PFAS compound. *Id.* Plaintiff simply asks the Court to agree that he may "***assume***" that Glide contains PFAS — and then further assume it is a hazardous one that could somehow expose a Glide user to possible harm. *Id.* at 3 (emphasis added). The Court should reject the invitation to base the complaint on conjecture. It flouts the long-established requirement that a viable complaint must include well-pleaded factual allegations rather than unsupported conclusions (including, in this case, speculation contradicted by sources Plaintiff elected to cite in his complaint). This result is especially warranted in light of Plaintiff's admission that he could have tested Glide for the handful of PFAS associated with potential health hazards, but apparently declined to do so because of "cost issues." *Id.* at 2. The Court should dismiss the complaint.

## **LAW AND ARGUMENT**

### I. THE OPPOSITION FAILS TO DEFEND THE COMPLAINT'S LACK OF WELL-PLEADED FACTS AND CONTRADICTORY CITED MATERIALS

When considering whether there is a "plausible" (instead of merely "possible") claim and injury, conclusions are "'not entitled to the assumption of truth'" and cannot contradict documents that are incorporated into a complaint. *Bautista v. Cytosport, Inc.*, 223 F. Supp. 3d 182, 187 (S.D.N.Y. 2016) (citation omitted); *Weiss v. Sherloq Revenue Sols., Inc.*, 2021 WL 965810, at *4 (S.D.N.Y. Mar. 12, 2021) (Román, J.). The opposition fails to meet the standard of plausibility. It never grapples with the disconnect between Plaintiff's conclusory allegations and the sources upon which they purport to rely. Although Plaintiff asserts that "nothing in those sources . . . actually contradict[s]" his allegations, Opp. at 5 n.2, that sweeping assertion is belied by the substance:

> **Allegation in the Complaint:** "PFAS are . . . known to be damaging to both humans and the environment," Compl. ¶ 7, and "PFAS . . . are *indisputably* linked to harmful health effects in humans," *id.* ¶ 46 (emphasis added).
>
> > The material cited for such propositions expressly identifies only "*possible* links between human exposures to PFAS and adverse health outcomes," about which

> "*many questions remain unanswered*," including the "sources of exposure, and if and how they may cause health problems." *Id.* ¶ 7 n.7 (NIH website) (emphasis added).

**Allegation in the Complaint:** "[Glide] exposes consumers to PFAS that pose a risk to consumers' health, [so Glide] is not fit for consumption by humans." *Id.* ¶ 47.

> Plaintiff cites a source that instead expresses only the untested "*hypothesis* that Oral-B Glide is a *potential* exposure source for PFAS[]," about which "**additional data are required to verify.**" *Id.* ¶ 13 n.14 (Boronow paper at 214) (emphasis added).

**Allegation in the Complaint:** "[T]he presence of organic fluorine is a reliable proxy for the presence of PFAS in a product." *Id.* ¶ 41.

> Flatly contradicting this allegation, the source cited by Plaintiff in making this point actually says that "[f]luorine does *not* identify individual PFAS" and is merely a first step to collect data that might "trigger" further "investigation" with "more thorough" testing. *Id.* ¶ 41 n.32 (Supply Chain Solutions Center website) (emphasis added).

**Allegation in the Complaint:** "Use of PFAS in the manufacturing of dental floss . . . leads to the accumulation of PFAS in soil, water, humans, and elsewhere in the environment, threatening other organisms." *Id.* ¶ 8.

> The sources that Plaintiff cites for this proposition do not even mention dental floss, let alone Glide or P&G. *Id.* ¶ 8 n.10.

These key examples demonstrate the contradiction between Plaintiff's broad-brush conclusions and the materials he cites in the unsuccessful effort to support them. They reveal the speculative nature of the complaint and the paradigmatic implausibility warranting dismissal.

## II. PLAINTIFF HAS FAILED TO STATE A CLAIM AND LACKS STANDING

### A. *Andrews* Is Directly on Point and Rejects Plaintiff's Legal Theories.

Plaintiff concedes (as he must) that another federal district court dismissed a nearly identical lawsuit arising from the alleged presence of PFAS in Glide. Opp. at 4 (citing *Andrews v. The Procter & Gamble Co.*, 2019 WL 6520045 (C.D. Cal. June 3, 2019) (attached to MTD as Exh. A)). Tellingly, the opposition does not contend that the reasoning in *Andrews* is faulty, misguided, or inapplicable to the claims at issue here. *Id.* Instead, Plaintiff suggests that *Andrews* is "an excellent case to illustrate how [he] avoids the pitfalls" that would otherwise "doom" his lawsuit. *Id.* He seeks to characterize *Andrews* as correct but distinguishable.

It is not. Plaintiff admits that his complaint cites the same Boronow paper exposed as insufficient in *Andrews*. *Id.* Recall that the Boronow paper screened Glide for fluorine as a proxy for PFAS, and performed PFAS testing on blood samples of subjects who self-reported Glide use, among other things. *Andrews*, 2019 WL 6520045 at *3. Consistent with the admission of that paper's authors, the *Andrews* court limited the significance of the fluorine screening as indicating only that PFAS "*might* be present." *Id.* The court further observed that the Boronow paper itself cautioned that "additional data" were needed to verify whether any PFAS in Glide could "migrate into the saliva or onto hands" and thus "contribute to an individual's body burden of" PFAS, despite observing some correlation between specific PFAS compounds in the blood of individuals who self-reported Glide use. *Id.* (internal quotation marks and citation omitted).

The opposition attempts to distinguish Plaintiff's case from the one dismissed in *Andrews* by arguing that the Boronow paper's reliance on fluorine screening as a "pitfall" he avoided by also testing for "organic" fluorine. Opp. at 4. But this is a classic distinction without a difference because organic fluorine is *also* a mere "proxy" for PFAS, as Plaintiff concedes in a footnote. *Id*. at 5 n.2. Whether one screens for all fluorine or just organic fluorine, it is *not* testing for PFAS compounds either generally or specifically, and likewise is *not* testing for the presence of *any* particular compound that could hypothetically create a risk of harm. *See* Compl. ¶ 41 n.32 (citing Supply Chain Solutions Center website).

Indeed, on that second point — *i.e.*, whether Glide use could constitute a PFAS exposure source — the opposition says nothing at all. Plaintiff offers none of the "'additional data' . . . needed to verify whether Defendant's Oral-B Glide 'could contribute to an individual's body burden of PFAS[],' including evidence showing PFAS[] in floss can migrate into the saliva or onto hands." *Andrews*, 2019 WL 6520045 at *3 (citation omitted). Instead, the opposition

4

simply asserts it would "fl[y] in the face of logic" to deny that Glide is a "huge point of exposure" for PFAS because "[d]ental floss is applied on consumers' teeth and gums." Opp. at 10–11. This rank speculation finds no footing in the complaint and would "clearly overstate" the Boronow paper's findings. *Andrews*, 2019 WL 6520045 at *3. In short, the complaint presents the same "pitfalls" warranting dismissal in *Andrews*.

### B. *GMO Free* Refutes Plaintiff's Speculative Theories Regarding Fluorine Screening and All PFAS Being Purportedly Dangerous.

The *GMO Free* court also dismissed a nearly identical lawsuit challenging PFAS in a consumer product. Yet Plaintiff contends the case helps him avoid dismissal here because it "explicitly endorses [his fluorine] testing method." Opp. at 5 (citing *GMO Free USA v. Cover Girl Cosmetics*, No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022) (copy attached to MTD as Exh. B)). Not so. *GMO Free* credited the allegation about the significance of fluorine screening only in the face of "defendants acknowledge[ment] that its [product] contains PTFE and that PTFE is a form of PFAS." *GMO Free* at 4–5 (dismissing the presence of any other PFAS as a mere "possibility"). Moreover, the *GMO Free* court rejected the notion that the mere presence of any PFAS would "warrant denial of [a] motion [to dismiss] or entitle" a plaintiff "to discovery" by "tak[ing] judicial notice of the fact that different PFAS have potential different health effects and that PTFE has not been found to be toxic or environmentally unsafe." *Id.*

Tacitly conceding that *GMO Free* does not support his case, Plaintiff resorts to another effort to distinguish authority so squarely against him. Plaintiff distances himself from PTFE — the inert polymer at issue in *GMO Free* — proclaiming that he does *not* even allege a specific type of PFAS in Glide. *See* Opp. at 5. In doing so, Plaintiff underscores his failure to allege that any of the more than 9,000 PFAS compounds is actually in Glide, let alone a harmful one. These omissions reveal the implausibility of his speculative claim regarding purported harm, warranting

5

dismissal. *GMO Free* at 5 (rejecting the mere "possibility that other [non-PTFE] PFAS chemicals may be" in the product).

Plaintiff nevertheless seeks to salvage his claim by noting that Glide has been "associated with" PFHxS, which he avers is "undisputedly harmful." Opp. at 3, 5. Yet Plaintiff does not allege that PFHxS is *actually* in Glide. And his basis for noting that PFHxS is "associated with" Glide is the debunked Boronow paper, which specifically concluded that "*additional data are required to verify*" the untested "*hypothesis* that Oral-B Glide is a *potential* exposure source for PFAS." *See* Boronow paper at 214 (cited in Compl. ¶¶ 13 n.14, 33 n.25, 34 n.26, & 35 n.27). It is no surprise that the Boronow paper authors expressed caution, because their data also correlated college attendance with PFHxS in blood samples. *Id.* As noted, correlation is not causation. *McMillan v. Togus Reg'l Office*, 294 F. Supp. 2d 305, 315 (E.D.N.Y. 2003) (noting that mere "'associations' are not equivalent to cause[s]"). No one would suggest that such an "association" supports a claim against a college for PFHxS exposure, but Plaintiff asserts that baseless theory against Glide.

Brushing past these realities and minimizing P&G's observations as little more than part of a "scientific debate," Plaintiff maintains that "discovery is necessary to identify **which** PFAS are" in Glide. Opp. at 5–6. In so doing, he effectively concedes both that he does not know and that the answer matters. In other words, just like the sources he cites in his complaint, Plaintiff is constrained to admit that only some — and certainly *not* all — PFAS compounds are associated with any potential harm. Well aware of this truth, Plaintiff elected to bring a claim without supporting factual allegations, apparently because of "cost issues." *Id.* at 2. But the cost of investigating his claim is not an excuse for failing to allege facts that plausibly support it.

### C. The Opposition Confirms That P&G Has Not Made Any Actionable Misrepresentation and That Plaintiff Lacks Standing.

Plaintiff fails to identify any allegation of a material misrepresentation in Glide's "Pro-Health" marketing. Instead, he advances an argument premised on the conclusory allegation that Glide "contains harmful PFAS chemicals" and supposed survey evidence regarding "harmful" and "dangerous" substances. Opp. at 7, 12–13. To reach this conclusion, Plaintiff stacks inference upon inference — that Glide "most likely" contains PFAS, that this PFAS might be harmful, that use of Glide might expose consumers to the possibly harmful PFAS that Glide might contain, and that this possible exposure pathway might be of a sufficient type and duration that it might harm consumers, with the possibly harmful PFAS that just might be in Glide. Such stacking of a series of speculative inferences does not form a plausible GBL claim or satisfy Article III's standing requirements. *Akridge v. Whole Foods Mkt. Grp.*, 2022 WL 955945, at *6–7 (S.D.N.Y. Mar. 30, 2022) (what a plaintiff deems "likely" would impermissibly "ask the Court to infer an injury").

Plaintiff also fails to allege a plausible GBL injury by simply characterizing the "'Pro-Health' representation" itself as "false." Opp. at 14. The GBL does not provide standing where the misrepresentation and injury are the same, and Plaintiff cites a case that holds as much. *See id.* at 11 n.8 (citing *Kommer v. Ford Motor Co.*, 2017 WL 3251598, at *4–5 (N.D.N.Y. July 28, 2017) (dismissing GBL claims because an injury "cannot be the deception itself," and when the plaintiff neither incurred out-of-pocket costs nor "actually experienced [any] problems" with the product)).

Plaintiff also tries, but fails, to distinguish case law requiring an actual threat of harm, *not* a subjective and speculative fear, to state an actionable omission claim. *Id.* at 11 (citing *Parks v. Ainsworth Pet Nutrition*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019)). Rather than identify a reasoned basis for distinguishing the case, Plaintiff simply labels it "inherently flawed" for confusing an "ingredient" with a "contaminant." *Id.* The opposition provides no authorities discussing such a

7

distinction, let alone treating it as dispositive or even relevant. The closest Plaintiff comes is citing an out-of-circuit district court decision that does not even mention the term "contaminant." *Id.* (citing *Toxin Free USA v. J.M. Smucker Co.*, 2019 WL 5860604 (D.C.Super. Nov. 06, 2019)).

Plaintiff's reliance on his purported survey evidence, which stands for the uncontroversial idea that consumers "want to know about the presence of *dangerous*" substances in products, also goes nowhere. *Id.* at 12 (emphasis added). The complaint lacks any well-pleaded factual allegations that *any substance in Glide* is actually dangerous. Likewise, Plaintiff fails to distinguish *Turnipseed*, which holds that a complaint must provide sufficient details about referenced surveys. *Id.* (citing *Turnipseed v. Simply Orange Juice*, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (Román, J.)); *accord Santiful v. Wegmans Food Mkts.*, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022) (Román, J.). The opposition does not contend that *Turnipseed* is bad law or inapplicable. Opp. at 12–13. Rather, Plaintiff argues that he provided sufficient information about his *fluorine screening*, which is an entirely different subject and non-responsive to the *consumer survey*. *Id.*

### D. The Challenged Marketing Is Puffery.

Plaintiff has no substantive response to P&G's cited authority establishing that "Pro-Health" is non actionable puffery. *See Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 371 (S.D.N.Y. 2019) ("Statements promoting a 'healthier you' fall comfortably within the category of non-actionable puffery, and do not plausibly support a claim of false advertising." (citation omitted)); *accord GMO Free* at 6 ("[G]ood-for-you makeup and skincare" that prioritizes "the health of our consumers and the planet" is puffery). Nor does he meaningfully challenge the notion that "[g]eneric aspirational statements" such as a "'relentless focus and commitment to safety'" are "'quintessential examples' of puffery." *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2021 WL 3727095, at *9 (S.D.N.Y. Aug. 23, 2021) (citation omitted); *GMO Free* at 6–7.

The cases Plaintiff cites do not compel a different result. *E.g.*, Opp. at 9 (citing *Cablevision Sys. v. Verizon N.Y., Inc.*, 119 F. Supp. 3d 39, 53 (E.D.N.Y. 2015)). *Cablevision* held that an internet company's claim about its "better data network" was puffery, rather than a specific and objective representation of how the network was "better" than a competitor's. 119 F. Supp. 3d at 53. The court explained there were multiple aspects to network access and speed, making which network was "better" subjective and non-specific. *Id.* The same holds true for "Pro-Health," which speaks generally to the fact that regular flossing is beneficial for oral health. There is no specific, objective measure against which to weigh these general benefits (*e.g.*, promoting dental health).

Plaintiff also fails in his attempt to distinguish *Housey* by arguing that the plaintiff in that case "did not cite any articles that showed any safety or effectiveness issues regarding" the ingredient in the specific product at issue. Opp. at 9 (citing *Housey v. The Procter & Gamble Co.*, 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022)). Plaintiff says he cites "articles demonstrating how" *some* PFAS — in certain exposure sources that have nothing to do with Glide or floss — "ha[ve] a negative impact on the health of both humans and the environment." *Id.* at 9–10. But that merely highlights how *Housey* is directly on point. Like the plaintiff in *Housey*, Plaintiff makes no well-pleaded allegations that a specific PFAS in Glide, if any, is unsafe when used in dental floss.

**E.     The Opposition Fails to Point to Any Specific Factual Allegations That Could Sustain a Fraud Claim Under Rule 9.**

Plaintiff recognizes that his fraud claim must satisfy Rule 9, *Id.* at 14–15, but falls well short of alleging the who, what, where, when, and why of the purported fraud. He cannot even say whether he purchased Glide packaging with the "Pro-Health" messaging, as the product images in the complaint do not even say Pro-Health. Plaintiff also vaguely "points to P&G's online representations" but curiously cites to a third-party webpage. *Id.* at 9 (citing Compl. ¶ 26 (link to Amazon)). Nor does he bother to explain when, where, and how he visited this website. And the

opposition fails to allege that P&G acted with fraudulent intent, instead resorting to an assertion that "P&G was aware of the" Boronow paper, *id.* at 16, which *Andrews* already held could not sustain claims against P&G. And as the Boronow paper is publicly available, it also cannot support any claim that P&G has some superior knowledge that would trigger a duty to disclose.

The cases Plaintiff cites do not change this result. One of the opposition's first cited authorities is *Dupere v. Ethicon, Inc.*, 2022 WL 523604 (S.D.N.Y. Feb. 22, 2022). Opp. at 15. That court *dismissed* fraud claims because the plaintiffs did "not specify," except "in a conclusory manner," which statements were "viewed or heard, how or when they were exposed to those statements, or why those statements were fraudulent." *Dupere*, 2022 WL 523604, at *7. Moreover, Plaintiff's own cited cases establish that his "information and belief" is irrelevant. Opp. at 15 (citing *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 621–22 (S.D.N.Y. 2013)); *see also Akpan v. New York*, 1999 WL 787838, at *5 (S.D.N.Y. Sept. 30, 1999) ("'[I]nformation and belief' . . . is just another way of saying, 'I don't have any facts, but I would like it to be true.'").

Plaintiff also cites *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499 (S.D.N.Y. 2009) for a standard governing fraudulent concealment. Opp. at 14. But that case involved a tolling exception. *See Hinds*, 620 F. Supp. 2d at 519. In any event, the *Hinds* court dismissed the complaint for failure to satisfy Rule 9. *Id.* at 519–22. *Hinds* also expressly rejected the argument, now advanced by Plaintiff, that fraud claims implicate "questions of fact that cannot be decided on a motion to dismiss," explaining that Rule 9 requires "the Court to assess the sufficiency of Named Plaintiffs' pleading of fraudulent concealment at the motion to dismiss stage." *Id.* at 522.

## CONCLUSION

The Court should dismiss the complaint in its entirety, and with prejudice.

10

Respectfully submitted,

*s/ Adam R. Fox*
Adam R. Fox (5082151)
SQUIRE PATTON BOGGS (US) LLP
1211 Avenue of the Americas, 26th Floor
New York, NY  10036
Telephone:	(212) 872-9800
Facsimile:	(212) 872-9815
Email:	adam.fox@squirepb.com

*Counsel for Defendant, The Procter & Gamble Company*