```
┌─────────────────────────────────────────┐
│ USDC SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #: _____                    │
│ DATE FILED: ___9/22/2023___               │
└─────────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALAN DALEWITZ, on behalf of himself and
all others similarly situated,

                                    Plaintiffs,                    7:22-CV-07323 (NSR)

          -against-                                                OPINION & ORDER

THE PROCTER & GAMBLE COMPANY,

                                    Defendants.

NELSON S. ROMÁN, United States District Judge:

          Plaintiff Alan Dalewitz, individually and on behalf of others similarly situated, bring this

putative class action against The Procter & Gamble Company ("Defendant" or "P & G") asserting

that Defendant's Oral-B Glide Dental Floss products (the "Product" or "Oral-B Glide") is

marketed in a way that is misleading to consumers.  Specifically, Plaintiff brings claims for

violations of New York's General Business Law Sections 349 and 350 and fraud.  Before the Court

is Defendant's motion to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure

12(b)(6) ("Rule 12(b)(6)").

          For the following reasons, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

          The following facts are drawn from Plaintiff's Complaint ("Compl.," ECF No. 1) and are

assumed as true for purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

          P&G is the "world's largest consumer goods company," and it has owned the Oral-B brand

for 16 years.  (Compl. at ¶¶ 1, 3.)  Oral-B is "a brand of dental hygiene products," and Oral-B

Glide is a "line of specific dental floss products."  (*Id.* at ¶ 5.)  Oral-B products, including Oral-B

Glide, are included among P&G's "Pro-Health" line of products, which are targeted to "consumers

willing to pay more for products that touted health benefits, as opposed to flavor or cosmetic appeal." (*Id.* at ¶ 6.)

Per-and-polyfluoroalkyl substances ("PFAS") are "a group of synthetic chemicals believed to be harmful to humans and the environment." (*Id.* at Preface.) This group of chemicals includes "more than 9,000 highly fluorinated aliphatic compounds manufactured by humans and known to be damaging to both humans and the environment." (*Id.* at ¶ 7.) PTFE and PFHxS are two specific PFAS chemicals (*id.* at ¶ 13); PTFE is "known to be a major pollutant and coming under increased scrutiny over its safeness" (*id.* at ¶ 14), and PFHxS "can cause adverse health effects, including harmful effects to a developing fetus, the thyroid, and the liver" (*id.* at ¶ 16). A January 2019 study published in the Journal of Exposure Science and Environmental Epidemiology (the "Boronow Study") identified PTFE and PFHxS "as being associated with Oral-B Glide products."[1] (*Id.* at ¶¶ 13, 33–35.) Moreover, the Study screened Oral-B Glide products for fluorine, which serves as a proxy for the presence of PFAS; to that end, the Study detected the presence of fluorine. (*Id.* at ¶ 34.) Plaintiff meanwhile screened the Product for *organic* fluorine, which is considered a more reliable proxy for the presence of PFAS than non-organic fluorine. (*Id.* at ¶¶ 36–41.) Plaintiff's test identified the presence of organic fluorine. (*Id.* at ¶ 36.)

"Consumers care about whether the products they use contain toxic or harmful chemicals" (id. at ¶ 42), and so it should come as no surprise that "[i]n a survey of more than 1,000 consumers, nearly all participants (98%) indicated they were interested in knowing about the presence of harmful chemicals in everyday products" (*id.* at ¶ 43). In particular, "95.1% of respondents [in another survey conducted by Plaintiff] said that the presence of PFAS in dental floss would be

---

[1] K.E. Boronow, et al., *Serum concentrations of PFASs and exposure-related behaviors in African American and non-Hispanic white women*, 29 J. Expo. Sci. Environ. Epidemiol. 206–217 (2019).

either important or very important to their purchasing decisions." (*Id.* at ¶ 45.) "No reasonable consumer," alleges Plaintiff, "would expect that a Product marketed for one's health would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans." (*Id.* at ¶ 46.)

Plaintiff purchased Oral-B Glide every six months in multi-pack quantities at Costco Wholesale, located in Nanuet, NY. (*Id.* at ¶ 63.) When he purchased the Product, he "saw and believed that the Product was healthy" based on the Product's inclusion in Defendant's "Pro-Health" line of products. (Id. at ¶ 64.) "Encouraged" by these "health representations," Plaintiff purchased the Product. (*Id.*) Plaintiff "would not have purchased the Product or would not have purchased them on the same terms" had he known—"contrary to Defendant's representations"— "the Product was associated with high levels of PFAS chemicals." (*Id.* at ¶ 65.)

Plaintiff filed the present action on August 26, 2022. (ECF No. 1.) In the Complaint, Plaintiff asserts claims that Defendant violated New York's General Business Law Sections 349 and 350. (*Id.* at ¶¶ 83–103.) Plaintiff also asserts a state law fraud claim. (*Id.* at ¶¶ 104–112.)

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal

conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff asserts claims against Defendant for (1) violations of New York's General Business Law Sections 349 and 350, and (2) fraud. (*See* Compl. at ¶¶ 83–112.)  Defendant moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6).  (ECF No. 9.)  The Court addresses each claim below.

### I.     New York General Business Law Claims

Plaintiff's first and second causes of action arise under New York's General Business Law ("GBL") Sections 349 and 350.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce."

To state a plausible claim under Sections 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). While plaintiffs are not required to meet the heightened pleading requirements of Rule 9(b) for their claims, *see Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575–76 (S.D.N.Y. 2021), "plaintiffs must do more than plausibly allege that a label might

4

conceivably be misunderstood by some few consumers." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (internal quotation marks omitted).

If Plaintiff fails to plausibly allege Oral-B Glide in fact contains PFAS or causes harm to consumers, Plaintiff cannot plausibly allege Defendant's advertising materials are false or misleading. Put differently, Defendant's "Pro-Health" branding—assuming *arguendo* a reasonable consumer would interpret such branding to mean anything other than dental health—is neither false nor misleading if Oral-B Glide does not contain PFAS or otherwise cause harm to consumers. *Cf. Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2023 WL 2457801, at *4 (S.D.N.Y. Mar. 10, 2023) (finding cake mix's "no artificial flavors" labeling was not deceptive where plaintiffs failed to plausibly allege presence of artificial flavors).

Here, Plaintiff fails to plausibly allege Oral-B Glide in fact contains PFAS or causes harm to consumers. Although the Court takes judicial notice of the well-pled correlation between PFAS and adverse health effects, Plaintiff's allegations otherwise layer inference upon inference. Generally speaking, Plaintiff argues the causal chain proceeds as follows: (1) "P&G makes health representations"; (2) "PFAS are unsafe for human health"; (3) "The Product at issue contains PFAS"; (4) "The use of these substances is not disclosed to consumers." (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at 2, ECF No. 10.)

This causal chain, however, is missing key links. Plaintiff relies on the Boronow Study, which identified two specific PFAS chemicals (PTFE and PFHxS) "as being associated with Oral-B Glide products." (Compl. at ¶ 13.) The Study, however, screened the Product for fluorine, which serves as a *proxy* for the presence of PFAS. As such, the Study concludes that "additional data" is required to "verify" "that flossing with PTFE-based dental floss could contribute to an individual's body burden of PFAS," for example by "demonstrating the potential for PFASs in

floss to migrate into saliva or onto hands." Plaintiff's test does little better. Plaintiff screened the Product for *organic* fluorine, which likewise serves as a proxy for the presence of PFAS—albeit a more reliable proxy than non-organic fluorine screening. (*Id.* at ¶¶ 36–41.) Although Plaintiff's test confirms the Study's findings, neither the test nor the Study *in fact* identify the presence of PFAS in the Product, let alone identify the presence of *specific* PFAS within the family of 9,000 potential PFAS. Moreover, Plaintiff has not plausibly pled that the presence of PFAS would "migrate" from the Product into a consumer's saliva or onto their hands, therein contributing to the consumer's body burden of PFAS and causing harm. In effect, Plaintiff proffers the Court the following inferences: (1) the Product *likely* contains PFAS; (2) the Product *likely* contains specific PFAS, and (3) these specific PFAS are "coming under scrutiny" and *likely* cause adverse health outcomes (*see* Compl. at ¶¶ 14–16). Plaintiff altogether neglects to proffer another: the Product contributes to the consumer's body burden of PFAS and therein causes harm. Added together, these inferences, or lack thereof, fail to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

One other problem is worth noting and provides an alternative basis for dismissal. Plaintiff's test is unsubstantiated, rendering key allegations implausible. In any amended pleadings, Plaintiff must include further information regarding this test, including "the testing methodology, the date, time, or place of the testing, [and] who conducted the testing." *Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022).

Because Plaintiff has relied on attenuated inferences and unsubstantiated allegations as to the presence of PFAS in the Product and its contribution to the body's burden of PFAS, the Court

concludes that Plaintiff has not plausibly alleged Defendant engaged in deceptive marketing practices. As such, the Court dismisses without prejudice Plaintiff's GBL claims.

## II.      Fraud

To state a claim of fraud under New York law, Plaintiff must allege (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). A claim of fraud must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted). Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of New York*, 712 Fed. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

As discussed above, the Court finds that Plaintiff has failed to allege a material misrepresentation of fact or omission because Plaintiffs has not plausibly alleged the Product contains PFAS or contributed to the body's burden of PFAS, therein causing harm. Accordingly, Plaintiff's fraud claim fails.

## CONCLUSION

Defendant's motion to dismiss is GRANTED. Plaintiff's claims are dismissed without prejudice.

Plaintiff is granted leave to file an Amended Complaint. If Plaintiff chooses to do so, Plaintiff shall file the Amended Complaint no later than October 23, 2023.  Defendant is then directed to answer or otherwise seek leave to move in response to the Amended Complaint no later than November 13, 2023.  Failure to timely amend will result in claims previously dismissed without prejudice being deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 9.

SO ORDERED.

Dated:    September 22, 2023
          White Plains, New York

_____
          NELSON S. ROMÁN
          United States District Judge