**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALAN DALEWITZ, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>THE PROCTER & GAMBLE COMPANY, One Procter & Gamble Plaza, Cincinnati, OH 45201,<br>        Defendant. | Case No. 22-7323<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

<u>**PREAMBLE**</u>

Plaintiff Alan Dalewitz ("Plaintiff" or "Dalewitz") individually and on behalf of himself and other similarly situated individuals, by and through his counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendant The Procter & Gamble Company ("P&G" or "Defendant") regarding its false and deceptive marketing and sale of Oral-B Glide Dental Floss products (the "Products" or "Oral-B Glide"). P&G deceptively markets Oral-B Glide dental floss to consumers as "Pro-Health" and makes related safety and environmental representations despite the fact that the Products contain multiple per- and polyfluoroalkyl substances ("PFAS"), synthetic chemicals known to be harmful to human health and the environment, even at very low levels. PFAS are also called "forever chemicals" because they are extremely persistent and do not break down naturally in the environment or in the human body. PFAS are known to bioaccumulate and to cause a host of detrimental health and environmental effects. P&G's conduct in leading consumers to believe that Oral-B Glide dental floss is safe and "healthy" is particularly egregious considering the intended use for the Product, *i.e.*, the PFAS-laden Product makes direct contact with consumers' mouth, teeth and gums, rendering ingestion

1

of these toxic chemicals likely, if not impossible to avoid. Plaintiff Dalewitz alleges the following based upon information, belief, and the investigation of his counsel:

## NATURE OF ACTION

1.      Plaintiff brings this class action lawsuit on behalf of himself and similarly situated consumers ("Class Members") who purchased Defendant's Oral-B Glide "Pro-Health" Dental Floss Products, which are falsely advertised and unfit for their intended use because they contain unsafe and unhealthy PFAS. The Products are formulated, designed, manufactured, advertised, distributed, and sold by Defendant or its agents to consumers, including Plaintiff, across the United States.

2.      PFAS are a group of synthetic chemicals known to be harmful to both the environment and humans. PFAS are released during the manufacture, use, and disposal of PFAS and PFAS-containing products.

3.      PFAS are readily absorbed into the body by various means, including by oral, dermal, and inhalation exposure. Because PFAS persist and accumulate over time, they are harmful even at very low levels. Indeed, PFAS have been shown to have numerous toxicological effects in laboratory studies and have been associated with thyroid disorders, immunotoxic effects, and various cancers in epidemiology studies. The highest concentrations of PFAS are often found in the liver, kidneys, and blood.

4.      In fact, scientists are studying—and are extremely concerned about—how PFAS affect human health. Consequently, the Centers for Disease Control and Prevention ("CDC") outlined a host of health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease.

5.      Scientists are also increasingly concerned about how PFAS affect the environment, as PFAS contaminate water, air, fish, and soil, and have been linked to harmful effects in animals as well.

6.      Consumers are becoming increasingly concerned with the negative harms proliferated by manufacturers regarding the ingredients and/or materials used (including as to harmful chemicals that affect product safety) and the impact of those ingredients and/or materials on the environment.

7.      Through its marketing campaigns, Defendant has targeted consumers like Plaintiff who seek premium brands that prioritize consumer well-being and environmental protection. There are competing brands that offer similar products, but do not focus on capitalizing on these consumer preferences through their marketing.

8.      Defendant represents to consumers that it adheres to a "rigorous safety process to analyze every ingredient—before we ever consider putting it in one of our products."[1]



---

[1] *Product Safety*, P&G, https://us.pg.com/product-safety/ (last visited Mar. 17, 2025).

9.     Oral-B is a brand of dental hygiene products marketed to emphasize the importance of oral health. Oral-B Glide is a line of specific dental floss products, which has allowed P&G to become one of the biggest sellers of dental floss in the country.[2] P&G added the Oral-B brand to its "Pro-Health" line, which is "aimed at consumers willing to pay more for products that touted health benefits, as opposed to flavor or cosmetic appeal."[3]

10.     Additionally, P&G positions itself as a company dedicated to "helping ensure a healthy planet for present and future generations."[4]

11.     Despite the above representations made by Defendant to consumers regarding the health, safety, and sustainability of the Products, research has shown that these claims are false and misleading because the Products contain PFAS.

12.     Based on Defendant's representations, a reasonable consumer would expect that the Products can be safely used as marketed and sold. Due the presence of PFAS, however, the Products are not safe and instead pose a significant health risk to unsuspecting consumers.

13.     Nor are the Products sustainable, as PFAS-containing products are not responsibly sourced nor compostable. The forever chemicals contained in the Products will never break down, but rather persist and accumulate in the environment.

14.     Yet, neither before nor at the time of purchase does Defendant notify consumers like Plaintiff that its Products are unsafe, unsustainable, or should otherwise be used with caution.

---

[2] Dominique Petruzzi, *Sales Value of Dental Floss in the United States in 2019, by Leading Manufacturer (in million U.S. dollars)\**, Statista (Feb. 22, 2024), https://www.statista.com/statistics/1072573/leading-dental-floss-vendors-sales-in-the-us/.

[3] Ellen Byron, *Merger Challenge: Unite Toothbrush, Toothpaste*, The Wall Street Journal (Apr. 24, 2007), https://www.wsj.com/articles/SB117737878770779935.

[4] *Mapping Our Impact*, P&G, https://us.pg.com/mapping-our-impact/ (last visited Mar. 17, 2025).

15.     Accordingly, Plaintiff brings his claims against Defendant individually and on behalf of a class of all others similarly situated for (1) violations of the New York General Business Law § 349; and (2) violation of the New York General Business Law § 350.

## PARTIES

16.     Plaintiff Dalewitz is an individual consumer who is a currently a citizen of New City, New York.

17.     During the Class Period, Plaintiff Dalewitz purchased Oral-B Glide Products approximately every six months in multi-pack quantities at Costco Wholesale, located at 50 Overlook Blvd, Nanuet, NY 10954.

18.     Plaintiff Dalewitz, when he purchased the Products, saw and believed that the Products were healthy, based on the fact that the Products are a part of Defendant's "Pro-Health" line. The health representations of the Products were material to Plaintiff Dalewitz and encouraged him to make his purchases. Plaintiff Dalewitz was also aware of and believed Defendant's environmental promises. Plaintiff Dalewitz relied upon these representations, which as a consumer he had no reason to doubt.

19.     Plaintiff Dalewitz, along with other consumers, relies on representations when deciding which products to purchase.

20.     Plaintiff Dalewitz, along with other consumers, is willing to pay more for products that have benefits supposedly unique to that product.

21.     Plaintiff Dalewitz, along with other consumers, is injured when he pays a price premium based on false or misleading representations.

22.    Plaintiff Dalewitz would not have purchased the Products or would not have purchased them on the same terms, if he had known that contrary to P&G's representations, the Products contain PFAS, a group of dangerous and unsustainable chemicals.

23.    Defendant P&G is the "the world's largest consumer goods company."[5]

24.    P&G has owned the Oral-B brand for almost 20 years.[6]

25.    As a direct result of P&G's material misrepresentations and omissions, Plaintiff Dalewitz suffered, and continues to suffer, economic injuries.

26.    On April 28, 2022, Plaintiff Dalewitz sent Defendant P&G a letter about his and the putative Class's claims. Defendant responded, but the issue was not resolved. Plaintiff Dalewitz subsequently filed a Complaint against Defendant P&G on August 26, 2022 (ECF No. 1) and a First Amended Complaint ("FAC") against Defendant P&G on November 13, 2023 (ECF No. 17).

27.    Accordingly, Plaintiff Dalewitz, on behalf of himself and all other members of the Class, seeks relief, including punitive damages, due to Defendant's acts and practices.

## FACT ALLEGATIONS

### I.    Background on PFAS.

28.    Despite Defendant's representations regarding health and environmental sustainability, P&G knows that Oral-B Glide is made with PFAS, a chemical family that causes health issues in humans and is environmentally unsustainable.

29.    The PFAS family of chemicals was accidentally discovered in 1938 by a scientist working at E.I. du Pont de Nemours and Company ("DuPont"). In the decades following that

---

[5] *About Us*, P&G, https://www.pgcareers.com/global/en/about-us (last visited Mar. 17, 2025).
[6] Byron, *supra* note 3.

discovery, DuPont and The 3M Company ("3M") became the primary manufacturers of PFAS. For decades, DuPont, 3M, and other manufacturers were aware that PFAS persist indefinitely in the environment, bioaccumulate in blood, and pose a substantial threat to human health and the environment.

30.    The manufacturers concealed and downplayed the threat to human health and the environment presented by PFAS. They also withheld data and research regarding the toxicity of PFAS from the public and from regulators. Regulators continue to play catch-up in addressing the threat to human health and the environment presented by PFAS because DuPont and other manufacturers concealed the dangers associated with these substances.

31.    Documents uncovered in lawsuits against PFAS manufacturers revealed that these companies had "preliminary evidence of PFAS toxicity as early as the 1960s."[7] In 1981, for instance, DuPont removed women workers from its PFAS production lines after "eight recently pregnant coworkers" gave birth to babies with birth defects, including one who had two PFAS chemicals "in [their] cord blood."[8]

32.    Though much of the toxicological research to date has focused on certain types of PFAS, DuPont and other manufacturers themselves state that the entire PFAS family of chemicals, not just specific types, are "hazardous substances."[9]

---

[7] Jeffrey Kluger, *Companies Knew the Dangers of PFAS 'Forever Chemicals'—and Kept Them Secret*, Time (June 1, 2023), https://time.com/6284266/pfas-forever-chemicals-manufacturers-kept-secret/. This article also notes that even PFAS manufacturers agree that "[t]he higher the level of fluorine, the higher the level of PFAS, and the greater the risk of all of the illnesses associated with the chemicals." Further, this article highlights the "[p]ublic demand is leading to a growing market for PFAS-free products."

[8] *Id.*

[9] *N.J. Dep't. Of Env't. Protection, et al. v. E. I. du Pont de Nemours and Co., et al.*, 2 :19-cv-14758, ECF No. 118 at 12 (D.N.J.).

33.    Today, the PFAS chemical family contains more than 9,000 highly fluorinated aliphatic compounds–all manufactured by humans and known to be damaging to both human health and the environment,[10] even at very low levels.[11]

34.    PFAS are considered "forever chemicals" because they do not biodegrade or break down naturally in the environment.[12] Use of PFAS in the manufacturing of dental floss and other products leads to the accumulation of PFAS in soil, water, humans, and elsewhere in the environment, threatening other organisms.[13] For example, a study by the U.S. Environmental Protection Agency ("EPA") on freshwater fish contamination found significant levels of PFAS in nearly every fish sampled.[14]

35.    Consumers have grown increasingly aware of and concerned about PFAS and the presence of such in their bodies, the environment, and the products they use.[15]

---

[10] *Nat'l Inst. of Envtl. Health Sciences, Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, Nat'l Insts. of Health U.S. Dep't. of Health and Human Servs. ("NIH"), https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm (last visited Jan. 26, 2024); Elsie M. Sunderland, et al., *A Review of the Pathways of Human Exposure to Poly- and Perfluoroalkyl Substances (PFASs) and Present Understanding of Health Effects*, 29 J. Expo. Sci. Envtl. Epidemiol., 131-47 (2019), DOI: 10.1038/s41370-018-0094-1, https://pubmed.ncbi.nlm.nih.gov/30470793/.

[11] *See* Abrahm Lustgarten, et al., *Suppressed Study: The EPA Underestimated Dangers of Widespread Chemicals*, ProPublica (June 20, 2018), https://www.propublica.org/article/suppressed-study-the-epa-underestimated-dangers-of-widespread-chemicals; *see also* Linda S. Birnbaum, *The Perils of PFAS*, Gillings School of Public Health, UNC, (Feb. 12, 2021), https://sph.unc.edu/wp-content/uploads/sites/112/2019/08/The-Perils-of-PFAS-UNC-Final-2.12.21.pdf.

[12] As an illustration of how "forever" PFAS compounds are, in 1997, when a PFAS manufacturer sought "clean blood samples" to compare to PFAS-tainted samples, the only source of "clean blood" (free of PFAS contamination) was the "preserved blood of soldiers who died in the Korean War, before [PFAS] products spread worldwide." *Poisoned Legacy*, Environ. Working Group (May 1, 2015), https://www.ewg.org/research/poisoned-legacy.

[13] NIH, *supra* note 10; Francisca Pérez, et al., *Accumulation of perfluoroalkyl substances in human tissues*, 59 Env't. Int'l 354 (2013), https://pubmed.ncbi.nlm.nih.gov/23892228/.

[14] Nadia Barbo, et al., *Locally caught freshwater fish across the United States are likely a significant source of exposure to PFOS and other perfluorinated compounds*, 220 Envtl. Research 115165 (2023), https://doi.org/10.1016/j.envres.2022.115165.

[15] *See, e.g.*, Mark Ruffalo, *We're Facing a 'Forever Chemicals' Crisis. We Must Stop PFAS at the Source*, The Guardian (Mar. 10, 2025), https://www.theguardian.com/commentisfree/2025/mar/10/forever-chemicals-pfas-mark-ruffalo; LastWeekTonight, *PFAS: Last Week Tonight with John Oliver (HBO)*, YouTube (Oct. 4, 2021), https://www.youtube.com/watch?v=9W74aeuqsiU (media coverage on PFAS.)

36.     As a result, there is a growing consumer advocacy movement to eliminate PFAS from various consumer products, including dental floss.[16]

37.     In fact, on October 18, 2021, underscoring the gravity of the PFAS threat, the Biden-Harris Administration announced accelerated efforts to protect Americans from PFAS, which can cause "severe health problems" and persist in the environment once released, "posing a serious threat across rural, suburban, and urban areas."[17]

38.     Defendant uses PFAS as part of the Products' manufacturing process.

39.     Back in 1992, before being sold under the Oral-B brand, the Products were sold as "Glide" by W.L. Gore & Associates ("Gore").[18]

40.     Glide floss, as stated by Gore, is made of "commercially available expanded PTFE."[19] In 2003, when P&G first announced it was acquiring Glide from Gore, the plan was for "Gore [to] continue to make Glide" while P&G "handle[d] the product's packaging and marketing."[20]

41.     At some point after also acquiring the Oral-B brand from Gillette, P&G rebranded Glide as an Oral-B product and sold it under its "Pro-Health" line.[21]

---

[16] Elicia Mayuri Cousins, et al., *Risky Business? Manufacturer and Retailer Action to Remove Per- and Polyfluorinated Chemicals from Consumer Products*, NEW SOLUTIONS: A J. of Envtl. & Occupational Health Policy (2019) 29(2), 242–65, DOI: 10.1177/1048291119852674, https://journals.sagepub.com/doi/10.1177/1048291119852674.

[17] *FACT SHEET: Biden-Harris Administration Launches Plan to Combat PFAS Pollution*, The White House (Oct. 18, 2021), https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2021/10/18/fact-sheet-biden-harris-administration-launches-plan-to-combat-pfas-pollution/.

[18] Sarah Ellison*, Procter & Gamble To Buy Glide Floss*, The Wall Street Journal (Sept. 17, 2003), https://www.wsj.com/articles/SB10637558338169300.

[19] *Hereinafter* known as ePTFE. *See* U.S. Patent No. 5,518,012 (filed May 21, 1996).

[20] Ellison, *supra* note 18.

[21] Byron, *supra* note 3.

42.    Today, the Products are still made with expanded polytetrafluoroethylene ("ePTFE").[22]

43.    ePTFE, is a type of PTFE.[23] PTFE is "best known by the brand name Teflon™ [and] is typically made using several hazardous PFAS (per- and polyfluorinated alkyl substances) that have polluted drinking water across the globe."[24]

44.    PTFE specifically is known to be a major environmental pollutant. While early studies suggested PTFE may be safe for certain uses, that conclusion has increasingly been called into question, especially considering that its manufacturing process necessarily involves the use of PFAS chemicals that are harmful to human health.[25]

45.    For instance, PTFE used to be manufactured with PFOA, a particularly dangerous PFAS chemical, but was then reformulated with Gen X, the name for the PFAS chemical formulated sometime post-2009 that also bears a "substantial risk of injury to health or the environment."[26]

46.    But ePTFE is not the only PFAS chemical in the Products.

---

[22] *See, e.g.*, Leonard Lorch, *Radically Easier Dental Floss That Freshens Breath Patented*, Cision (Feb. 20, 2019),    https://www.prnewswire.com/news-releases/radically-easier-dental-floss-that-freshens-breath-patented-300799090.html ("Many readers will recognize ePTFE flosses glide between teeth because that's what Procter & Gamble's leading ORAL-B GLIDE flosses do that are so popular nowadays.").

[23] *Materials Science Innovation*, Gore, https://www.gore.com/about/technologies (last visited Mar. 17, 2025).

[24] *Undisclosed PFAS Coatings Common on Cookware, Research Shows*, Ecology Center, https://www.ecocenter.org/our-work/healthy-stuff-lab/reports/whats-cooking/undisclosed-pfas-coatings-common (last visited Mar. 17, 2025); *see also* Kati Weis, *New Colorado Law Will Ban Sales of Dental Floss, Clothes & Other Household Products Containing Toxic "Forever Chemicals,"* CBS (June 24, 2024), https://www.cbsnews.com/colorado/news/new-colorado-law-ban-sales-dental-floss-clothes-household-products-containing-toxic-forever-chemicals/.

[25] *The Teflon Chemical PTFE is Often Touted as a Safe Cousin of Toxic PFAS. But is it Really?*, ChemSec (Feb. 10, 2022), https://chemsec.org/the-teflon-chemical-ptfe-is-often-touted-as-a-safe-cousin-of-toxic-pfas-but-is-it-really/#close.

[26] Sharon Lerner, *New Teflon Toxin Causes Cancer in Lab Animals*, The Intercept (March 3, 2016), https://theintercept.com/2016/03/03/new-teflon-toxin-causes-cancer-in-lab-animals/.

47.     As explained, *infra* § IV, testing reveals that the Products also contain other PFAS chemicals, which are not publicly known to be used in dental floss. Those PFAS chemicals are Perfluoromethoxypropionic acid ("PMPA"), N-Methyl perfluorooctanesulfonamido ethanol ("NMeFOSE"), Perfluorobutanoic acid ("PFBA"), and Perfluoropropanesulfonic acid ("PFPS").

48.     Thus, P&G's advertising of Oral-B Products—which suggests that the Products are "Pro-Health"—is false and misleading.

49.     P&G's representations that it is a sustainable company despite its use of PFAS as an ingredient in the Products is also false and misleading.

50.     P&G also deceives consumers by concealing the material fact that the Products contain PFAS, which a reasonable consumer would not assume.

51.     By deceiving consumers about the nature of the Product, P&G is able to sell a greater volume of the Products, charge higher prices for the Products, and take market share away from competing products, thereby increasing its own sales and profits.

52.     P&G's "Pro-Health" line tends to be more expensive than competing brands.[27]

Oral B
**Oral-B Glide Pro-Health Original Dental Floss - 54.6 yd**

★★★★⯨    4.5 (170)

**$4.99**

---

[27]     *Compare Oral-B Glide Pro-Health Original Dental Floss—54.6 yd*, Rite Aid, https://www.riteaid.com/shop/oral-b-glide-pro-health-floss-original-1-roll-0038525 (last visited Mar. 17, 2025), *with Reach Waxed Dental Floss, Mint—55 Yards*, Rite Aid, https://www.riteaid.com/shop/reach-waxed-dental-floss-mint-55-yards (last visited Mar. 17, 2025) (Reach dental floss is an Oral-B Glide competitor. *See* Ellison, *supra* note 18.).



Reach

**Reach Waxed Dental Floss, Mint - 55 Yards**

★★★★⯨    4.4 (7)

**$1.89**

53.    Because P&G's marketing of the Products tends to mislead and is materially deceptive about the true nature and quality of the Products, Plaintiff Dalewitz brings this case on behalf of himself and all others similarly situated and seeks equitable and monetary relief.

**II.    P&G Sells the Products as a Part of Its "Pro-Health" Marketing Campaign.**

54.    P&G specifically markets the Oral-B Glide Products as being "Pro-Health."[28]

55.    Plaintiff Dalewitz purchased Oral-B Glide's Advanced Multi-Protection Floss, which is a part of P&G's "Pro-Health" product line. Below are generic images[29] that reflect the packaging of the Product purchased by Dalewitz:



---

[28] Byron, *supra* note 3.
[29] Captured from *Oral B Glide Pro-Health Advanced Multi Protection Clean Mint Floss 6-43.7 yd. Packs*, Walmart, https://www.walmart.com/ip/Oral-B-Glide-Pro-Health-Advanced-Multi-Protection-Clean-Mint-Floss-6-43-7-yd-Packs/323591591 (last visited Mar. 17, 2025).



56.     Defendant's representations are designed to lead, and do lead, consumers to believe that Oral-B Glide Products are made in a way that will benefit consumers' health or otherwise be safe to use.

57.     In fact, "Pro-Health" is specifically a line by P&G "aimed at consumers willing to pay more for products that tout[] **health benefits**."[30]

58.     The Products, though, contain several PFAS chemicals.

59.     ***PFAS manufacturers have stated that all PFAS are "hazardous substances."*** *See supra* ¶ 32.

60.     Consumers who rely on and pay more for the Products' "Pro-Health" representation are thus deceived by the fact that the Products contain PFAS, which have detrimental effects on human health.

61.     Consumers care about whether the products they use contain toxic or harmful chemicals.

---

[30] Byron, *supra* note 3 (emphasis added).

62.    In fact, "48% of global consumers say they make proactive health and wellness choices on a regular basis."[31]

63.    Other surveys on consumer habits have found that "consumers are considering health and fitness to be [] 'essential.'"[32]

64.    Finally, "[a]t least 70 percent of the survey respondents across the markets surveyed want to be healthier."[33]

65.    Consumers seeking safe and healthy products would not consider "Pro-Health" dental floss–an oral hygiene product–safe nor healthy if they knew they were being exposed to PFAS.

**III**.    **P&G Sells the Products as a Part of Its Sustainability Marketing Campaign.**

66.    P&G also makes environmental representations. *See supra* ¶ 10.

67.    P&G represents that "environmental sustainability is embedded in how we do business."[34]

68.    P&G claims that its sustainability plans are "built upon the strength of four science-based pillars—Climate, Waste, Water and Nature."[35]

---

[31] *An Inside Look into the Global Consumer Health and Wellness Revolution*, NielsenIQ (Oct. 28, 2021), https://nielseniq.com/global/en/insights/report/2021/an-inside-look-into-the-2021-global-consumer-health-and-wellness-revolution/.

[32] *Consumers See Health and Well-being as "Essential" Spend Category*, *Accenture Survey Finds*, Accenture (Sept. 7, 2022), https://newsroom.accenture.com/news/consumers-see-health-and-well-being-as-essential-spend-category-accenture-survey-finds.htm.

[33] Anne Grimmelt, et al., *Hungry and Confused: The Winding Road to Conscious Eating*, McKinsey & Co. (Oct. 5, 2022), https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/hungry-and-confused-the-winding-road-to-conscious-eating.

[34] *Environmental Sustainability*, P&G, https://us.pg.com/environmental-sustainability/ (last visited Mar. 17, 2025).

[35] *Id*.

69.    P&G knows that consumers, such as Plaintiff Dalewitz, seek out and are willing to pay more for brands that are environmentally sustainable. PFAS, of course, are unsustainable.

70.    "Sustainability ranks high as a consumer goal in the United States (64 percent)."[36]

71.    Also, "68% [of Americans] would pay more for sustainable products."[37]

72.    In fact, environmental, social, and governance ("ESG") claims, such as sustainability, have an outsized importance to consumers.[38]

73.    Further, the Federal Trade Commission ("FTC") has released "Green Guides" that caution marketers not to make unqualified general environmental benefit claims because "it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims."[39]

---

[36] Grimmelt, *et al.*, *supra* note 33.
[37] *Interest in Sustainability Surges for Consumer Products*, Computer Generated Solutions Inc., https://www.cgsinc.com/en/resources/interest-sustainability-surges-consumer-products (last visited Mar. 17, 2025).
[38] *Consumers Care about Sustainability—and Back it up with Their Wallets*, McKinsey & Co. (Feb. 6, 2023), https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-care-about-sustainability-and-back-it-up-with-their-wallets. ("[P]roducts making ESG-related claims generated outsize growth [] in three out of four personal-care categories[.]").
[39] FTC Green Guides, 16 C.F.R. § 260.4(b) (2012).

## IV.    The Products Are Made With PFAS, a Chemical Family That Causes a Multitude of Health Problems.

74.    P&G mentions the use of PTFE and Teflon™ on its website.[40]

## Dental Floss Today

Since then, the variety of  types of dental floss has expanded to include newer materials such as Gore-Tex, and different textures such as spongy floss and soft floss. And today's floss has other features to make flossing easier. For example, floss with stiffened ends is designed to help with flossing around braces or other dental appliances.

## Water Flosser vs. String Floss

Flossing involves threading a thin string of nylon or Teflon between teeth in a C-shape pattern to remove plaque. A water flosser, also known as an oral irrigator, works by shooting out a thin, pressurized stream of water between teeth. Some may find a water flosser is easier to use than traditional floss. It's much less hands on, and less technique intensive. The  Oral-B Water Flosser Advanced Cordless Irrigator is designed to deep clean and detoxify* below the gum line. Its unique Oxyjet Technology targets and helps eliminate plaque bacteria for healthier gums.

## Types of Dental Floss

The choices for a product as basic as  dental floss can seem overwhelming, but you can't go wrong with a choice of floss as long as you use it every day.

Each type of dental floss has pros and cons. Here are a few points to keep in mind about your flossing options:

- **Unwaxed floss** is thin nylon floss made of about 35 strands twisted together. It fits into tight spaces if your teeth are close together, but it can be prone to shredding or breaking.
- **Waxed floss** is a standard nylon floss with a light wax coating. It is less likely to break, but the wax coating may make it harder to use in tight spots.
- **Dental tape** is broader and flatter than standard floss and comes in waxed or unwaxed versions. People with more space between their teeth often find dental tape more comfortable to use than standard floss.
- **Polytetrafluorethylene floss (PTFE)** is the same material used in high-tech Gore-Tex fabric. The material slides between the teeth easily and is less likely to shred compared to standard floss.
- **Super flosses** are made from yarn-like material that has stiffer sections on each end that can be used to clean around braces or dental bridges.

---

[40] *The History of Dental Floss*, Oral-B, https://oralb.com/en-us/oral-health/dental-floss-history/ (Gore-Tex is ePTFE) (last visited Mar. 17, 2025); *see also Dental Floss Types—The Pros and Cons,* Oral-B, https://oralb.com/en-us/oral-health/why-oral-b/floss/dental-floss-types-the-pros-and-cons/ (last visited Mar. 17, 2025); *see also Water Flossers vs. String Floss*, Oral-B, https://oralb.com/en-us/oral-health/why-oral-b/floss/water-flossers-vs-string-floss (last visited Mar. 17, 2025).

75.     In his First Amended Complaint, Plaintiff Dalewitz provided a detailed description of the Total Organic Fluorine ("TOF") test that was conducted on the Products.

76.     As explained in FAC ¶¶ 75–84, TOF is an effective screening test for PFAS. Here, 302,400 parts per million ("ppm") of organofluorine, also known as organic fluorine, was found in the Product. That level that is more than ***3000 times*** the 100 ppm of organic fluorine that is widely accepted as being indicative of intentional use of PFAS.

77.     Additionally, Plaintiff Dalewitz commissioned direct PFAS testing of the Product.

- **Product Tested:** Oral B Glide Pro-Health Multi Protection Dental Floss Clean Mint

- **Test Period:** November 1, 2023 to December 11, 2023

- **Laboratory:** Eurofins Product Testing USA, located in Bothell, Washington.

- **Methodology:** EPA 537 Isotope Dilution

78.     As detailed in the chart below, the test results indicate the presence of four additional PFAS chemicals, which unlike PTFE, are not referenced on Defendant's website. These specific PFAS chemicals are also not disclosed on the Product's packaging.

| PFAS Chemical Name | Amount (Parts Per Billion) |
|:---:|:---:|
| PMPA | 51.7 |
| NMeFOSE | 0.948 |
| PFBA | 6.86 |
| PFPS | 2.8 |

79.     PFAS are objectively not "Pro-Health."

80.      Research into PFAS has been plagued by corporate secrecy, and new information about the dangers of these substances is revealed with alarming regularity.[41]

81.      As mentioned, *supra* ¶ 32, even the manufacturers of PFAS agree that the entire chemical family is "hazardous."

82.      The EPA currently advises the public about the health threats presented by the PFAS family as a whole: "peer-reviewed scientific studies have shown that exposure to certain levels of PFAS may lead to:

> Reproductive effects such as decreased fertility or increased high blood pressure in pregnant women.
>
> Developmental effects or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes.
>
> Increased risk of some cancers, including prostate, kidney, and testicular cancers.
>
> Reduced ability of the body's immune system to fight infections, including reduced vaccine response.
>
> Interference with the body's natural hormones.
>
> Increased cholesterol levels and/or risk of obesity."[42]

83.      In light of these health concerns, multiple states, including New York, have enacted regulations regarding PFAS in consumer products, including dental floss.[43]

---

[41] *See, e.g.*, *Hardwick v. 3M Co.*, 589 F. Supp. 3d 832, 840, 869 (S.D. Ohio 2022) (certifying class in case where plaintiff alleged that PFAS manufacturer "engaged in a systematic effort to conceal and deny the dangers of PFAS"); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873, 2022 U.S. Dist. LEXIS 168634, at *33, 48 (D.S.C. Sept. 16, 2022) (denying defendant PFAS manufacturer's summary judgment motion in matter concerning non-disclosure of "health and environmental effects of" certain types of PFAS).

[42] *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, EPA, https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last visited Mar. 17, 2025.)

[43] *See, e.g.*, Cal. Health & Safety Code Div. 104, Pt. 3, Ch. 15, Art. 1, § 109000 1; Me. Rev. Stat. Tit. 38 § 1614; Victor Y. Xu, *Minnesota and Washington Blitz PFAS in Products; Maine Backpedals*, Marten Law, (June 15, 2023),      https://www.martenlaw.com/news-and-insights/minnesota-and-washington-blitz-pfas-in-products-maine-backpedals#_ftnref11;   *PFAS   in   Apparel   Law*,   N.Y.S.   Dep't   of   Envtl.   Conservation, https://www.dec.ny.gov/chemical/128082.html (last visited Mar. 18, 2025); *see also* S. 187A, 2025-2026 Leg., Reg. Sess. (N.Y. 2025), https://www.nysenate.gov/legislation/bills/2025/S187/amendment/A (Proposed bill prohibiting

84.    Moreover, the following figure from the European Environment Agency ("EEA") shows the "[e]ffects of PFAS on human health:"[44]



85.    Aforementioned, *supra* ¶¶ 42, 45, one of the confirmed PFAS chemical in the Products, PTFE, now requires the use of the Gen X group of PFAS chemicals.

86.    Gen X chemicals have been in existence for approximately 14 years.[45] They are a new kind of PFAS with a shorter chain of carbon atoms.[46] Ironically, they were made to replace long-chain PFAS.[47]

"regulated PFAS" in various products, including dental floss. "Regulated PFAS" includes both defined chemicals and components as measured in total organic fluorine.)

[44] *Emerging Chemical Risks in Europe— 'PFAS'*, European Environment Agency, (Dec. 12, 2019), https://www.eea.europa.eu/publications/emerging-chemical-risks-in-europe.

[45] Sharon Lerner, *Chemours Claims Toxic PFAS Chemical GenX Protects The Climate,* The Intercept (Apr. 11, 2022), https://theintercept.com/2022/04/11/pfas-genx-chemours-climate-crisis/.

[46] PFAS with six carbon atoms are known as "short-chain," whereas those with eight are called "long-chain."

[47] Lerner, *supra* note 45.

87.     Unfortunately, like long-chain PFAS, Gen X poses the same toxicity concerns.[48] In fact, in 2022 the EPA released a drinking water health advisory for Gen X, based upon animal toxicity studies that link Gen X with "health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer."[49]

88.     Meanwhile, "[t]he currently available evidence indicates hazards likely exist with respect to the potential for thyroid, liver, and developmental effects in humans, given relevant PFBA exposure conditions."[50]

89.     In fact, on February 8, 2024 , the EPA had proposed that PFBA be added to "its list of hazardous constituents."[51]

90.     For a chemical to even be considered a "hazardous constituent," "scientific studies must show that the chemical has toxic, carcinogenic, mutagenic, or teratogenic effects on humans or other life forms."[52] Here, the "EPA evaluated toxicity and epidemiology data for [PFBA] determined that [it] [met] the criteria."[53]

---

[48] *Id.* ("[A]dditional research [handed over] to the EPA [] showed that the toxicity profile of [Gen X] in fact did match that of [older PFAS].").

[49] *Questions and Answers: Drinking Water Health Advisories for PFOA, PFOS, GenX Chemicals and PFBS*, EPA, https://www.epa.gov/sdwa/questions-and-answers-drinking-water-health-advisories-pfoa-pfos-genx-chemicals-and-pfbs (last visited Mar. 17, 2025).

[50] *IRIS Toxicological Review of Perfluorobutanoic Acid (PFBA, CASRN 375-22-4) and Related Salts*, EPA (Dec. 2022), https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/0701tr.pdf.

[51] *Proposal to List Nine Per- and Polyfluoroalkyl Compounds as Resource Conservation and Recovery Act Hazardous Constituents*, EPA, https://www.epa.gov/hw/proposal-list-nine-and-polyfluoroalkyl-compounds-resource-conservation-and-recovery-act (last visited Mar. 17, 2025).

[52] *Id.*

[53] *Id.*

91.    In addition, both NMeFOSE[54] and PFPS[55] have been used in Aqueous Film Forming Foam, a substance used in firefighting efforts that has been linked to a plethora of health issues.[56]

92.    In fact, on March 25, 2024, the EPA ordered two chemical companies, including 3M, *supra* ¶ 29, "to conduct and submit testing on the physical-chemical properties of" NMeFOSE because of its propensity to accumulate in the environment and the fact that based on current data, the "EPA has concluded that NMeFOSE may present an unreasonable risk of injury to health or the environment."[57]

93.    Likewise, PMPA is also linked to "serious health effects, including cancer, endocrine disruption, accelerated puberty, liver and immune system damage, and thyroid changes."[58]

94.    Even worse, the Products are oral hygiene products, so consumers are directly, orally exposed to the Products' ingredients. As explained, *infra* § VI, PFAS are mobile chemicals, dental floss such as Oral-B Glide sheds, and ingestion is a main pathway to exposure in humans.

---

[54] *Disposition and Metabolism of N-Methyl Perfluorooctane Sulfonamidoethanol (NMeFOSE) in Rats*, Center for Health Effects of Environmental Contamination, https://cheec.uiowa.edu/research/disposition-and-metabolism-n-methyl-perfluorooctane-sulfonamidoethanol-nmefose-rats (last visited Mar. 17, 2025).

[55] Jane Mundy, *More Firefighters File PFAS/PFOA Lawsuits*, Lawyers and Settlements (Oct. 7, 2020), https://www.lawyersandsettlements.com/legal-news/PFAS-Health-Risks/more-firefighters-file-pfas-pfoa-lawsuits-23309.html.

[56] David Bond, *The US military is poisoning communities across the US with toxic chemicals*, The Guardian (Mar. 25, 2021), https://www.theguardian.com/commentisfree/2021/mar/25/us-military-toxic-chemicals-us-states.

[57] *EPA issues PFAS test order as part of National Testing Strategy*, EPA (Mar. 25, 2024), https://www.epa.gov/newsreleases/epa-issues-pfas-test-order-part-national-testing-strategy-0.

[58] *Perfluoro-2-methoxypropanoic acid (PMPA)*, Env't Working Group, https://www.ewg.org/tapwater/contaminant.php?contamcode=E348 (last visited Mar. 17, 2025).

95.    Not only are PFAS detrimental to human health, but consumers of Oral-B Glide Products are concerned by the presence of PFAS, as evidenced by publicly posted questions consumers asked about the contents of the Products.[59]



96.    Consumers, thus, do not expect chemicals linked to severe and varied health problems in a "Pro-Health" product. Nor would consumers pay more for "Pro-Health" products containing toxic chemicals such as PFAS.

97.    In fact, Plaintiff Dalewitz conducted his own survey, in which 95.1 percent of respondents said that the presence of PFAS in dental floss would be either important or very important to their purchasing decisions.

## V.    The Products Contain PFAS, a Chemical Family That Is Harmful to the Environment.

98.    As explained, *supra*, the Products contain several PFAS chemicals.

99.    Despite P&G's environmental claims, PFAS are environmentally unsustainable.

---

[59]    *See, e.g., Oral-B Glide Pro-Health Deep Clean Dental Floss Cool Mint*, Target, https://www.target.com/p/oral-b-glide-pro-health-deep-clean-dental-floss-cool-mint-2pk/-/A-13508348?preselect=13508348#lnk=sametab (last visited Mar. 17, 2025).

100.    PFAS are non-biodegradable "forever chemicals," which accumulate in the environment and, thus, are unsustainable, as shown in this diagram.[60]



101.    The PFAS found in the Products pose environmental concerns.

102.    High concentrations of PMPA, for example, were found in the Xiaoqing River in China.[61]

103.    Additionally, a study regarding PFAS in groundwater found "[a] significant positive relationship between GenX and PMPA concentrations," which "suggests a common release mechanism for these two PFAS."[62] As explained, *supra* ¶ 87, the EPA has released a drinking water health advisory for Gen X, based upon animal toxicity studies.

[60] *PFAS 101: What are Polyfluoroalkyl Substances & What Do They Have To Do With Packaging?,* Source Green, https://www.sourcegreenpackaging.com/pfas-101-polyfluoroalkyl-forever-chemicals/ (last visited Mar. 17, 2025).

[61] Sisi Xu, et al., *Occurrence and Transport of Novel and Legacy Poly- and Perfluoroalkyl Substances in Coastal Rivers Along the Laizhou Bay, Northern China*, 198 Marine Pollution Bulletin (2024), DOI: 10.1016/j.marpolbul.2023.115909, https://pubmed.ncbi.nlm.nih.gov/38096694/.

[62] Marie-Amélie Pétré, et al., *Per- and Polyfluorolyfluoroalkyl Substance (PFAS) Transport from Groundwater to Streams near a PFAS Manufacturing in North Carolina, USA*, Papers in Natural Resources (2021), https://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=2324&context=natrespapers.

104.     PFBA, meanwhile, "has been found to accumulate in agricultural crops and has been detected in household dust, soils, food products, and surface, ground, and drinking water."[63]

105.     Additionally, the production of PTFE has wreaked environmental havoc because the manufacturing of PTFE requires the use of other PFAS.[64] Some examples of the environmental damage caused by PTFE production include:[65]

- A Teflon™ manufacturer using Gen X as a "surfactant necessary for making PTFE" in a North Carolina plant. The plant "has discharged toxic Gen X into the local river for decades. It has contaminated residents' drinking water."

- The same manufacturer uses PTFE to produce Teflon™ in a West Virginia factory. "The area [around the factory]'s water is now contaminated with Gen X . . .."

- A company that "purchases PTFE mixtures" for its Connecticut plant "is a serial polluter of water."

106.     Consumers, such as Plaintiff Dalewitz, do not expect PFAS in products made by companies which claim to prioritize environmental sustainability.

107.     As explained, *supra* § III, environmental representations are material to consumers.

108.     Concern about PFAS and the environment go hand-in-hand as "[n]early 70% of adults who say they are 'very concerned' about PFAS are also very concerned about climate change."[66]

109.     By advertising that it is a sustainably focused company, P&G misleads consumers into thinking that its Products would not be made with environmentally damaging PFAS.

---

[63]          *Perfluorobutanoic          Acid          (PFBA)*,          EPA, https://cfpub.epa.gov/ncea/iris_drafts/recordisplay.cfm?deid=350051 (last visited Mar. 17, 2025).

[64]     *Supply chains of nonstick PTFE pan coatings: Case studies*, Ecology Center, https://www.ecocenter.org/our-work/healthy-stuff-lab/reports/whats-cooking/supply-chains-nonstick-ptfe-pan-coatings-case-studies (last visited Mar. 17, 2025).

[65] *Id.*

[66] Danielle Commisso, *Consumer Concern Over PFAS 'Forever Chemicals' Continues to Grow*, Civic Science (Aug. 1, 2023), https://civicscience.com/consumer-concern-over-pfas-forever-chemicals-continues-to-grow/.

## VI.    Consumers Are Harmed by P&G's Misrepresentations Regarding the "Pro-Health" and Environmental Qualities of The Products.

110.    Reasonable consumers encountering the Products would not expect the presence of PFAS, which are known to be persistent in the environment and linked with health issues, such as high cholesterol, thyroid disease, pregnancy-induced hypertension, and kidney and testicular cancer.[67]

111.    P&G does not disclose on the Products' packaging that it contains PFAS chemicals.[68]

112.    Rather, consumers would need to do extensive research on the manufacturing history of Oral-B Glide, which is an unreasonable burden to place on consumers.

113.    Dental floss is known for being an "effective way" to "deliver" substances into the mouths of users.[69]

114.    Also, dental floss "is prone to shredding. When dental floss shreds, it leaves particles or pieces behind…."[70]

115.    Additionally, PFAS are known to be one of the most mobile classes of chemicals.[71]

116.    Moreover, PFAS "studies have shown that ingestion is the primary route of exposure."[72]

---

[67] *See Our Current Understanding of the Human Health and Environmental Risks of PFAS, supra* note 42.

[68] *See supra* ¶ 55.

[69] Nataliya Babayevska, et al., *Novel nanosystems to enhance biological activity of hydroxyapatite against dental caries*, 124 Materials Science and Engineering: C 112062 (2021), https://doi.org/10.1016/j.msec.2021.112062. (Study used Oral-B floss products, including those made with PTFE).

[70] Adrian K. Stavrakis, et al., *Performance Evaluation of Dental Flosses Pre- and Post-Utilization*, 15(4) Materials (Basel, Switzerland) 1522 (2022), doi: 10.3390/ma15041522. (Finding that while Oral-B branded dental floss may be stronger than other flosses, it is still prone to breakage).

[71] Heidelore Fiedler, et al., *A Critical Review of a Recommended Analytical and Classification Approach for Organic Fluorinated Compounds with an Emphasis on Per- and Polyfluoroalkyl Substances*, 17 Integrated Envtl. Assessment & Mgmt. 331 (2020), https://doi.org/10.1002/ieam.4352.

[72] Andrew D. Monnot, et al., *Can oral toxicity data for PFAS inform on toxicity via inhalation?*, 43(8) Risk Analysis 1533-1538 (2022), https://doi.org/10.1111/risa.14039.

117.    Furthermore, 3M, a major PFAS manufacturer, has known that PFAS can cause "acute oral toxicity" since 1966.[73]

118.    Also, some of the specific PFAS found in the Product are linked to negative health impacts. *See supra* § IV.

119.    Upon information and belief, the PFAS within the Products migrate from the Product into the user's body via oral absorption/ingestion and contribute to the user's overall body burden of PFAS.

120.    PFAS are also known to bioaccumulate.[74]

121.    No reasonable consumer would expect that a Product marketed for one's health would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans. Reasonable consumers would also not expect a company touting its commitment to product safety to use objectively unsafe chemicals as product ingredients. Accordingly, Plaintiff Dalewitz and Class Members suffered economic injuries as a result of purchasing the Product.

122.    Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is, without curing the deceptive representations and omissions.

123.    P&G has failed to provide adequate relief to purchasers as of the filing of this Complaint.

124.    P&G's "Pro-Health" representation and environmental promises has conveyed a series of express and implied claims and/or omissions that it knows are material to the reasonable consumer in making purchasing decisions, and that Defendant intended for consumers to rely upon when choosing to purchase the Product.

---

[73] Jared Hayes, *For decades, polluters knew PFAS chemicals were dangerous but hid risks from public*, Envtl. Working Group (Aug. 29, 2019), https://www.ewg.org/research/decades-polluters-knew-pfas-chemicals-were-dangerous-hid-risks-public.

[74] Pérez, *supra* note 13.

125.    Had P&G not made the false, misleading, and deceptive representation, Plaintiff Dalewitz and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or would not have been willing to purchase the Products at all, or to purchase as many of the Products.

126.    Upon information and belief, Defendant P&G has profited enormously from the falsely and deceptively marketed Product.

## JURISDICTION AND VENUE

127.    This Court has personal jurisdiction over the Parties in this case.

128.    Defendant P&G is incorporated in Delaware and headquartered in Ohio.

129.    Defendant regularly conducts and transacts business in New York, purposefully avails itself of the laws of New York, markets the Products to consumers in New York, and sells the Products throughout New York. Plaintiff Dalewitz purchased the Products in New York State.

130.    Plaintiff Dalewitz is a citizen of New York and consents to this Court's jurisdiction.

131.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class comprises at least 100 members, any member of the plaintiff class is a citizen of a state different from any defendant, and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiff Dalewitz alleges that the total claims of individual members of the proposed Class (as defined herein) exceed $5,000,000 in the aggregate, exclusive of interest and costs.

132.    Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of the Products, occurred within this District.

## CLASS ALLEGATIONS

133.    Plaintiff Dalewitz brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other similarly situated individuals (the "Class"), defined as follows:

> All consumers who purchased the Products in New York during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

134.    Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

135.    Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a)  Whether Defendant is responsible for the advertising at issue;

b)  Whether the advertising of the Products was unfair, false, deceptive, fraudulent, and/or unlawful;

c)  Whether Defendant breached a warranty created through the marketing of its Product; and

d)  Whether Defendant's conduct as set forth above injured Plaintiff Dalewitz and Class Members.

136.    Plaintiff Dalewitz's claims are typical of the claims of the Class in that he was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Product, and suffered a loss as a result of those purchases.

137.    The precise number of the Class Members and their identities are unknown to Plaintiff Dalewitz at this time but may be determined through discovery.

138.    Plaintiff Dalewitz is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions involving false advertising, and he intends to prosecute this action vigorously.

139.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the potential for inconsistent or contradictory judgments. The substantive claims of Plaintiff Dalewitz and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

140.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually, and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Dalewitz's and the Class Members' claims together is manageable. Unless the Class is certified, Defendant P&G will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

141.    No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

142.    The prerequisites to maintaining a class action for equitable relief are met. By representing that the Products sold by Defendant are "Pro-Health" and by omitting the significant risk of PFAS exposure, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

143.    The prerequisites to maintaining a class action for equitable relief are also met by Defendant's environmental representations, which fail to disclose the use of unsustainable PFAS in the Products, which Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

144.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class Members are not parties to such actions.

145.    Defendant P&G's conduct is generally applicable to the Class as a whole, and Plaintiff Dalewitz seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

146.    Plaintiff Dalewitz knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

*****

## CAUSES OF ACTION

### COUNT I
### *Violations of the New York General Business Law § 349*
### (On Behalf of Plaintiff Dalewitz and the Class)

147.    Plaintiff Dalewitz realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

148.    The acts of Defendant P&G, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

149.    Defendant markets the Products as conferring health benefits, when testing has shown the presence of PFAS that have a negative impact on human health.

150.    Defendant also makes environmental and product safety claims, which are false due to its use of PFAS to make the Products.

151.    Defendant has violated, and continues to violate, section 349 of the New York General Business Law ("NYGBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of § 349, Plaintiff Dalewitz and other members of the Class have suffered damages in an amount to be determined at trial.

152.    Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff Dalewitz and Class Members to purchase and to pay the requested price for the Products when they otherwise would not have, or would not have purchased as much.

153.    Defendant made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

31

154.    Plaintiff Dalewitz and Class Members have been injured by their purchase of the Product, which was worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

155.    Defendant's advertising induced Plaintiff Dalewitz and Class Members to buy the Product, to buy more of them, and/or to pay the price requested.

156.    As a direct and proximate result of Defendant P&G's violation of section 349, Plaintiff Dalewitz and other members of the Class paid for the falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

157.    By reason of the foregoing, Plaintiff Dalewitz and Class Members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 349(h).

### COUNT II
#### Violations of the New York General Business Law § 350
#### (On Behalf of Plaintiff Dalewitz and the Class)

158.    Plaintiff Dalewitz realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

159.    The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

160.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

161.    NYGBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

162.    Plaintiff Dalewitz and the members of the Class are consumers who purchased Defendant's Products in New York.

163.    As a seller of goods to the consuming public, Defendant P&G is engaged in the conduct of business, trade, or commerce within the intended ambit of section 350.

164.    Defendant's representations (made by statement, word, design, device, sound, or any combination thereof), and also the extent to which Defendant's advertising has failed to reveal material facts with respect to its Product, as described above, have constituted false advertising in violation of § 350.

165.    Defendant's false advertising was knowing and intentional, as the Products' main ingredient is ePTFE, a type of PFAS, and testing revealed additional PFAS chemicals which are not disclosed to consumers: PMPA, NMeFOSE, PFBA, and PFPS.

166.    Defendant's actions led to direct, foreseeable, and proximate injury to Plaintiff Dalewitz and the members of the Class.

167.    As a consequence of Defendant's deceptive marketing scheme, Plaintiff Dalewitz and the other members of the Class suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products and/or would have purchased less of the Products; moreover, as a result of Defendant's conduct, Plaintiff Dalewitz and the other members of the Class received products of less value than what they paid for.

168.    By reason of the foregoing, Plaintiff Dalewitz and Class Members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 350-e (3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dalewitz respectfully requests that the Court enter judgment in his favor and in favor of the Class as follows:

A.    An order certifying the proposed Class; appointing Plaintiff Dalewitz as representative of the Class; and appointing Plaintiff Dalewitz's undersigned counsel as class counsel for the Class;

B.    An order declaring that Defendant is financially responsible for notifying Class Members of the pendency of this suit;

C.    An order declaring that Defendant P&G's conduct violates the statutes referenced herein;

D.    An order awarding monetary damages, including actual damages, statutory damages, and punitive damages, in the maximum amount provided by law under the statutes named herein;

E.    An order awarding compensation for breach of warranty;

F.    An order for prejudgment interest on all amounts awarded;

G.    An order awarding Plaintiff Dalewitz and the other Class Members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.    Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

169.    Plaintiff Dalewitz hereby demands a trial by jury.

DATED: March 19, 2025

**RICHMAN LAW & POLICY**

_____
Kim E. Richman
1 Bridge Street, Suite 83
Irvington, NY 10533
T: (914) 693-2018
krichman@richmanlawpolicy.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Alec M. Leslie
888 7th Avenue
New York, New York 10019
T: (646) 837-7150
jarisohn@bursor.com
aleslie@bursor.com

_Attorneys for Plaintiff_