**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

---

ALAN DALEWITZ,

　　　　　*Plaintiff,*

　　v.

THE PROCTER & GAMBLE COMPANY,

　　　　　*Defendant.*

---

Case No. 7:22-cv-07323

The Honorable Nelson S. Román

---

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................................... 2

LAW AND ARGUMENT ..................................................................................................... 5

   I.     GOVERNING LEGAL STANDARDS......................................................................... 5

   II.    PLAINTIFF LACKS STANDING UNDER ARTICLE III ........................................ 6

        A.     Plaintiff Does Not Plausibly Allege That the Glide He Purchased Contained PFAS and Thus Does Not Plead He Suffered an Economic Injury. ................. 6

        B.     Plaintiff Fails to Allege a Causal Connection Between His Alleged Economic Injury and the Challenged Statement............................................. 10

   III.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT GLIDE CONTAINS HARMFUL PFAS IN AN AMOUNT LINKED TO BODILY HARM.................... 12

   IV.   PLAINTIFF AGAIN FAILS TO PLAUSIBLY ALLEGE THAT GLIDE IS A PFAS EXPOSURE SOURCE THAT COULD CAUSE HARM. .............................. 18

   V.    THE CHALLENGED STATEMENTS AND OMISSIONS CANNOT MISLEAD A REASONABLE CONSUMER. ........................................................................... 20

   VI.   THE SAC PRESENTS NO PLAUSIBLE ALLEGATION THAT P&G'S MANUFACTURING PROCESSES HAVE CAUSED ANY ENVIRONMENTAL HARM................................................................................................................... 23

CONCLUSION................................................................................................................... 25

**Cases**

*Absolute Activist Value Master Fund. Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)............................................................................6

*Akridge v. Whole Foods Mkt. Grp., Inc.*,
    2022 WL 955945 (S.D.N.Y. Mar. 30, 2022) ...........................................8

*Andrews v. The Procter & Gamble Company*,
    2019 WL 6520045 (C.D.Cal. June 3, 2019) ...........................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................6

*Bates v. Abbott Lab'ys*,
    727 F. Supp. 3d 194 (N.D.N.Y. Mar. 29, 2024) ....................................21

*Bautista v. Cytosport, Inc.*,
    223 F. Supp. 3d 182 (S.D.N.Y. Dec. 12, 2016) .......................................6

*In re Beech-Nut Nutrition Co. Baby Food Litig*,
    2025 WL 862382 (N.D.N.Y. Mar. 19, 2025) .........................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................6

*Bodle v. Johnson & Johnson Consumer Inc.*,
    2022 WL 18495043 (N.D. Cal. Feb. 24, 2022) .....................................14

*Braynina v. TJX Cos.*,
    2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016).......................................13

*Brodie v. Green Spot Foods, LLC*,
    503 F. Supp. 3d 1 (S.D.N.Y. Nov. 30, 2020).....................................6, 19

*Brown v. Coty, Inc.*,
    2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023) ...........................21, 22, 23

*Brown v. Kerry Inc.*,
    2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021)........................................21

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
    2021 WL 3727095 (S.D.N.Y. Aug. 23, 2021)..................................22, 23

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020).............................................................20

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).........................................................................5

*Dalewitz v. P&G*,
2023 WL 6215329 (S.D.N.Y. Sept. 22, 2023)............................... *passim*

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
87 F.4th 315 (6th Cir. 2023) ..........................................................5, 25

*Esquibel v. Colgate-Palmolive Co.*,
2023 WL 7412169 (S.D.N.Y. Nov. 9, 2023)....................................7, 8

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ...................................11

*GMO Free v. Cover Girl*,
No. 2021 CA 004786, *slip op.* (D.C. Super. Ct. June 1, 2022)..............21

*GMO Free v. P&G*,
No. 2022 CA 4128B, *slip op.* (D.C. Super. Ct. July 3, 2023)............9, 21, 23

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. Mar. 27, 2014)....................................24

*Hadley v. Chrysler Grp. LLC*,
624 F. App'x 374 (6th Cir. 2015) ....................................................12

*In re Hain Celestial Heavy Metals Baby Food Litig.*,
2024 WL 5239510 (E.D.N.Y. Dec. 27, 2024) ..........................13, 16, 18

*Hernandez v. Wonderful Co. LLC*,
2023 WL 9022844 (S.D.N.Y. Dec. 29, 2023) ...........................7, 8, 9, 10

*Hicks v. L'Oreal U.S.A.*,
2023 WL 6386847 (S.D.N.Y. Sept. 30, 2023)..................................7, 8

*Housey v. P&G*,
2022 WL 17844403 (2d Cir., 2022)........................................4, 6, 10, 13

*Kimca v. Sprout Foods, Inc.*,
2022 WL 1213488 (D.N.J. Apr. 25, 2022) ........................................13

*Lisowski v. Henry Thayer Co., Inc.*,
501 F. Supp. 3d 316 (W.D. Pa. Nov. 17, 2020)...................................21

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................10, 11, 12

*Lurenz v. Coca-Cola Co.*,
  2024 WL 2943834 (S.D.N.Y. June 10, 2024) ...........................7, 8, 9, 10

*Maddox v. Bank of N.Y. Mellon Tr. Co.*,
  19 F.4th 58 (2d Cir. 2021) ...................................................................5

*Nguyen v. Medora Holdings, LLC*,
  2015 WL 4932836 (N.D. Cal. Aug. 18, 2015) ....................................12

*Parks v. Ainsworth Pet Nutr., LLC.*,
  377 F. Supp. 3d 241  (S.D.N.Y. April 18, 2019) ..........................13, 23

*Prohias v. Pfizer, Inc.*,
  485 F. Supp. 2d 1329 (S.D. Fla. April 24, 2007)................................11

*Ramirez v. Kraft Heinz Foods Co.*,
  2023 WL 4788012 (S.D. Fla. July 27, 2023) ......................................12

*Robie v. Trader Joe's Company*,
  2021 WL 2548960 (N.D.Cal. June 14, 2021) ................................17, 18

*In re Sling Media Slingbox Advert. Litig.*,
  202 F. Supp. 3d 352 (S.D.N.Y. Aug. 12, 2016).................................12

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..............................................................................5

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007)...............................................................21

*Turk v. Rubbermaid Inc.*,
  2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) .....................................24

*Turnipseed v. Simply Orange Juice Co.*,
  2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) .......................................20

*Van Orden v. Hikari Sales U.S.A., Inc.*,
  2023 WL 5336813 (N.D.N.Y. Aug. 18, 2023) ...................................22

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
  403 F. Supp. 3d 361 (S.D.N.Y. 2019)................................................21

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  (S.D.N.Y. Aug. 31, 2015) ..................................................................22

*Wright v. Publishers Clearing House, Inc.*,
     372 F. Supp. 3d 61 (E.D.N.Y. Mar. 12, 2019) ........................................................ 23

**Statutes**

New York's General Business Law section 349 .................................................. 2, 21

New York's General Business Law section 350 .................................................. 2, 21

**Other Authorities**

89 Fed. Reg. 8,615, *available at* https://www.govinfo.gov/content/pkg/FR-2024-
     02-08/pdf/2024-02324.pdf ...................................................................................... 16

CDC Oral Health, "About Periodontal (Gum) Disease,"
     https://www.cdc.gov/oral-health/about/gum-periodontal-
     disease.html#:~:text=Brush%20twice%20daily%20and%20floss,by%20your
     %20health%20care%20provider .............................................................................. 22

Elicia Mayuri Cousins, *et al.*, *Risky Business? Manufacturer and Retailer Action
     to Remove Per- and Polyfluorinated Chemicals From Consumer Products*,
     NEW SOLUTIONS, A Journal of Environmental and Occupational Health
     Policy, *available at* https://doi.org/10.1177/1048291119852674 ............................ 4

*EPA issues PFAS test order as part of National Testing Strategy,* EPA (Mar. 25,
     2024), *available at* https://www.epa.gov/newsreleases/epa-issues-pfas-test-
     order-part-national-testing-strategy-0 ..................................................................... 15

Heidelore Fiedler, *et al.*, *A Critical Review of a Recommended Analytical and
     Classification Approach for Organic Fluorinated Compounds with an
     Emphasis on Per- and Polyfluoroalkyl Substances*, 17 Integrated Envtl.
     Assessment & Mgmt. 331 (2020), *available at*
     https://doi.org/10.1002/ieam.4352 ............................................................................ 5

Nataliya Babayevska, *et al.*, *Novel nanosystems to enhance biological activity of
     hydroxyapatite against dental caries*, 124 Materials Science and Engineering:
     C 112062 (2021), *available at* https://doi.org/10.1016/j.msec.2021.112062 ......... 19

*Proposal to List Nine Per- and Polyfluoroalkyl Compounds as Resource
     Conservation and Recovery Act Hazardous Constituents*,
     EPA, https://www.epa.gov/hw/proposal-list-nine-and-polyfluoroalkyl-
     compounds-resource-conservation-and-recovery-act ............................................... 16

# INTRODUCTION

On August 26, 2022, Plaintiff commenced this suit against The Procter & Gamble Company ("P&G"), alleging that P&G's Oral B Glide Pro Health dental floss ("Glide") contains per- and polyfluoroalkyl substances ("PFAS") that render its "Pro-Health" label misleading. *See* ECF No. 1. The Court dismissed Plaintiff's original complaint, finding that Plaintiff "fail[ed] to plausibly allege [] Glide in fact contains PFAS or causes harm to consumers." *See Dalewitz v. P&G*, 2023 WL 6215329, at *3 (S.D.N.Y. Sept. 22, 2023). After multiple opportunities to amend, Plaintiff's second amended complaint, ECF No. 29 (the "SAC"), is still defective. Plaintiff fails to plausibly allege that the specific Glide he purchased contained any PFAS.

Plaintiff does not claim that the alleged presence of PFAS in Glide caused him any bodily harm. Instead, he alleges that if he had known that Glide contained PFAS he would not have purchased it or would have paid significantly less. Contradicting this allegation, however, Plaintiff specifically alleges that he ***continued to purchase Glide years after learning it allegedly contained PFAS***—rendering implausible his conclusory assertion that Glide's "Pro Health" label caused any economic injury. This contradiction prevents Plaintiff from plausibly alleging an Article III injury-in-fact and he lacks standing. What is more, Plaintiff lacks standing for a separate, independent reason: he fails to plausibly allege that the Glide ***he actually purchased*** contained PFAS. This proffered inference is entirely speculative because the SAC cites sources suggesting that Plaintiff's test results yielded nothing more than an isolated example of PFAS—*i.e.*, results that cannot be extrapolated to the entire product line, let alone any product he purchased. Indeed, the SAC lacks key details about Plaintiff's testing, including how many samples he tested, when the tested sample(s) were purchased, and whether he tested Glide that he actually purchased.

Plaintiff's new allegations in the SAC cannot save his implausible claims. Plaintiff now purports to have tested a Glide sample for *actual* PFAS, as opposed to merely organic fluorine. But while his testing allegedly detected trace amounts of four specific PFAS (SAC ¶ 78), the results do not support claims for violations of sections 349 and 350 of New York's General Business Law ("GBL"). The Court already found that the prior complaint rested on a series of "attenuated inferences," including the speculative claim that Glide contained PFAS that "*likely* cause adverse health outcomes." *See Dalewitz*, 2023 WL 6215329, at *3–4. The SAC still suffers from this fundamental defect. Nothing in the SAC or the sources it cites supports any plausible inference that the allegedly detected PFAS cause any bodily harm. In fact, Plaintiff relies on sources that ***contradict*** this premise, rendering it wholly implausible. Because Plaintiff has once again failed to plausibly allege any PFAS in Glide "*likely* cause adverse health outcomes," he cannot support his tenuous claim that the challenged "Pro-Health" label is misleading. *See id* at 3.

Several additional, independent grounds also support dismissal yet again. Most glaringly, Plaintiff attempts to challenge marketing statements that are either literally true or classic puffery. Plaintiff likewise fails to make any well-pleaded allegations that Glide constitutes an actual PFAS exposure source, let alone one that could pose any health risk to a human user. For these and other reasons discussed below, the Court should dismiss the SAC, this time with prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The original complaint alleged that P&G's "Pro-Health" marketing of Glide is "false and deceptive" because the product *might* contain PFAS. *See* ECF No. 1 at 1. On September 22, 2023, the Court granted P&G's motion to dismiss because the complaint "layer[ed] inference upon inference" by relying upon tests that "screened" Glide for fluorine and organic fluorine ("TOF"), which serve only "as a *proxy* for the presence of PFAS." *See Dalewitz*, 2023 WL 6215329, at *3. Plaintiff thus failed to plausibly allege Glide contained any actual PFAS, let alone those "*likely*

[to] cause adverse health outcomes." *Id.* The Court separately held that Plaintiff "altogether neglect[ed]" to plead that Glide was a PFAS exposure source, *i.e.*, that any "PFAS would 'migrate' from [Glide] into a consumer's saliva or onto their hands," contribute "to the consumer's body burden of PFAS," and thus expose Glide users to any possible "harm." *Id.*

Perhaps recognizing that his amended complaint, ECF No. 17, did not correct these fundamental deficiencies, Plaintiff sought (and obtained) further leave to bring the SAC, which became the operative complaint on March 19, 2025—over two and a half years after Plaintiff commenced this action. Plaintiff alleges that he continued to buy Glide in the interim, *i.e.*, since 2022—the year he first allegedly believed that the product contained PFAS. *Compare* ECF No. 1 ¶ 63, *with* SAC ¶ 17. The SAC continues to allege that all PFAS are harmful to human health, as if to suggest that the Court's prior determinations to the contrary — based on the substance of sources Plaintiff elected to cite in the original complaint — could be ignored. *See* SAC ¶¶ 32, 59.

The SAC does ***attempt*** (but fails) to correct one deficiency identified by the Court. Over a year after his initial purchase in 2022, Plaintiff alleges he "commissioned direct PFAS testing" of one type of Glide in November through December 2023. *See id.* ¶ 77. In other words, rather than continuing to rely exclusively on TOF screening that did not identify any actual PFAS (a methodology repeated rejected as a means to measure PFAS by multiple courts), Plaintiff now alleges his "direct" testing detected miniscule amounts of four specific PFAS in a tested sample: (1) PMPA – 51.7 parts per billion ("ppb"); (2) NMeFOSE – 0.948 ppb; (3) PFBA – 6.86 ppb; and (4) PFPS – 2.8 ppb. *Id.* ¶ 78. The SAC alleges that these specific PFAS are "hazardous constituents" that are "linked" to "health issues" or a "risk of injury to health." *Id.* ¶¶ 88–93. But Plaintiff relies on studies that question those speculative conclusions, including by unreliably extrapolating findings from the limited PFAS shown to cause health problems (*i.e.*, PFOA and

PFOS) to the compounds allegedly detected, and, in some cases, misrepresenting the authors'
findings and ignoring caveats about the reliability of their results. *See infra* Section III.

Nor does Plaintiff provide sufficient details concerning his alleged "direct" PFAS testing
to plausibly allege Plaintiff purchased Glide "contaminate[d]" with PFAS, despite the
requirements of the Court's prior order.[1] *See* SAC ¶ 5. For instance, Plaintiff does not state
whether he tested the actual Glide he purchased, a sample purchased, how many times he
conducted the test, or why the results indicate that all Glide contain PFAS, as opposed to merely
a single tested sample. What is more, Plaintiff does not identify how many samples he tested and
he alleges to have tested only one iteration of Glide—the "Pro-Health Multi Protection Dental
Floss" in the Clean Mint flavor. *Id*. ¶ 77. Given the dearth of alleged facts about Plaintiff's testing
and methodology, Plaintiff's test results could simply reflect an accidentally compromised
sample—a possibility suggested by the very sources Plaintiff cites in the Complaint.[2] *See* SAC ¶
36 n.16 (citing Cousins Study) ("acknowledg[ing] the ***possibility*** of accidental [PFAS]
contamination as almost inevitable" in the manufacturing of consumer goods) (emphasis added).

On the basis of the foregoing conclusions, Plaintiff asserts a price premium economic
injury theory. *Id*. ¶¶ 20–22. In his March 2025 SAC, Plaintiff alleges that he has continued to
purchase Glide at Costco every six months during the putative "Class Period" (defined as the
applicable statute of limitations period through the date any class is certified)—the same allegation
he made when commencing suit in 2022. *Id*. ¶¶ 17, 133; ECF No. 1 ¶ 63. He alleges he overpaid

---

[1] *See Dalewitz*, 2023 WL 6215329, at *4 ("In any amended pleadings, Plaintiff must include further information
regarding [his] test, including the testing methodology, the date, time, or place of the testing, and who conducted the
testing") (cleaned up).
[2] *See* SAC ¶ 36 n.16 (citing Elicia Mayuri Cousins, *et al*., *Risky Business? Manufacturer and Retailer Action to Remove
Per- and Polyfluorinated Chemicals From Consumer Products*, NEW SOLUTIONS, A Journal of Environmental and
Occupational Health Policy, *available at* https://doi.org/10.1177/1048291119852674 (last visited Apr. 24, 2025) (the
"Cousins Study")). The Court may consider this and other "documents incorporated into the complaint by reference"
in assessing P&G's motion to dismiss. *See Housey v. P&G*, 2022 WL 17844403, at *2 (2d Cir., Dec. 22, 2022).

4

for Glide because its "Pro-Health" label caused him to purchase a product he claims contains "dangerous" PFAS, which are "not 'Pro-Health.'" *See id*. ¶¶ 22, 79. Plaintiff makes this claim despite citing a source in the SAC recognizing that PFAS are found in untold substances, including natural sources such as marine aerosols and volcanic gases, as well as common and beneficial pharmaceuticals such as Lipitor, Prozac, and Celebrex.[3] He further alleges that Glide's label (and generic P&G statements about sustainability) are misleading—and caused him injury—because the presence of PFAS in Glide resulted in environmental harm. *See id*. ¶¶ 66–73; 98–109. The SAC attempts to support this allegation with generic allegations about *different*, non-party PFAS manufacturers, which may have used PFAS to make products *other* than Glide. *See, e.g.*, *id*. ¶ 103 & n.62.

## LAW AND ARGUMENT

### I.     GOVERNING LEGAL STANDARDS

Article III of the Constitution requires a plaintiff to show "an 'injury in fact'" before he can invoke the Court's subject matter jurisdiction. *See Maddox v. Bank of N.Y. Mellon Tr. Co.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). No standing exists if a theory of injury rests on an "attenuated chain of inferences necessary to find harm," or a "subjective" or "speculative fear." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 n.5 & 418 (2013) (cleaned up). Further, an alleged injury must be traceable to the named defendant. *E.g.*, *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 320 (6th Cir. 2023).

---

[3] *See* SAC ¶ 115 n.71 (citing Heidelore Fiedler, *et al*., *A Critical Review of a Recommended Analytical and Classification Approach for Organic Fluorinated Compounds with an Emphasis on Per- and Polyfluoroalkyl Substances*, 17 Integrated Envtl. Assessment & Mgmt. 331 (2020), *available at* https://doi.org/10.1002/ieam.4352 (last visited May 15, 2024) ("Fiedler")).

Additionally, a plaintiff's "'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Absolute Activist Value Master Fund. Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the doors of discovery" stay locked "for a plaintiff armed with nothing more than conclusions," which "are not entitled to the assumption of truth." *Bautista v. Cytosport, Inc.*, 223 F. Supp. 3d 182, 187 (S.D.N.Y. 2016) (cleaned up). Even if a legal theory appears cognizable and the factual allegations are detailed, if such "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then they still fail to state a claim. *Iqbal*, 556 U.S. at 679. "Further, '[w]here a document is referenced in a complaint, the documents control' and the Court 'need not accept as true the allegations' in the complaint that are inconsistent with these documents." *Housey*, 2022 WL 17844403, at *2 (citation omitted).

A plaintiff cannot avoid or evade these pleading standards simply by invoking the mantra "information and belief," especially when offering nothing but rank speculation. *See, e.g.*, *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) ("Courts in this Circuit look unfavorably upon conclusory pleadings made on information and belief . . . especially with regard to consumer fraud claims such as those under GBL § 349" (citations omitted)).

## II.     PLAINTIFF LACKS STANDING UNDER ARTICLE III

### A.     Plaintiff Does Not Plausibly Allege That the Glide He Purchased Contained PFAS and Thus Does Not Plead He Suffered an Economic Injury.

Plaintiff again fails to plausibly allege an injury in fact—the paradigmatic requirement for Article III standing. His vague testing allegations yielded only a miniscule amount of PFAS in an

unspecified number of sample(s) he tested (*see infra*) and Plaintiff has failed to plead facts demonstrating that the Glide he in fact purchased contained any PFAS. Nothing connects these sparse allegations to either Plaintiff's original purchase years ago that is the basis for his claims or to his continuing purchases every six months that Plaintiff alleges in the SAC. *See* SAC ¶ 17.

To plead an injury-in-fact in the context of false advertising claims, a plaintiff must plausibly allege that *he actually* "purchased a misbranded product." *See, e.g.*, *Hernandez v. Wonderful Co. LLC*, 2023 WL 9022844, at *5–6 (S.D.N.Y. Dec. 29, 2023) (internal quotation marks omitted) (quoting *Onaka v. Shiseido Americas Corp.*, 2023 WL 2663877, at *4 (S.D.N.Y. Mar. 28, 2023)); *Lurenz v. Coca-Cola Co.*, 2024 WL 2943834, at *3 (S.D.N.Y. June 10, 2024) (Román, J.). A plaintiff may potentially meet this threshold requirement by performing testing on the specific product that he actually purchased or by testing an identical product, so long as the plaintiff alleges facts that plausibly support a theory that "the defects pervaded an entire line or market of products." *Hernandez*, 2023 WL 9022844, at *5–6 (cleaned up) (dismissing case when a plaintiff failed to present "allegations sufficient to plausibly show that all or substantially all of the Product contains PFAS"); *see also, e.g.*, *Esquibel v. Colgate-Palmolive Co.*, 2023 WL 7412169, at *2–3 (S.D.N.Y. Nov. 9, 2023) (same); *Lurenz*, 2024 WL 2943834, at *4 (dismissing complaint for lack of injury because plaintiff merely "describ[es] general and unspecific results of testing"). Put differently, a plaintiff must "meaningfully link[] [test] results to Plaintiffs' actual [p]urchased [p]roducts beyond Plaintiffs' 'information and belief.'" *See Hicks v. L'Oreal U.S.A.*, 2023 WL 6386847, *9 (S.D.N.Y. Sept. 30, 2023) (dismissing SAC for lack of injury based on "general and unspecific results of testing" that fail to "plausibly plead[] that PFAS was present in the [p]urchased [p]roducts in a 'systematic and routine' way") (quoting *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017)); *Lurenz*, 2024 WL 2943834, at *4.

The conclusory allegations in the SAC are markedly similar to (and should be dismissed on the same grounds) as those in *Lurenz*, *Hernandez*, *Esquibel*, and *Hicks*, all of which address consumer products that allegedly contain PFAS. As those cases demonstrate, in order to pursue a price premium theory of injury, Plaintiff must plead "sufficient facts to allow the inference that the [product] [he] individually purchased in fact" contained PFAS. *See Hicks*, 2023 WL 6386847, at *7. Plaintiff's "direct PFAS testing" allegations—which are confined to two paragraphs of the SAC—fail to do so.

Plaintiff claims he commissioned a test between November and December 2023, but fails to allege whether he tested the Glide that he actually purchased (let alone which of his multiple purchases he tested), or some other "sample." He also fails to allege how many samples he tested, how many tests he performed, whether all tested samples revealed PFAS and, if not, what percentage did—deficiencies that render the SAC implausible. *See Hicks*, 2023 WL 6386847, at *8; *Lurenz*, 2024 WL 2943834, at *3; *Esquibel*, 2023 WL 7412169, at *3 ("[T]he claims are inadequate because Plaintiffs have pled insufficient information about the third-party testing to support their assertion that the products the named Plaintiffs purchased plausibly contained PFAS."); *Akridge v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 955945, at *7 (S.D.N.Y. Mar. 30, 2022) (dismissing a complaint where the plaintiff did "not indicate" the "percentage of the" products that were "mislabeled").

Without these details, nothing in the SAC adequately alleges that the specific PFAS analytes Plaintiff claims to have identified "pervaded [the] entire line" of Glide products.[4] *See*

---

[4] While Plaintiff alleges that P&G deliberately manufactures Glide with PTFE, a type of PFAS (*see* SAC ¶¶ 42, 74; 74 n.40), his alleged "direct PFAS testing" refutes that allegation because it did not detect any PTFE, not even in the miniscule amounts of other PFAS he allegedly found. *See id.* ¶ 77. As such, this allegation does not plausibly suggest that the "presence of PFAS in the [tested Glide sample] is the result of a 'pervasive' or 'systematic' practice," as it must to allege an injury-in-fact. *See Lurenz*, 2024 WL 2943834, at *3. Further, even if Plaintiff had detected PTFE in his test results, courts assessing nearly identical claims concerning Glide have already held that PTFE is not toxic

*Hernandez,* 2023 WL 9022844, at *5; SAC ¶¶ 55, 55 n.29. Further, to the extent Plaintiff is alleging that his **initial** purchase of Glide contained PFAS (*i.e.*, Glide purchased before he allegedly believed that it contains PFAS), Plaintiff alleges no facts plausibly linking test results from November 2023 to a product purchased in August 2022 or earlier (*i.e.*, before commencing this suit). *See Hernandez*, 2023 WL 9022844, at *5 (test results support allegation a product is misbranded only when testing is performed "reasonably near in time" to plaintiff's own purchase). Without these details, as the Court concluded in *Lurenz,* Plaintiff's conclusory allegations "make it equally plausible that" the alleged detection of PFAS in a tested sample was merely "a false positive . . . the result of an isolated incident of contamination." 2024 WL 2943834, at *3; *see also Hernandez*, 2023 WL 9022844, at *6 (dismissing complaint because PFAS test results "made it only 'speculative—rather than plausible—to conclude' that the Product was defective").

Here, the possibility that Plaintiff's alleged testing yielded only an isolated PFAS anomaly is even greater than in the caselaw cited above, all of which held that the plaintiffs lacked standing to sue. Claiming a "consumer advocacy movement" seeks "to eliminate PFAS from . . . dental floss" and other consumer goods (SAC ¶ 36), Plaintiff cites a study noting the "difficulty" that consumer good manufacturers face in avoiding the "unintentional" introduction of "trace amounts" of PFAS, deeming the "**possibility of** accidental contamination as almost inevitable." *See id*. ¶ 36 n.16 (citing Cousins Study) (emphasis added). This study, which Plaintiff elected to cite, undermines any attempted inference that P&G used any dangerous PFAS as part of Glide's "manufacturing process" (SAC ¶ 38), let alone any finding that **all** Glide contains PFAS. *See Hernandez*, 2023 WL 9022844, at *6 (no standing where plaintiff "makes no allegations sufficient

or environmentally unsafe and, thus, cannot support consumer fraud claims. *See* ECF No. 31-2 at 4, 7 (*GMO Free v. P&G*, No. 2022 CA 4128B, *slip op*. at 4, 7 (D.C. Super. Ct. July 3, 2023)).

to plausibly show that all or substantially all of the Product contains PFAS.").  Put differently, far from supporting his speculative claims, this source further demonstrates why the SAC merely alleges that Plaintiff "***might*** have purchased mislabeled products" and, as such, seeks to "impermissibly [] ask the Court to infer an injury for [him]."  *See Lurenz*, 2024 WL 2943834, at *4 (emphasis added).  The Court should reject this unreasonable invitation and Plaintiff's conclusory, implausible allegations that contradict this source.  *See Housey*, 2022 WL 17844403, at *2 (documents cited in a complaint control over contradictory allegations).  Put simply, Plaintiff has failed to plausibly allege that *Plaintiff* purchased Glide with PFAS and suffered an injury in fact—the same defect that sunk his original complaint.  *See Hernandez,* 2023 WL 9022844, at *5–6*; Dalewitz*, 2023 WL 6215329, at *3 (dismissing complaint for Plaintiff's failure to plausibly allege that Glide "*likely* contains PFAS"). He thus lacks an Article III injury-in-fact, and the Court should dismiss the SAC for failure to plausibly allege standing.

> **B.** **Plaintiff Fails to Allege a Causal Connection Between His Alleged Economic Injury and the Challenged Statement.**

Even if the SAC plausibly alleged that ***Plaintiff himself*** purchased misbranded Glide (it does not), the SAC still fails for lack of standing.  Plaintiff's tacit admission that he continued to purchase Glide for ***years*** after knowing it allegedly contained PFAS precludes his assertion of any injury traceable to P&G's allegedly misleading labeling.  *See Lujan*, 504 U.S. at 560–61 (holding that standing requires a "causal connection between the injury and the conduct complained of" that is "fairly . . . trace[able] to the challenged action").  He thus lacks standing for this independent reason.

Plaintiff's claims are predicated on an alleged price premium injury that is entirely implausible and contradicted by his repeated purchases of Glide.  He contends that (i) "he would not have purchased the Product[]" had he known it allegedly contained PFAS; (ii) "would not have

paid the requested price for [it][;] and/or" (iii) would have purchased less of the Product, "had the truth been known." *See* SAC ¶ 167. Plaintiff alleged an identical economic injury when he commenced this action on August 26, 2022. *Compare id.*, *with* ECF No. 1 ¶ 102. Put differently, the crux of Plaintiff's alleged injury in both the initial complaint and the SAC is that Glide's "Pro-Health" label induced him to purchase a product he allegedly believed to be free from PFAS, leaving him with less than he bargained for. *See* ECF No. 1 ¶¶ 89, 102; SAC ¶¶ 154, 167.

But this alleged deprivation is contradicted by Plaintiff's purchasing history. Just as in the initial complaint, the SAC alleges that "Plaintiff [] purchased [Glide] approximately every six months in multi-pack quantities at Costco." ECF No. 1 ¶ 63; SAC ¶ 17. That means that Plaintiff has purchased bulk amounts of Glide four or five times since 2022, when he first alleged that Glide contained PFAS. His own allegations make it implausible that Glide was "worth less than what [Plaintiff] bargained for," that he would not have purchased it had he believed it contained PFAS, or that he did not receive the benefit of his bargain. *See* SAC ¶¶ 154, 167. Plaintiff continued making the same purchases, demonstrating that even if *someone* suffered an injury from relying on Glide's "Pro-Health" labeling in the way Plaintiff alleged, he did not.

Courts regularly dismiss consumer fraud claims for lack of standing when, like here, a plaintiff continues to purchase a product after discovering the alleged deception. *See, e.g.*, *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (holding that plaintiffs "who continue to pay for [a drug product] with knowledge as to its alleged limitations" cannot allege "any theory upon which they are actually injured or aggrieved by the allegedly misleading advertisement" and "cannot claim to have suffered any damage from the allegedly misleading statements"); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 WL 10197651, at *8 (E.D. Va. Oct. 17, 2022) (dismissing GBL 349 and 350 claims; "the [c]ourt can infer the Baby Food Products

11

performed as intended based on Plaintiffs' acknowledgment that they purchased said Products repeatedly and 'frequently'"); *Ramirez v. Kraft Heinz Foods Co.*, 2023 WL 4788012, at \*4 (S.D. Fla. July 27, 2023) (finding it implausible that plaintiff did not receive the benefit of her bargain when she continued to buy a food product despite knowing it took longer than advertised to prepare); *Nguyen v. Medora Holdings, LLC*, 2015 WL 4932836, at \*6 (N.D. Cal. Aug. 18, 2015) (plaintiff lacked standing to purse GBL 349 and 350 claims because she continued to consume foods containing GMOs after becoming aware that  snack food labeled "all natural" contained GMOs); *see also In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360-61 (S.D.N.Y. 2016) (no injury where plaintiffs did not "allege that they can no longer use [the product]"); *Hadley v. Chrysler Grp. LLC*, 624 F. App'x 374, 377 (6th Cir. 2015) (alleged "diminished value" and "loss of enjoyment" where plaintiffs did not stop using the product found insufficient to allege injury).

The same result should follow here.  Plaintiff's continued purchases of Glide means that P&G's "Pro-Health" label did not cause any economic injury, and Plaintiff lacks standing to sue. *See Lujan*, 504 U.S. at 560-1.  Plaintiff's contradictory allegations demonstrate he received exactly what he bargained for: floss that performed as expected—even well enough that he continued to purchase it long after he first alleged it contained PFAS.

### III.    PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT GLIDE CONTAINS HARMFUL PFAS IN AN AMOUNT LINKED TO BODILY HARM.

Even assuming Plaintiff plausibly alleged that all Glide contains PFAS or that he did not receive the benefit of the bargain (he does neither), his claims still fail for the independent reason that the SAC does not correct a core deficiency from his dismissed complaint: his failure to allege that "the[] specific PFAS" allegedly detected "*likely* cause adverse health outcomes."  *See Dalewitz*, 2023 WL 6215329, at \*3.  Nor could he, given that the SAC recognizes that PFAS are

present in decidedly "*pro-health*" substances, including beneficial pharmaceuticals. *See* SAC ¶ 115 n.71 (citing Fiedler); *Housey*, 2022 WL 17844403, at *2 (documents cited in a complaint "control" over contradictory allegations). Indeed, sources cited in the SAC merely allege the ***potential*** for harm caused by ***certain*** PFAS (chiefly those Plaintiff's test failed to detect)—and at levels well above the trace amounts he alleged detected. Without alleging why and what levels of the detected PFAS are actually unsafe, Plaintiff has failed to plausibly allege that his test results would be material to a reasonable consumer. For this independent reason, the Court should dismiss the SAC with prejudice.

Under the GBL, an alleged deception is material if it "involv[es] information that is important to consumers and likely to affect their choice of product." *Braynina v. TJX Cos*., 2016 WL 5374134 at *5 (S.D.N.Y. Sept. 26, 2016). Indeed, courts regularly dismiss similar economic injury claims when a plaintiff fails to plausibly allege the presence of a contaminant poses a substantial and credible risk of physical harm. *See, e.g*., In re Hain Celestial Heavy Metals Baby Food Litig., 2024 WL 5239510, at *12 (E.D.N.Y. Dec. 27, 2024) (alleged presence of heavy metals in baby food found not material "without plausibly alleging what concentration of various heavy metals in baby food products would actually be unsafe for babies and toddlers to consume," especially given the that "Plaintiffs' own cited sources recognize that it is not realistic for baby food to not have *any* heavy metals"); *Parks v. Ainsworth Pet Nutr*., LLC., 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (trace level of widely-used herbicide in dogfood found unlikely to affect a reasonable consumer's purchasing decision); *see also In re Beech-Nut Nutrition Co. Baby Food Litig*, 2025 WL 862382, at *6 (N.D.N.Y. Mar. 19, 2025) ("plaintiffs have failed to plausibly allege any increased risk of harm or injury associated with the levels of heavy metals in the goods they purchased"); *Kimca v. Sprout Foods, Inc*., 2022 WL 1213488 (D.N.J. Apr. 25, 2022) (plaintiffs

"do not otherwise allege that the Baby Food Products did not perform their intended purpose," so "without any plausible allegations of future risk, the allegation that the Baby Food Products were worthless also falls apart"); *Bodle v. Johnson & Johnson Consumer Inc*., 2022 WL 18495043, at *2 (N.D. Cal. Feb. 24, 2022) (dismissing consumer fraud claims as implausible because allegations that Plaintiff used sunscreen containing 0.13 ppm of benzene, allegedly a carcinogen, fell below the level that materials cited in complaint linked to health problems).

The same result should follow here. The SAC does not plausibly allege that PMPA, NMeFOSE, PFBA, and PFPS "*likely* cause adverse health outcomes," especially at the trace amounts Plaintiff allegedly detected. *See Dalewitz*, 2023 WL 6215329, at *3. Plaintiff attempts to claim that "all" PFAS are "known to be damaging to human health" (SAC ¶ 33), but this conclusory assertion is implausible given the sources he elected to cite in the SAC. For example, Plaintiff cites a webpage from the U.S. Environment Protection Agency ("EPA") that recognizes there are "thousands of PFAS with potentially *varying effects and toxicity levels*, yet most studies focus on a limited number of better known PFAS compounds," such as PFOA and PFOS, not PMPA, NMeFOSE, PFBA, or PFPS. *See* SAC ¶ 82 n.42 (citing https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas) (emphasis added)); *see also id*. (noting that "exposure to *certain* PFAS *may lead* to adverse health outcomes") (emphasis added).

Specifically, for PFPS and NMeFOSE, Plaintiff makes no allegation of any causal relationship to harm. Plaintiff instead avers only that PFPS and NMeFOSE "have been used in Aqueous Film Forming Foam," ("AFF") and that this foam (rather than any of its specific components) has been "linked" to certain unspecified "health issues." SAC ¶ 91. Plaintiff's sole cited source for this proposition is an online article in *The Guardian*. *Id*. ¶ 91 n.56 (citing David

Bond, *The US Military Is Poisoning Communities Across the US with Toxic Chemicals*, THE GUARDIAN (Mar. 25, 2021), https://www.theguardian.com/commentisfree/2021/mar/25/us-military-toxic-chemicals-us-states (last visited May 15, 2025)).  And yet the article mentions neither PFPS nor NMeFOSE, instead specifically discussing a different PFAS (named PFOS) ***not*** alleged to have been detected in Plaintiff's test, which the article describes as "***the*** major PFAS ingredient in AFF."  *Id.* (emphasis added).  A second source in the SAC discussing NMeFOSE states that it is within a "categor[y]" of PFAS that "lack toxicity data,"[5] further questioning a plausible link to bodily harm.

Plaintiff likewise avers that PMPA is at most "***linked***" to certain "health effects."  *See* SAC ¶ 93 (emphasis added).  Plaintiff's single cited source, however, is a webpage run by an environmental activist group that discusses potential health impacts from "exposure to PFOA and PFOS," not PMPA.  *Id.* ¶ 93 n.58 (citing *Perfluoro-2-Methoxypropanoic Acid (PMPA)*, ENV'T WORKING GRP., available at https://www.ewg.org/tapwater/contaminant.php?contamcode=E348 (last visited May 15, 2025)). Plaintiff likewise cites various sources speculating about the supposedly "potential" and "likely" hazards of PFBA. *See, e.g*., SAC ¶ 88 n.50 (citing J. Allen Davis, IRIS Toxicological Review of Perfluorobutanoic Acid (PFBA, CASRN 375-22-4) & Related Salts, EPA, at 4-1 (Dec. 2022), available at https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/0701tr.pdf (last visited May 15, 2025) (the "IRIS Review")).  But the IRIS Review actually states that human epidemiological studies indicate only "*possible* associations between PFBA exposure and health outcomes," and expressly cautions that

---

[5] SAC ¶ 92 n.57 (citing *EPA issues PFAS test order as part of National Testing Strategy,* EPA (Mar. 25, 2024), *available at* https://www.epa.gov/newsreleases/epa-issues-pfas-test-order-part-national-testing-strategy-0 (last visited May 15, 2025)).

the "ability to draw conclusions regarding" mere "*associations is limited*."[6]  *See* IRIS Review at

xi–xii (emphases added).   And, despite Plaintiff's speculative allegation that PFBA has a

"carcinogenic . . . effect on humans," this source expressly states the EPA "concluded there is

*inadequate information*" for that claim.  *Id.* at xv (emphasis in original).  The IRIS Review even

characterizes the studies on this compound to be "*low* confidence" or "*uninformative*." *Id.* at xi-

xii (emphasis in original). And even these mere potential concerns with PFBA exposure were

based on studies in which rats were given significant amount of PFBA per day, not humans using

dental floss. *See, e.g.*, *id.* at 4-1.

Put simply, conclusions about "possible associations" between the allegedly detected

PFAS and bodily harm from other contexts are insufficient for Plaintiff to state a claim given his

theory of economic harm revolves around an implausible allegation that PMPA, NMeFOSE,

PFBA, and PFPS are harmful in trace amounts in floss.  *See, e.g., In re Hain Celestial*, 2024 WL

5239510, at *11 (dismissing complaint because "Plaintiff[] only reference[d] the general *potential*

for harm that could result from consumption of unsafe levels of each specific heavy metal")

(emphasis in original).   The Court has already held this.  *Dalewitz*, 2023 WL 6215329, at *3

(Plaintiff failed to allege Glide contains PFAS that "*likely* cause adverse health outcomes").

Further, even if the SAC had plausibly alleged these four PFAS cause bodily harm (he has

not), he has failed to plausibly allege he detected them at a harmful level.  The purported test results

---

[6] Plaintiff attempts to bolster his implausible speculations about the harm of PFBA by citing a proposed EPA rule
regarding adding PFBA to a list of "hazardous constituents."  *See* SAC ¶ 89 n.51 (*Proposal to List Nine Per- and
Polyfluoroalkyl Compounds as Resource Conservation and Recovery Act Hazardous Constituents*, EPA,
https://www.epa.gov/hw/proposal-list-nine-and-polyfluoroalkyl-compounds-resource-conservation-and-recovery-act
(last visited May 15, 2025)).  But that proposal expressly notes that the rule is being proposed for comment, in part,
because "several human epidemiological studies" of this PFAS "are *sparse and overall insufficient* on their own to
draw     conclusions     regarding     toxic     effects."     *See*    89    Fed.    Reg.    8,615,    *available    at*
https://www.govinfo.gov/content/pkg/FR-2024-02-08/pdf/2024-02324.pdf  (last visited May 15, 2025) (emphasis
added).

(assuming both that they are representative and do not reflect environmental contamination or a false positive) detected only trace amounts of PFAS. For example, Plaintiff's alleged testing measured 6.86 parts **per billion** of PFBA in Glide. SAC ¶ 78; *Robie v. Trader Joe's Company*, 2021 WL 2548960, at *5 n.1 (N.D.Cal. June 14, 2021) (describing 6.53 ppb of ethyl vanillin to be an "infinitesimal amount"). As a visual, 6.86 ppb is roughly equal to about 6.86 *droplets* of PFBA in 500 barrels of water or, as another example, roughly 6.86 *droplets* in a 10,000 gallon swimming pool. By comparison, the IRIS Review study cited by Plaintiff states only that PFBA *might* cause certain health effects based on studies of rats exposed to significant levels of PFBA per day at amounts thousands of times more than that. *See, e.g.*, SAC ¶ 88 n.50 (IRIS Review) (discussing evidence that "indicates" how PFBA might "likely" cause certain health outcomes, "given relevant circumstances," including "PFBA exposure levels ≥30 mg/kg-day."). Regardless, Plaintiff does not plausibly allege that the trace amount of PFBA allegedly detected in an isolated Glide sample could be released while flossing or that it could expose a person to any amount of the compound in normal use of the product and lead to the possible effects observed in lab rats force fed thousands of times more PFBA per day. *See id.* The same is true for the trace amounts of other PFAS mentioned in the SAC, including NMeFOSE (0.948 ppb), PFPS (2.8 ppb), and PMPA (51.7 ppb). *Id.* ¶ 78.

Further, Plaintiff cites other sources that undermine his theory that these levels are harmful. For example, the SAC cites a California regulation that applies to a 100 **parts per million** ("ppm") measurement of organic fluorine. *See* SAC ¶ 83 n.43 (citing Cal. Health & Safety Code Div. 104, Pt. 3, Ch. 15, Art. 1, § 109000). Plaintiff specifically alleges that this 100 ppm threshold for fluorine "is widely accepted as being indicative of intentional use of PFAS." *Id.* ¶ 76. Although Plaintiff's purported test results come nowhere close to this figure, he asserts the conclusion that

the test results reflect something other than the trace presence of ubiquitous compounds—ones which could have been unintentionally introduced in Plaintiff's tested sample. *See* SAC ¶ 36 n.16 (noting the "possibility of accidental contamination" of PFAS in consumer goods as "almost inevitable"). Plaintiff's own allegations regarding the tested sample of Glide indicate results that are thousands of times lower than the 100 ppm "threshold" that Plaintiff alleges California has chosen to regulate because it "is widely accepted as being indicative of intentional use of PFAS." *Id.* Plaintiff's SAC is again contradicted by the sources he incorporates into it.

Accordingly, these speculative allegations of risk of bodily injury should be rejected for plaintiff's failure to plausibly allege that the PFAS he detected "*likely* cause adverse health outcomes." *See Dalewitz*, 2023 WL 6215329, at *3 (emphasis in original); *In re Hain Celestial*, 2024 WL 5239510, at *12 (dismissing consumer fraud claims based on speculative allegations of physical harm that are inconsistent with documents cited in a complaint). This failure precludes Plaintiff from plausibly alleging a material deception and mandates dismissal of his GBL claims. *See In re Hain Celestial*, 2024 WL 5239510, at *11.

### IV. PLAINTIFF AGAIN FAILS TO PLAUSIBLY ALLEGE THAT GLIDE IS A PFAS EXPOSURE SOURCE THAT COULD CAUSE HARM.

The SAC must also be dismissed for the independent reason that it fails to address the Court's existing ruling that "Plaintiff must plausibly allege that Glide serves as an exposure source for PFAS to migrate' from the Product into a consumer's saliva or onto their hands." *See Dalewitz*, 2023 WL 6215329, at *3. Even assuming Plaintiff plausibly alleged he detected dangerous PFAS in an amount sufficient to cause physical harm (he does not), such harm is still too speculative to support his alleged economic injury absent allegations that provide a "missing key link[]"—*i.e.*, a plausible claim that PFAS "migrate" from the floss to the user's body. *See id.* His failure to do so is fatal and again mandates dismissal.

Plaintiff offers no well-pleaded factual allegations that Glide is a PFAS exposure source—*i.e.*, that using Glide would cause PFAS to "'migrate' from the Product into a consumer's saliva or onto their hands, therein contributing to the consumer's body burden of PFAS and causing harm." *Id.* at *3. The closest Plaintiff comes is conclusory assertions in paragraphs 113 through 119. In brief, he avers that, "upon information and belief," flossing with Glide creates an avenue for "oral absorption/ingestion" of PFAS because the floss "shreds," "leaves particles or pieces behind," and can thereby presumably "'deliver' substances into the mouths of users," such as PFAS. *See* SAC ¶¶ 113–19. But Plaintiff's cited sources actually refute this conclusory theory, rendering it even more implausible. For instance, Plaintiff misrepresents a scholarly article as relevant because it reported that dental floss is "an effective way to deliver" PTFE into users' mouths.[7] But the cited source discusses only the delivery of "*minerals*" to "interproximal surfaces" between teeth and makes no mention of PTFE or any PFAS whatsoever. *See* SAC ¶ 113 n.69 (citing Babayeyska § 1). Moreover, even Plaintiff's misstated conclusions about PTFE are irrelevant because Plaintiff's alleged testing did not detect PTFE. *See* SAC ¶¶ 113 n.69, 78. Indeed, none of Plaintiff's cited sources say anything about flossing leading to PFAS migration or exposure, let alone to a harmful PFAS at a level linked to bodily harm. Nothing in these sources supports Plaintiff's attempted conclusions about PFAS in floss in any way, let alone the types of PFAS he allegedly detected in an isolated test.

Plaintiff is unable to cure the absence of any plausible allegations about Glide being a PFAS exposure source with conclusory "information and belief" assertions that the PFAS in Glide "migrate from the Product into the user's body via oral absorption/ingestion." SAC ¶ 119; *Brodie*,

---

[7] *See* SAC ¶ 113 n.69 (citing Nataliya Babayevska, *et al*., *Novel nanosystems to enhance biological activity of hydroxyapatite against dental caries*, 124 Materials Science and Engineering: C 112062 (2021), *available at* https://doi.org/10.1016/j.msec.2021.112062 (last visited May 15, 2025) ("Babayevska")).

503 F. Supp. 3d at 13 ("Courts in this Circuit look unfavorably upon conclusory pleadings made on information and belief . . . especially with regard to consumer fraud claims such as those under GBL § 349." (citations omitted)).  This unwarranted inference is even more implausible given that courts have already dismissed similar consumer fraud claims concerning Glide for failure to allege the Product "could contribute to an individual's body burden of PFAS[s]," or that "PFASs in floss can migrate into the saliva or onto hands."  *Andrews v. The Procter & Gamble Company*, 2019 WL 6520045, *3 (C.D.C.A, June 3, 2019).  Put simply, Plaintiff's conclusory PFAS "migration" theory cannot be saved by his unexplained "information and belief," especially given what the Court already held.  *See Dalewitz*, 2023 WL 6215329, at *3 (Plaintiff failed to allege "the potential for PFASs in floss to migrate into saliva or onto hands.").

## V.    THE CHALLENGED STATEMENTS AND OMISSIONS CANNOT MISLEAD A REASONABLE CONSUMER.

Even if the Court overlooks these deficiencies, the SAC still fails to state a plausible GBL claim, which requires allegations that the "defendant engaged in deceptive or materially misleading acts or practices."  *Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, at *3 (S.D.N.Y. Mar. 4, 2022) (citation omitted). "Deceptive acts" are those "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Id.* (internal quotation marks and citation omitted).  Here, no reasonable consumer would construe the Plaintiff's challenged statements as conveying any information about the presence (or absence) of PFAS in Glide.

Plaintiff chiefly challenges Glide's "Pro-Health" brand-name. *See* SAC ¶¶ 54–65. He alleges that "[n]o reasonable consumer would expect that a Product marketed for one's health would contain dangerous PFAS." *Id.* ¶ 121. Aside from his failure to allege the presence of dangerous PFAS, *see supra*, the Pro-Health brand name is paradigmatic non-actionable puffery. "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language," and "[s]uch sales talk . . . is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (internal quotation marks and citation omitted); *Brown v. Coty, Inc.*, 2023 WL 2691581, at *4 (S.D.N.Y. Mar. 29, 2023) (dismissing GBL claim based on puffery). It is axiomatic that puffery "cannot support a claim under GBL Sections 349 and 350." *Brown v. Kerry Inc.*, 2021 WL 5446007, at *5 (S.D.N.Y. Nov. 22, 2021) (citing *Duran v. Henkel of America, Inc.*, 450 F. Supp. 3d 337, 346–47 (S.D.N.Y. 2020)).

Courts regularly find that statements touting health benefits "fall comfortably" within the definition of puffery. *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 371 (S.D.N.Y. 2019) ("Statements promoting a 'healthier you' fall comfortably within the category of non-actionable puffery, and do not plausibly support a claim of false advertising."); *see also Bates v. Abbott Lab'ys*, 727 F. Supp. 3d 194, 216 (N.D.N.Y. 2024) (claims based on health benefits "do not represent the sort of measurable product claim that could support a cause of action under the relevant statutes"); *Lisowski v. Henry Thayer Co., Inc.*, 501 F. Supp. 3d 316, 335 (W.D. Pa. 2020) ("the phrase 'natural healing powers' is an expression of an intangible, non-measurable benefit akin to puffery; it is not a description of the ingredients"); ECF No. 31-2 at 8 (*GMO Free*, *slip op.* at 8 (finding the Glide marketing at issue in this case to be puffery); ECF No. 31-3 at 6 (*GMO Free v. Cover Girl*, No. 2021 CA 004786, *slip op.* at 6) (D.C. Super. Ct. June 1, 2022) (finding

"good-for-you makeup and skincare" that prioritizes "the health of our consumers and the planet" to be puffery (internal quotation marks omitted)).

Further, "generic aspirational statements" such as a "relentless focus and commitment to safety" are "quintessential examples of puffery." *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2021 WL 3727095, at *9 (S.D.N.Y. Aug. 23, 2021) (internal quotation marks omitted) (quoting *Ong v. Chipotle Mexican Grill*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. Mar. 22, 2018)); *Brown*, 2023 WL 2691581, at *4 ("[A]spirational company mission statements" are puffery).

Glide's "Pro-Health" brand name and marketing is paradigmatic puffery. It makes no measurable claim regarding Glide, its contents, or its manufacturing. It does not implicitly or explicitly state that Glide is made from any particular materials, or that it is free from any particular substances, such as PFAS. To the extent the "Pro-Health" brand name communicates anything objective to the consumer, it would be merely that flossing supports *dental health*, a true statement.[8] *See Dalewitz*, 2023 WL 6215329, at *3. Courts routinely reject claims predicated on an overly broad application of language that logically applies to one characteristic of the product. *See, e.g.*, *Van Orden v. Hikari Sales U.S.A., Inc.*, 2023 WL 5336813, at *4 (N.D.N.Y. Aug. 18, 2023) ("Courts routinely dismiss GBL claims where, as here, the plaintiff "alleges that a consumer will read a true statement on a package and will then . . . assume things about the products other than what the statement actually says." (quoting *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, *3 (C.D. Cal. Oct. 25, 2012)).

---

[8] *See, e.g.*, CDC Oral Health, "About Periodontal (Gum) Disease," https://www.cdc.gov/oral-health/about/gum-periodontal-disease.html#:~:text=Brush%20twice%20daily%20and%20floss,by%20your%20health%20care%20provider (recommending daily flossing to prevent and manage gum disease). This source is subject to judicial notice. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Courts routinely take judicial notice of such governmental records.").

Likewise, P&G's aspirational corporate goals for "environmental sustainability" are non-specific and cannot support a claim. All of the challenged statements reflect P&G's general aspirations, such as its dedication to a "healthy planet," which constitute classic puffery. *See In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2021 WL 3727095, at *9 ("Generic aspirational statements" are "quintessential examples of puffery." (internal quotation marks and citation omitted)); *Brown*, 2023 WL 2691581, at *4 ("[A]spirational company mission statements" are puffery). Further, no reasonable consumer would consider the environmental messaging as referring to Glide—as opposed to any other P&G product—or the absence of PFAS. ECF No. 31-2, *GMO Free*, *slip op.* at 8 ("[P&G's] philosophy and aspirations cannot plausibly be held to mean that [Glide] contains no PFAS."); *Brown*, 2023 WL 2691581, at *4 (dismissing claims based on puffery that did "not describe any particular product"). Nor would any omission theory be actionable, because courts require an actual threat of harm — not mere conjecture — for an omission to be "material." *Parks*, 377 F. Supp. 3d at 247–48. As described above, Plaintiff has not plausible alleged an actual threat of harm from using Glide, so the Court should dismiss Plaintiff's claims accordingly—whether based on alleged misrepresentations or omissions.

## VI.   THE SAC PRESENTS NO PLAUSIBLE ALLEGATION THAT P&G'S MANUFACTURING PROCESSES HAVE CAUSED ANY ENVIRONMENTAL HARM

Even assuming P&G's general, corporate-wide environmental messaging was an actionable statement (it is not), Plaintiff's environmental claims still fail for two distinct reasons. *First*, Plaintiff fails to plausibly allege causation. To state a Section 349 claim, "each plaintiff must individually plead [each of] the disclosures he or she received were inadequate, misleading, or false,'" and in doing so, must "***identify the specific advertisements seen by each plaintiff***" and provide an explanation as to why those advertisements were false or misleading. *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 66–67 (E.D.N.Y. 2019) (emphasis added).

The SAC does not clear this pleading hurdle. Plaintiff does not allege he saw any specific environmental claims from P&G, let alone before he purchased any Glide. *Turk v. Rubbermaid Inc.*, 2022 WL 836894, at \*8-9 (S.D.N.Y. Mar. 21, 2022) (plaintiffs must allege they "actually saw or were aware of any statement on the [Product] before purchasing [it]"). He attempts to bolster his conclusory allegations by claiming he "was aware of and believed Defendant's environmental promises," SAC ¶ 18, but this generalized allegation is insufficient to plausibly allege GBL's causation requirement because it does not specify the statements at issue. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased.") The SAC vaguely alleges that P&G promoted "environmental sustainability", "climate" and a "healthy planet," but Plaintiff does not specify which statement, if any, are the "environmental promises" he allegedly "was aware of." *See* SAC ¶¶ 10, 67-68. This defect mandates dismissal.

*Second*, Plaintiff cannot state a GBL claim because he alleges no actions that are traceable to P&G. The SAC in no way tethers P&G's actions to Plaintiff's unspecific concerns about PFAS pollution, including in countries as far away as China (SAC ¶ 102). Plaintiff resorts to advancing a wide-ranging array of allegations about *other PFAS manufacturers*, who may use PFAS to make products *other than Glide*, and how these *other companies* engaged in alleged wrongdoing or admit that certain PFAS are hazardous. *See, e.g.*, SAC ¶ 103 (citing PFASs found in groundwater near a PFAS manufacturer in North Carolina). These allegations are plainly insufficient to state a claim *against P&G*. Nor can Plaintiff establish standing by "lumping [entities] all together" because "even a plaintiff who meets the actual-injury requirement . . . does not thereby obtain a license to

sue anyone over anything" related to PFAS. *In re E. I. du Pont de Nemours*, 87 F.4th at 320 (internal quotation marks and citations omitted).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC in its entirety, and with prejudice.

Respectfully submitted,

*s/ Daniel C. Harkins*

Adam R. Fox (5082151)
Daniel C. Harkins
SQUIRE PATTON BOGGS (US) LLP
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
Telephone:   (212) 872-9800
Facsimile:    (212) 872-9815
Email:          adam.fox@squirepb.com
                    daniel.harkins@squirepb.com

*Counsel for The Procter & Gamble Company*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused a copy of the foregoing Memorandum in Support of P&G's

Motion to Dismiss to be served on the parties listed below through electronic mail on the 15th of

May 2025:

Alec M. Leslie
Bursor & Fisher P.A.
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
646-837-7150
Email: aleslie@bursor.com

Joshua D. Arisohn
Arisohn LLC
94 Blakeslee Rd
06759
Litchfield, CT 06759
917-656-0569
Email: josh@arisohnllc.com

Kim Eleazer Richman
Richman Law & Policy
Richman Law & Policy
1 Bridge Street
Suite 83
Irvington, NY 10533
212-687-8291
Email: krichman@richmanlawpolicy.com

*Attorneys for Plaintiff*

<u>*/s/ Daniel C. Harkins*</u>
Daniel C. Harkins

*Counsel for Defendant, The Procter & Gamble Company*
