**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALAN DALEWITZ,<br><br>       *Plaintiff*,<br><br>  v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>       *Defendant*. | Case No. 7:22-cv-07323<br><br>The Honorable Nelson S. Román |

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
<u>THE SECOND AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

LAW AND ARGUMENT ....................................................................................................... 1

    **I.**     PLAINTIFF LACKS STANDING UNDER ARTICLE III. ....................................... 1

        **A.**    Plaintiff's Alleged Continued Purchasing of Glide During the Class Period Strips Him of Article III Standing. .................................................................. 1

        **B.**    Plaintiff Does Not Plausibly Allege That the Glide He Purchased Contained PFAS. ................................................................................................................. 3

    **II.**    PLAINTIFF FAILS TO ALLEGE THAT GLIDE CONTAINS PFAS THAT CARRIES A RISK OF HARM. .................................................................................. 6

    **III.**   PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT GLIDE IS AN EXPOSURE SOURCE. ........................................................................................... 8

    **IV.**   THE CHALLENGED STATEMENT CANNOT MISLEAD A REASONABLE CONSUMER. ............................................................................................................ 9

    **V.**    PLAINTIFF DOES NOT PLEAD PLAUSIBLE CLAIMS BASED ON ENVIRONMENTAL HARM OR STATEMENTS. ..................................................... 10

CONCLUSION ....................................................................................................................... 10

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Bell v. Greenbrier Int'l, Inc.*,
    2024 WL 4893270 (S.D.N.Y. Nov. 26, 2024) ............................................................5

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
    2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ..................................................2, 5, 10

*Dunning v. Supergoop, LLC*,
    2025 WL 34822 (S.D.N.Y. Jan. 6, 2025) ...................................................................3

*Esquibel v. Colgate-Palmolive Co.*,
    2023 WL 7412169 (S.D.N.Y. Nov. 9, 2023) ...............................................................4

*Fischer v. Forrest*,
    286 F. Supp. 3d 590 (S.D.N.Y. 2018) ........................................................................1

*Gabrielli v. Insider, Inc.*,
    2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ...............................................................3

*In re Hain Celestial Heavy Metals Baby Food Litig.*,
    2024 WL 5239510 (E.D.N.Y. Dec. 27, 2024) ............................................................7

*Hernandez v. Wonderful Co. LLC*,
    2023 WL 9022844 (S.D.N.Y. Dec. 29, 2023) (Román, J.) ......................................4, 6

*Hicks v. L'Oréal U.S.A., Inc.*,
    2024 WL 4252498 (S.D.N.Y. Sept. 19, 2024) ............................................................5

*Levy v. Hu Prods. LLC*,
    2024 WL 897495 (S.D.N.Y. Mar. 1, 2024) ................................................................5

*Lurenz v. Coca-Cola Co.*,
    2024 WL 2943834 (S.D.N.Y. June 10, 2024) ............................................................4

*Myers v. Wakefern Food Corp.*,
    2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ................................................................4

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ......................................................................................2

*Onaka v. Shiseido Americas Corp.*,
    2024 WL 1177976 (S.D.N.Y. Mar. 19, 2024) ............................................................4

*Parham v. Aldi, Inc.*,
  2021 WL 4296432 (S.D.N.Y. Sept. 21, 2021)........................................................10

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007)....................................................................................9

*Trammell v. KLN Enterprises, Inc.*,
  2024 WL 4194794 (S.D. Cal. Sept. 12, 2024)........................................................4

*Van Orden v. Hikari Sales U.S.A., Inc.*,
  2023 WL 5336813 (N.D.N.Y. Aug. 18, 2023) .......................................................10

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998).....................................................................................1

*Wright v. Publishers Clearing House, Inc.*,
  372 F. Supp. 3d 61 (E.D.N.Y. Mar. 12, 2019)......................................................10

**Other Authorities**

Adrian K. Stavrakis, et al., *Performance Evaluation of Dental Flosses Pre- and
  Post-Utilization*, 15(4) Materials (Basel, Switzerland) 1522 (2022), available
  at https://www.mdpi.com/1996-1944/15/4/1522#B23-materials-15-01522 (last
  visited July 1, 2025 ................................................................................................8

David Bond, *The US Military Is Poisoning Communities Across the US with
  Toxic Chemicals*, THE GUARDIAN (Mar. 25, 2021),
  https://www.theguardian.com/commentisfree/2021/mar/25/us-military-toxic-
  chemicals-us-states (last visited July 1, 2025);.....................................................7

Ellen Byron, *Merger Challenge: Unite Toothbrush, Toothpaste*, The Wall Street
  Journal (Apr. 24, 2007), https://www.wsj.com/articles/7878770779935 (last
  visited July 1, 2025)................................................................................................9

Heidelore Fiedler, *et al.*, *A Critical Review of a Recommended Analytical and
  Classification Approach for Organic Fluorinated Compounds with an
  Emphasis on Per-and Polyfluoroalkyl Substances*, 17 Integrated Envtl.
  Assessment & Mgmt. 331 (2020), available at
  https://doi.org/10.1002/ieam.4352 (last visited July 1, 2025) ...............................7

https://www.epa.gov/pfas/our-current-understanding-human-health-and-
  environmental-risks-pfas.........................................................................................6

J. Allen Davis, *IRIS Toxicological Review of Perfluorobutanoic Acid (PFBA,
  CASRN 375-22-4) & Related Salts, EPA*, at 4-1 (Dec. 2022), available at
  https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/0701tr.p
  df (last visited July 1, 2025)....................................................................................7

Merriam-Webster Dictionary, https://www.merriam-
    webster.com/dictionary/during ...............................................................................3

Nataliya Babayevska, et al., *Novel nanosystems to enhance biological activity of
    hydroxyapatite against dental caries*, 124 Materials Science and Engineering:
    C 112062 (2021), available at https://doi.org/.1016/j.msec.. (last visited July 1,
    2025) ........................................................................................................................8

*Perfluoro-2-Methoxypropanoic Acid (PMPA)*, ENV'T WORKING GRP., available at
    https://www.ewg.org/tapwater/contaminant.php?contamcode=E348 (last
    visited July 1, 2025)...............................................................................................7

## INTRODUCTION

Plaintiff's Opposition does not seriously contest his lack of standing based on his regular purchases of Glide after commencing this lawsuit—and thus the lack of any genuine injury upon which to premise his claims. The Opposition tries to avoid this conclusion by asserting that "[t]here is nothing in the SAC to suggest that Plaintiff's purchases were ongoing after the filing of the initial Complaint" in 2022. Opp'n at 17. But his Second Amended Complaint ("SAC"), first submitted to the Court in mid-2024, alleges the contrary facts—without exception or qualification—that "[d]uring the Class Period, Plaintiff Dalewitz purchased Oral-B Glide Product approximately ***every six months***." SAC ¶ 17 (emphasis added). Plaintiff's Opposition cannot change this pleading choice. Plaintiff's Opposition also fails to address his lack of standing arising from Plaintiff's failure to connect his purportedly commissioned laboratory tests to any product he ever actually purchased and he thus does not plausibly aver that his purchases contained PFAS.

Aside from standing, Plaintiff also does not plausibly allege that Glide is mislabeled and fails to explain how infinitesimal levels of four PFAS compounds his tests allegedly found poses any actual risk of human or environmental harm. Plaintiff likewise fails to plausibly allege that a reasonable consumer would construe Glide's "Pro-Health" marketing as promising the absence of PFAS—or that any viable claim arises from P&G's generalized, company-wide environmental aspirations. For these and other reasons discussed below, the Court should dismiss Plaintiff's SAC.

## LAW AND ARGUMENT

### I.    PLAINTIFF LACKS STANDING UNDER ARTICLE III.

#### A.    Plaintiff's Alleged Continued Purchasing of Glide During the Class Period Strips Him of Article III Standing.

It is well settled that "a party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Fischer*

*v. Forrest*, 286 F. Supp. 3d 590, 604 (S.D.N.Y. 2018) ("[A] plaintiff may not alter his pleadings through a brief."). A party cannot "contradict [his] own pleading," but can "plead himself out of court by alleging facts which show that he has no claim." *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (citations omitted).

These rules bind Plaintiff to his chosen allegation that "[d]uring the Class Period, Plaintiff Dalewitz purchased Oral-B Glide Products approximately ***every six months***." SAC ¶ 17 (emphasis added). Plaintiff nowhere alleges ceasing such purchases in 2022 and instead alleges in the SAC (first presented to the Court in mid-2024) that he has made purchases approximately every six months to the extent of "the applicable statute of limitations period," and continuing "until the date of class certification." *Id.* ¶¶ 17, 133. Based on a plain reading of these pleaded facts, Plaintiff specifically alleges that he has continued to purchase Glide regularly (*i.e.* "every six months") even after having discovered that it allegedly contained PFAS as of his original complaint in 2022.

As detailed in the moving papers, Plaintiff's allegations strip him of standing to sue. *See* Mot. at 11 (collecting authorities for the proposition that courts regularly dismiss consumer fraud claims for lack of standing when a plaintiff continues to purchase a product after discovering the alleged deception). Plaintiff contests neither this general proposition of law nor the applicability of any of the authorities cited in the motion to support it, and thus effectively concedes the point. *See, e.g., Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("[A] plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument.").

Instead, Plaintiff attempts to avoid the effect of the SAC's allegations by engaging in a semantic game positing that the phrase "[*d*]*uring* the Class Period" somehow means something different than "***throughout*** the Class Period," and that his choice to use the former phrase in

connection with his alleged purchases denote his having made purchases only "at some point" prior to April 2022. Opp'n at 17; *see* SAC ¶ 26 (alleging the date of Plaintiff's demand letter to P&G regarding "the allegations set forth in this Complaint."). It is an artificial distinction,[1] and one that ignores the full context of Plaintiff's pleading, including his allegation about having purchased the Product "***every six months***" during the Class Period he chose to define as encompassing an *ongoing* statute of limitations period and a *future* ruling on class certification. SAC ¶¶ 17, 133 (emphasis added). Plaintiff cannot seriously contend that he failed to comprehend the import of his own allegations when he made them in his SAC. Because Plaintiff fails to plead a plausible injury-in-fact, the case lacks subject-matter jurisdiction and should be dismissed, with prejudice. *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025) (dismissing case "with prejudice" where plaintiff's lack of injury-in-fact made it "unlikely that an amendment would cure his standing defects").

## B. Plaintiff Does Not Plausibly Allege That the Glide He Purchased Contained PFAS.

Even if the Court ignored Plaintiff's allegations to embrace his new argument—something the law does not allow, as explained above—his operative complaint still fails to plausibly plead PFAS contamination of any product he purchased. Plaintiff argues that he pleaded about testing some samples. *See* Opp'n at 16 (citing SAC ¶¶ 77-78). But the law demands that a plaintiff plead more about tests than a simple, generic description of the product tested, a general time frame for the tests, their location and method purportedly followed—which is all Plaintiff avers. SAC ¶ 77; *see, e.g., Dunning v. Supergoop, LLC*, 2025 WL 34822, at *5 (S.D.N.Y. Jan. 6, 2025) (dismissing

---

[1] Plaintiff's rhetorical argument unsurprisingly avoids any reliance on a dictionary definition—because consulting the dictionary ***undercuts*** Plaintiff's attempt to distinguish "during" from "throughout," and instead defines the words as interchangeable. *See, e.g.*, "During," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/during (defining "during" as "***throughout*** the duration of") (emphasis added).

claim that a product misrepresented SPF levels based on testing allegations that lacked the number of samples tested and when and where samples were purchased); *Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (dismissing claim that a product contained synthetic flavoring in part because of insufficient detail about the laboratory test, such as "the *specific* date, time, or place of the testing, *who* conducted the testing, the *qualifications* of the testers, etc.") (emphases added); *Trammell v. KLN Enterprises, Inc.*, 2024 WL 4194794, at *5 (S.D. Cal. Sept. 12, 2024) (dismissing claim about synthetic malic acid despite allegations about the date, place, and company that conducted the testing, because they lacked other key details).

Plaintiff omits any allegations about the number of samples, the dates of their purchase, the specific dates of their testing, the identities and qualifications of the testers, as well as "how many [products] were tested and in what manner"—something this Court required in a recent case. *Hernandez v. Wonderful Co. LLC*, 2023 WL 9022844, at *6 (S.D.N.Y. Dec. 29, 2023) (Román, J.). Plaintiff does not even allege having purchased the single product variation in the referenced tests, making only generic and unspecified references to "Products." SAC ¶ 17. Plaintiff also omits other details routinely demanded, including a specific factual allegation that "the tests occurred 'reasonably near in time' to [his] purchases." *Onaka v. Shiseido Americas Corp.*, 2024 WL 1177976, at *2 (S.D.N.Y. Mar. 19, 2024).

Without such details, the testing allegations remain implausible as a matter of law. *See, e.g.*, *Lurenz v. Coca-Cola Co.*, 2024 WL 2943834, at *4 (S.D.N.Y. June 10, 2024) (dismissing claim despite allegations test revealed "the presence of PFAS in a single sample of a Product"); *Esquibel v. Colgate-Palmolive Co.*, 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023) (dismissing PFAS contamination claim because plaintiffs "do not allege that bottles they actually purchased

were tested, nor do they even plead facts indicating how many units of the Product were tested, where those units were acquired, where the test took place, or what entity performed the test").

Importantly, the motion raised these specific points. *See, e.g.,* Mot. at 7-10. By failing to respond, Plaintiff once again effectively concedes them. *See Cole*, 2018 WL 4680989, at *7. Indeed, if the Court credits Plaintiff's new argument in his Opposition (inconsistent with his pleading) that his last purchase occurred before filing suit in 2022, that contention only underscores the implausibility of his late 2023 testing allegations, as a time gap of mere months fails to confer standing. *See Hicks v. L'Oréal U.S.A., Inc.*, 2024 WL 4252498, at *12 (S.D.N.Y. Sept. 19, 2024) (characterizing the "sizable temporal gap" between plaintiffs' alleged use of a product in August and October 2021 with his "late 2021" testing to preclude his standing to sue).

Although Plaintiff generally ignores these dispositive deficiencies, he quotes *Levy v. Hu Prods. LLC*, 2024 WL 897495 (S.D.N.Y. Mar. 1, 2024), to argue that it may be "reasonable to assume that the same product line would involve the same manufacturing process and with the same likelihood of residual [lead] contamination even if not every batch is contaminated." Opp'n at 15. But the reasonableness of that assumption in *Levy* turned on significantly greater detail in the testing allegations, including that a third-party had tested 2 to 3 samples of each product, the samples were all purchased in New York (where plaintiff shopped), and the plaintiff bought the same products *weekly* during the exact same period in which the testing occurred. 2024 WL 897495 at *1, *3. Plaintiff pleads none of these facts, and instead argues the contrary to the Court.

The SAC's lack of detail about Plaintiff's testing renders *Levy* and the reasonableness of the court's assumptions in that case inapposite. *See, e.g.*, *Bell v. Greenbrier Int'l, Inc.*, 2024 WL 4893270, at *4 (S.D.N.Y. Nov. 26, 2024) (explaining *Levy* does "not support standing where, as here, test results cannot 'be reasonably extrapolated to the plaintiff's individual purchase'"). This

case is much more like *Hernandez*, a case Plaintiff ignores and in which this Court deemed the plaintiff's failure to allege key details about testing to make it "only likely a plaintiff **might** have purchased mislabeled products." 2023 WL 9022844, at *6 (cleaned up & emphasis added).

## II.    PLAINTIFF FAILS TO ALLEGE THAT GLIDE CONTAINS PFAS THAT CARRIES A RISK OF HARM.

Plaintiff's theory of the case hinges on the purported risk of harm from using Glide. *See, e.g.*, Opp'n at 1 ("[T]he Product contains PFAS, which have negative health and environmental impacts . . . ."); *id.* at 6 ("[T]he representations at issue in this case—which concern human health and the environment—are directly related to the reasons why consumers want to avoid PFAS . . . ."); *id.* at 8 ("PFAS are also artificial chemicals that pose health and environmental risks, contradicting P&G's Product representations . . . ."); *id.* at 10 ("PFAS are mobile chemicals linked to adverse health and environmental impacts[ ] that consumers would not expect . . . in a product marketed with health and environmental representations . . . ."); *id.* at 12 ("The presence of PFAS, which are linked to health harms, in the Product would not be expected by a reasonable consumer . . . . P&G thus misleads consumers about whether the Product contains substances that have been shown to be harmful to human health."). But Plaintiff fails to plausibly allege that Glide contained any PFAS that actually present a risk to human health or the environment.

Even if the Court accepts Plaintiff's testing allegations—and it should not, as explained above—the test results show only four PFAS compounds at a collective, trace amount. Plaintiff avers that "all" PFAS are harmful (SAC ¶ 33), but the sources he cites plainly contradict this notion, referring instead to "***thousands*** of PFAS with ***potentially varying effects and toxicity levels***," and mainly focusing on specific PFAS compounds ***other than*** the four Plaintiff's test results detected. *See* SAC ¶ 82 n.42 (citing https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas) (emphasis added)); *see also id*. (noting that

"exposure to **certain** PFAS **may lead** to adverse health outcomes") (emphasis added). Indeed, the sources the SAC cites even identify many "pro-health" substances in which PFAS compounds are present, including pharmaceuticals and natural sources like marine aerosols and volcanic gases. SAC ¶ 115 n.71 (citing Heidelore Fiedler, *et al.*, *A Critical Review of a Recommended Analytical and Classification Approach for Organic Fluorinated Compounds with an Emphasis on Per-and Polyfluoroalkyl Substances*, 17 Integrated Envtl. Assessment & Mgmt. 331 (2020), available at https://doi.org/10.1002/ieam.4352 (last visited July 1, 2025) ("Fiedler")).

Plaintiff's cited sources also tellingly refute his allegations of harm from the four PFAS compounds his tests detected: PMPA, PFBA, PFPS, and NMeFOSE. *Id.* at 15. The sources instead support a risk of harm only from **other** PFAS compounds—namely, PFOA and PFOS. *See* SAC ¶ 91 n.56 (citing David Bond, *The US Military Is Poisoning Communities Across the US with Toxic Chemicals*, THE GUARDIAN (Mar. 25, 2021), https://www.theguardian.com/commentisfree/2021/mar/25/us-military-toxic-chemicals-us-states (last visited July 1, 2025); *id.* ¶ 93 n.58 (citing *Perfluoro-2-Methoxypropanoic Acid (PMPA)*, ENV'T WORKING GRP., available at https://www.ewg.org/tapwater/contaminant.php?contamcode=E348 (last visited July 1, 2025); *id.* ¶ 88 n.50 (citing J. Allen Davis, *IRIS Toxicological Review of Perfluorobutanoic Acid (PFBA, CASRN 375-22-4) & Related Salts, EPA*, at 4-1 (Dec. 2022), available at https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/0701tr.pdf (last visited July 1, 2025) (noting "inadequate information," "low confidence," and limited associations show harm from PFBA)).

The Court should reject Plaintiff's implausible allegations that are undercut by his own sources. *See, e.g.*, *In re Hain Celestial Heavy Metals Baby Food Litig.*, 2024 WL 5239510, at *12 (E.D.N.Y. Dec. 27, 2024) (deeming allegations of baby food contamination immaterial because they failed to "plausibly alleg[e] what concentration of various heavy metals in baby food products

would actually be unsafe for babies and toddlers to consume," particularly in light of "Plaintiffs' own cited sources recogniz[ing] that it is not realistic for baby food to not have *any* heavy metals").

### III.    PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT GLIDE IS AN EXPOSURE SOURCE.

Plaintiff independently fails to allege that Glide is a plausible exposure source for PFAS that could harm anyone. Indeed, the SAC's cited sources again refute its allegations. For example, Plaintiff contends that PFAS are "mobile." SAC ¶¶ 94, 115 n.71 (citing Fiedler). But the Fiedler article he cites states only that "[s]*ome* PFAS" are mobile, while characterizing others as "relatively ***nonmobile***." (emphases added). Plaintiff also contends that dental floss can shred. SAC ¶ 114 (citing Adrian K. Stavrakis, et al., *Performance Evaluation of Dental Flosses Pre- and Post-Utilization*, 15(4) Materials (Basel, Switzerland) 1522 (2022), available at https://www.mdpi.com/1996-1944/15/4/1522#B23-materials-15-01522 (last visited July 1, 2025)); ¶ 116. But the cited source discusses shredding only "when used around a dental implant," about which it describes the risk as "leav[ing] particles or pieces behind that can become trapped between the implants and gum tissue, resulting in an infection." The article says nothing about the ingestion of dental floss or exposure to PFAS compounds from shredding. And Plaintiff makes no allegations of having dental implants that risk shredding dental floss to mobilize PFAS.

Left without plausible facts to plead, Plaintiff purports to invoke "common sense" to support his argument that PFAS can be delivered orally to users because floss can deliver minerals and other dental-health components to users. But he neglects to reveal that the only source upon which he relies for this conclusion related to a special floss product specifically ***designed to deliver a chemical***. Opp'n at 9; SAC ¶ 113 n. 69 (citing Nataliya Babayevska, et al., *Novel nanosystems to enhance biological activity of hydroxyapatite against dental caries*, 124 Materials Science and Engineering: C 112062 (2021), available at https://doi.org/10.1016/j.msec.2021.112062 (last

visited July 1, 2025) ("Babayevska")). The Babayeyska study authors intentionally "impregnated" floss by soaking it in a chlorhexidine solution with the aim of delivering that compound to areas between the teeth that regular brushing would not reach. Plaintiff does not allege that Glide was similarly soaked or "impregnated" with PFAS or designed to deliver PFAS to a user. Contrary to the Court's prior ruling noting it as a deficiency, Plaintiff still presents no fact to allege plausibly that flossing with Glide can be an exposure pathway to any PFAS (much less the trace amounts of PFAS purportedly detected in a single sample of Glide long after his alleged purchase). Instead, Plaintiff merely speculates based on claimed "common sense" that is not supported by the actual source he cites.  Plaintiff's claim thus fails.

## IV.    THE CHALLENGED STATEMENT CANNOT MISLEAD A REASONABLE CONSUMER.

Plaintiff does not dispute his inability to plead an omission theory, so the "Pro-Health" statement is the only packaging statement he targets for any purported false advertising. He conclusorily insists that "Pro-Health" is not puffery, but offers no explanation for this conclusion and cannot reconcile it with governing law. Opp'n at 11; *see also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (defining puffery as subjective claims "which cannot be proven either true or false"). And Plaintiff admits that "Pro-Health" reasonably means that "flossing supports dental health" by failing to dispute it. Opp'n at 11. Nonetheless, he speculates that some purchasers might construe "Pro-Health" as "tout[ing] health benefits" other than dental health. *Id.* He appears to premise this notion on a 2007 article regarding P&G's acquisition of Gillette and launch of its "Pro-Health line," which then included only toothbrushes, mouthwash, and toothpaste. SAC ¶ 9 n. 3 (citing Ellen Byron, *Merger Challenge: Unite Toothbrush, Toothpaste*, The Wall Street Journal (Apr. 24, 2007), https://www.wsj.com/articles/

SB117737878770779935 (last visited July 1, 2025)). Importantly, the article says nothing about Glide, dental floss, or PFAS and it is consistent with flossing supporting dental health.

Even if one credits Plaintiff's proffered interpretation of "Pro-Health" for floss, it fails to plausibly support the conclusion that a reasonable consumer would believe the product is free from PFAS, particularly where sources incorporated into the SAC describe PFAS as ubiquitous. *See Van Orden v. Hikari Sales U.S.A., Inc.*, 2023 WL 5336813, at *4 (N.D.N.Y. Aug. 18, 2023) ("Courts routinely dismiss GBL claims where, as here, the plaintiff 'alleges that a consumer will read a true statement on a package and will then . . . assume things about the products other than what the statement actually says.'") (citation omitted); Mot. at 18. Plaintiff's references to a consumer survey purporting to show the importance of PFAS to purchasing decisions also "does not salvage Plaintiff's claims." *Parham v. Aldi, Inc.*, 2021 WL 4296432, at *8 (S.D.N.Y. Sept. 21, 2021). Aside from the lack of any information regarding this survey that would render it plausibly reliable, Plaintiff does not even allege that this survey asked respondents anything about how they interpret "Pro-Health," making it of no relevance to Plaintiff's specific claim.

## V.     PLAINTIFF DOES NOT PLEAD PLAUSIBLE CLAIMS BASED ON ENVIRONMENTAL HARM OR STATEMENTS.

Plaintiff does not dispute or challenge the law P&G cited that treat its environmental aspirations as puffery, again conceding the point. *See Cole*, 2018 WL 4680989, at *7. Plaintiff's environment-based claims also fail because he does not specifically identify the environmental claims he purportedly relied on. SAC ¶ 19; *see Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 66–67 (E.D.N.Y. Mar. 12, 2019). He accordingly fails to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC in its entirety, with prejudice.

Respectfully submitted,

*s/Adam R. Fox*

Adam R. Fox (5082151)
SQUIRE PATTON BOGGS (US) LLP
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
Telephone:     (212) 872-9800
Facsimile:      (212) 872-9815
Email:          adam.fox@squirepb.com

*Counsel for The Procter & Gamble Company*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing Reply Memorandum in Support of

P&G's Motion to Dismiss to be served on the parties listed below through the Court's electronic

filing service on the 1st of July 2025:

Alec M. Leslie
Bursor & Fisher P.A.
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
646-837-7150
Email: aleslie@bursor.com

Joshua D. Arisohn
Arisohn LLC
94 Blakeslee Rd
06759
Litchfield, CT 06759
917-656-0569
Email: josh@arisohnllc.com

Kim Eleazer Richman
Richman Law & Policy
Richman Law & Policy
1 Bridge Street
Suite 83
Irvington, NY 10533
212-687-8291
Email: krichman@richmanlawpolicy.com

*Attorneys for Plaintiff*

/s/ Adam R. Fox
Adam R. Fox

*Counsel for Defendant, The Procter & Gamble Company*